No. 22-50048

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

STEVEN DUARTE,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 2:20-387-AB*

## GOVERNMENT'S ANSWERING BRIEF

E. MARTIN ESTRADA
United States Attorney

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

SURIA M. BAHADUE
Assistant United States Attorney
Criminal Appeals Section

1000 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-5487
Email: suria.bahadue@usdoj.gov

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION**                                                       **PAGE**

I.     INTRODUCTION ..................................................................... 1

II.    ISSUE PRESENTED ............................................................... 3

III.   STATEMENT OF THE CASE ................................................. 3

      A.     Jurisdiction, Timeliness, and Bail Status .............................. 3

      B.     Statement of Facts and Procedural History .......................... 4

           1.     Defendant is convicted of multiple felony offenses ....... 4

           2.     Defendant, a convicted felon, possesses a stolen firearm and ammunition ............................................... 4

           3.     Defendant is charged with possession of a firearm and ammunition as a felon ........................................... 5

           4.     Defendant is convicted at trial and receives a below-Guidelines sentence ........................................... 6

IV.   SUMMARY OF ARGUMENT ................................................. 9

V.     ARGUMENT .......................................................................... 11

      A.     Standard of Review .............................................................. 11

      B.     Section 922(g)(1) is Constitutional Under the Precedents of Both the Supreme Court and this Court ....... 13

           1.     The Supreme Court held in *Heller* that the Second Amendment protects an individual right of law-abiding citizens ................................................ 13

           2.     Following *Heller*, this Court repeatedly upheld § 922(g)(1) based on the text and history of the Second Amendment ...................................................... 14

# TABLE OF CONTENTS (continued)

**DESCRIPTION**                                                                    **PAGE**

3.  *Vongxay* remains controlling precedent, and its history-based analysis was reaffirmed—not overruled—by *Bruen* ........................................ 18

4.  Defendant's arguments that *Bruen* overruled *Vongxay* are meritless ................................... 22

C.  Even if *Bruen* Had Abrogated this Court's Precedent, Defendant Cannot Show Plain Error ................................... 26

1.  There was no error, because the Second Amendment's text and historical context show that felons can be constitutionally disarmed .............. 27

2.  There was no clear or obvious error, since every court to address the issue has rejected defendant's argument ................................... 52

3.  There was no effect on defendant's substantial rights, because defendant has not established that he is nonviolent ................................... 63

VI.  CONCLUSION ................................................................. 69

# TABLE OF AUTHORITIES

**DESCRIPTION** **PAGE(S)**

## Federal Cases

*Alfred v. Garland,*
   64 F.4th 1025 (9th Cir. 2023) ............................................................ 66

*Atwater v. City of Lago Vista,*
   532 U.S. 318 (2001) ......................................................................... 49

*Battles v. United States,*
   No. 4:23-cv-63, Dkt. No. 2,
   2023 WL 346002 (E.D. Mo. Jan. 20, 2023) ........................................ 56

*Baze v. Rees,*
   553 U.S. 35 (2008) ............................................................................ 34

*Binderup v. Attorney General,*
   836 F.3d 336 (3d Cir. 2016) ............................................................. 17

*Campiti v. Garland,*
   No. 3:22-cv-177, Dkt. No. 27 (D. Conn. Jan. 10, 2023) ...................... 57

*Davis v. United States,*
   No. 5:22-cv-224, Dkt. No. 1,
   2023 WL 373172 (E.D. Ky. Jan. 24, 2023) ........................................ 56

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ................................................................... passim

*Folajtar v. Attorney General,*
   980 F.3d 897 (3d Cir. 2020) ....................................................... passim

*Hamilton v. Pallozzi,*
   848 F.3d 614 (4th Cir. 2017) ...................................................... 17, 50

*Hatfield v. Barr,*
   925 F.3d 950 (7th Cir. 2019) ...................................................... 13, 63

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                               **PAGE(S)**

*Johnson v. United States,*
520 U.S. 461 (1997) ............................................................ 12

*Johnson v. United States,*
576 U.S. 591 (2015) ............................................................ 67

*Jones v. United States,*
527 U.S. 373 (1999) ....................................................... 63, 65

*Kanter v. Barr,*
919 F.3d 437 (7th Cir. 2019) ............................ 29, 39, 48, 67

*Leonard v. United States,*
No. 1:22-cv-22670, Dkt. No. 15 (S.D. Fla. Mar. 10, 2023) .................. 55

*Lopez-Aguilar v. Barr,*
948 F.3d 1143 (9th Cir. 2020) .......................................... 66

*Mai v. United States,*
974 F.3d 1082 (9th Cir. 2020) ................................. 16, 25, 34

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) ............................................... 14, 21, 22

*Medina v. Whitaker,*
913 F.3d 152 (D.C. Cir. 2019) ................................... passim

*Miller v. Gammie,*
335 F.3d 889 (9th Cir. 2003) ...................................... 25, 26

*New York State Rifle & Pistol Ass'n v. Bruen,*
142 S. Ct. 2111 (2022) ............................................... passim

*New York State Rifle & Pistol Ass'n v. City of New York,*
140 S. Ct. 1525 (2020) ...................................................... 22

*Orellana v. Barr,*
967 F.3d 927 (9th Cir. 2020) .......................................... 66

iv

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                  **PAGE(S)**

*Peruta v. Cnty. of San Diego*,
824 F.3d 919 (9th Cir. 2016) ................................................................. 28

*Range v. Att'y Gen.*,
53 F.4th 262 (3d Cir. 2022) ......................................................... passim

*Robertson v. Baldwin*,
165 U.S. 275 (1897) ............................................................................... 32

*Shelby-Journey-Egnis v. United States*,
No. 2:21-cr-20535, Dkt. No. 53 (E.D. Mich. Dec. 5, 2022) ................... 58

*Shipley v. Hijar*,
No. 3:23-cv-11, Dkt. No. 3,
2023 WL 353994 (W.D. Tex. Jan. 20, 2023) ........................................ 56

*Silveira v. Lockyer*,
312 F.3d 1052 (9th Cir. 2002) ............................................................... 23

*United States v. Adams*,
No. 1:20-cr-628 (S.D.N.Y. Aug. 10, 2022) ............................................ 62

*United States v. Barber*,
No. 3:22-cr-65, Dkt. No. 58 (D. Ak. Feb. 21, 2023) ............................. 55

*United States v. Bacchus*,
No. 2:22-cr-450, Dkt. No. 120 (C.D. Cal. Feb. 2, 2023) ........................ 55

*United States v. Baker*,
No. 2:20-cr-301, Dkt. No. 179,
2022 WL 16855423 (D. Utah Nov. 10, 2022) ....................................... 59

*United States v. Barber*,
No. 4:20-cr-384, Dkt. No. 118,
2023 WL 1073667 (E.D. Tex. Jan. 27, 2023) ........................................ 56

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                          **PAGE(S)**

*United States v. Barnes,*
  No. 1:22-cr-43, Dkt. No. 42 (S.D.N.Y. Feb. 28, 2023) ........................ 55

*United States v. Bean,*
  537 U.S. 71 (2002) ................................................................. 67

*United States v. Beard,*
  No. 4:22-cr-92, Dkt. No. 58 (S.D. Tex. Feb. 27, 2023) ....................... 55

*United States v. Belin,*
  No. 1:21-cr-10040, Dkt. No. 65 (D. Mass. Mar. 2, 2023) .................... 55

*United States v. Blackburn,*
  No. 1:22-cr-209, Dkt. No. 28 (M.D. Pa. Nov. 17, 2022) ...................... 59

*United States v. Bluer,*
  No. 22-cr-20557, Dkt. No. 27 (E.D. Mich. May 8, 2023) ..................... 53

*United States v. Bogle,*
  717 F.3d 281 (2d Cir. 2013) ..................................................... 17

*United States v. Borne,*
  No. 1:22-cr-83, Dkt. No. 35 (D. Wyo. Oct. 24, 2022) ........................ 60

*United States v. Braster,*
  No. 1:20-cr-66, Dkt. No. 42 (N.D. Ind. Mar. 2, 2023) ........................ 55

*United States v. Brown,*
  No. 2:20-cr-260, Dkt. No. 186,
  2023 WL 424260 (E.D. Pa. Jan. 26, 2023) ..................................... 56

*United States v. Brunson,*
  No. 3:22-cr-149, Dkt. No. 66 (S.D. Cal. Nov. 18, 2022) ..................... 59

*United States v. Burrell,*
  No. 3:21-cr-20395, Dkt. No. 34,
  2022 WL 4096865 (E.D. Mich. Sept. 7, 2022) ................................. 62

vi

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                          **PAGE(S)**

*United States v. Burton,*
No. 3:22-cr-362, Dkt. No. 48 (D.S.C. Oct. 28, 2022) ............................59

*United States v. Butts,*
No. 9:22-cr-33, Dkt. No. 33 (D. Mont. Oct. 31, 2022) ........................59

*United States v. Cage,*
No. 3:21-cr-68, Dkt. No. 41,
2022 WL 17254319 (S.D. Miss. Nov. 28, 2022) ....................................58

*United States v. Campbell,*
No. 5:22-cr-138, Dkt. No. 64 (W.D. Okla. Sept. 27, 2022) ..................61

*United States v. Carey,*
602 F.3d 738 (6th Cir. 2010) ................................................................17

*United States v. Carleson,*
No. 3:22-cr-32, Dkt. No. 39 (D. Ak. Oct. 28, 2022) ............................59

*United States v. Carpenter,*
No. 1:21-cr-86, Dkt. No. 38,
2022 WL 16855533 (D. Utah Nov. 10, 2022 ........................................59

*United States v. Carter,*
No. 22-cr-20477, Dkt. No. 51 (E.D. Mich. May 9, 2023) ....................53

*United States v. Carrero,*
No. 2:22-cr-30, Dkt. No. 50,
2022 WL 9348792 (D. Utah Oct. 14, 2022) .........................................60

*United States v. Charles,*
No. 7:22-cr-154, Dkt. No. 48,
2022 WL 4913900 (W.D. Tex. Oct. 3, 2022) ........................................61

*United States v. Mak,*
683 F.3d 1126 (9th Cir. 2012) ..............................................................11

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

*United States v. Chovan,*
    735 F.3d 1127 (9th Cir. 2013)................................................16

*United States v. Christensen,*
    828 F.3d 763 (9th Cir. 2015)................................................12

*United States v. Clark,*
    No. 1:20-cr-49, Dkt. No. 61 (N.D. Ind. Mar. 2, 2023) .........................55

*United States v. Cockerham,*
    No. 5:21-cr-6, Dkt. No. 31 (S.D. Miss. Sept. 13, 2022) .......................61

*United States v. Coleman,*
    No. 3:22-cr-8, Dkt. No. 117,
    2023 WL 122401 (N.D.W. Va. Jan. 6, 2023) ....................................57

*United States v. Collette,*
    No. 7:22-cr-141, Dkt. No. 66,
    2022 WL 4476790 (W.D. Tex. Sept. 25, 2022...................................61

*United States v. Coombes,*
    No. 4:22-cr-189, Dkt. No. 39,
    2022 WL 4367056 (N.D. Okla. Sept. 21, 2022) .................................61

*United States v. Cummings,*
    No. 1:22-cr-51, Dkt. No. 49 (N.D. Ind. Apr. 20, 2023) .......................54

*United States v. Daniels,*
    No. 1:03-cr-83, Dkt. No. 69,
    2022 WL 5027574 (W.D.N.C. Oct. 4, 2022).....................................60

*United States v. Davis,*
    No. 1:21-cr-206, Dkt. No. 86 (E.D. Cal. Mar. 14, 2023)......................54

*United States v. Davis,*
    No. 1:23-cr-10018, Dkt. No. 49 (D. Mass. Mar. 17, 2023) ...................54

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                  **PAGE(S)**

*United States v. Dawson*,
  No. 3:21-cr-293,
  2022 WL 17839807 (W.D.N.C. Dec. 21, 2022) .................................... 57

*United States v. Delpriore,*
  No. 3:18-cr-136, Dkt. No. 287 (D. Ak. Sept. 23, 2022) ........................ 61

*United States v. Dixon,*
  No. 1:22-cr-140, Dkt. No. 76 (N.D. Ill. Mar. 28, 2023) ........................ 54

*United States v. Doss,*
  No. 4:21-cr-74, Dkt. No. 126 (S.D. Iowa Aug. 2, 2022) ...................... 62

*United States v. Dotson,*
  No. 3:22-cr-1502, Dkt. No. 26 (S.D. Cal. Dec. 12, 2022) .................... 58

*United States v. Doty*,
  No. 5:21-cr-21, Dkt. No. 34 (N.D.W. Va. Sept. 9, 2022) ..................... 62

*United States v. Dumont,*
  No. 1:22-cr-53 (D.N.H. Nov. 14, 2022) ................................................. 59

*United States v. Everist,*
  368 F.3d 517 (5th Cir. 2004) ................................................................ 23

*United States v. Farris,*
  No. 1:22-cr-149, Dkt. No. 29 (D. Colo. Aug. 12, 2022) ...................... 62

*United States v. Fencl,*
  No. 3:21-cr-3101, Dkt. No. 81 (S.D. Cal. Dec. 7, 2022) ...................... 58

*United States v. Finney,*
  No. 2:23-cr-13, Dkt. No. 23 (E.D. Va. Mar. 29, 2023) ......................... 54

*United States v. Ford,*
  No. 4:21-cr-179, Dkt. No. 52,
  2022 WL 17327499 (W.D. Mo. Nov. 29, 2022) .................................... 58

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                           **PAGE(S)**

*United States v. Garrett,*
  No. 1:18-cr-880, Dkt. No. 144 (N.D. Ill. Jan. 11, 2023) .......................56

*United States v. Gay,*
  No. 4:20-cr-40026, Dkt. No. 412 (C.D. Ill. Dec. 5, 2022).....................58

*United States v. Glaze,*
  No. 5:22-cr-425, Dkt. No. 23 (W.D. Okla. Dec. 1, 2022) .....................58

*United States v. Gleaves,*
  No. 3:22-cr-14, Dkt. No. 116 (M.D. Tenn. Feb. 6, 2023) .....................56

*United States v. Goins,*
  No. 5:22-cr-91, Dkt. No. 32 (E.D. Ky. Dec. 21, 2022)...........................57

*United States v. Gonzalez-Aguilar,*
  718 F.3d 1185 (9th Cir. 2013)........................................................27, 63

*United States v. Gonzalez-Aparicio,*
  663 F.3d 419 (9th Cir. 2011).........................................................26, 62

*United States v. Good,*
  No. 1:21-cr-180,
  2022 WL 18107183 (W.D. Mo. Nov. 18, 2022) ...................................57

*United States v. Gordon,*
  No. 1:14-cr-312, Dkt. No. 170,
  2023 WL 336137 (N.D. Ga. Jan. 20, 2023)..........................................56

*United States v. Graf,*
  610 F.3d 1148 (9th Cir. 2010)..............................................................65

*United States v. Grant,*
  No. 3:22-cr-161, Dkt. No. 44,
  2022 WL 16541138 (D.S.C. Oct. 28, 2022)..........................................60

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

*United States v. Gray*,
   No. 1:22-cr-247, Dkt. No. 22,
   2022 WL 16855696 (D. Colo. Nov. 10, 2022)......................................59

*United States v. Grinage,*
   No. 5:21-cr-399, Dkt. No. 51,
   2022 WL 17420390 (W.D. Tex. Dec. 5, 2022)....................................58

*United States v. Guthery*,
   No. 2:22-cr-173, Dkt. No. 49 (E.D. Cal. Mar. 29, 2023)......................54

*United States v. Harper*,
   No. 5:21-cr-4085,
   2022 WL 8288406 (N.D. Iowa Sept. 9, 2022) ....................................61

*United States v. Havins*,
   No. 3:21-cr-1515, Dkt. No. 62 (S.D. Cal. Sept. 12, 2022)....................61

*United States v. Hazley*,
   No. 22-cr-20612, Dkt. No. 32 (E.D. Mich. May 5, 2023) .....................53

*United States v. Hester*,
   No. 1:22-cr-20333, Dkt. No. 39 (S.D. Fla. Jan. 27, 2023) ...................56

*United States v. Hickcox*,
   No. 22-50365, 2023 WL 3075054 (5th Cir. Apr. 25, 2023) .................52

*United States v. Hill*,
   No. 3:21-cr-107, Dkt. No. 70,
   2022 WL 4361917 (S.D. Cal. Sept. 20, 2022) ....................................61

*United States v. Hill*,
   No. 4:22-cr-249, Dkt. No. 42 (S.D. Tex. Nov. 17, 2022) .....................59

*United States v. Hoeft*,
   No. 4:21-cr-40163, Dkt. No. 103 (D.S.D. Mar. 21, 2023) ...................54

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                    **PAGE(S)**

*United States v. Hunter*,
  No. 1:22-cr-84,
  2022 WL 17640254 (N.D. Ala. Dec. 13, 2022) .................................... 57

*United States v. Isaac*,
  No. 5:22-cr-117, Dkt. No. 27,
  2023 WL 1415597 (N.D. Ala. Jan. 31, 2023) ...................................... 56

*United States v. Ingram*,
  No. 0:18-cr-557, Dkt. No. 1714,
  --- F. Supp. 3d ---, 2022 WL 3691350 (D.S.C. Aug. 25, 2022) .............. 62

*United States v. Jacobs*,
  No. 2:22-cr-160, Dkt. No. 28 (C.D. Cal. Nov. 28, 2022) ...................... 58

*United States v. Jackson*,
  No. 0:21-cr-51, Dkt. No. 114,
  2022 WL 4226229 (D. Minn. Sept. 13, 2022) ..................................... 61

*United States v. Jimenez-Shilon*,
  34 F.4th 1042 (11th Cir. 2022) ...................................................... 31, 42

*United States v. Jones,*
  No. 4:20-cr-354, Dkt. No. 78,
  2022 WL 17327498 (W.D. Mo. Nov. 29, 2022) ................................... 58

*United States v. Jones*,
  No. 5:22-cr-376, Dkt. No. 59 (W.D. Okla. Dec. 23, 2022) ................... 57

*United States v. Jordan*,
  No. 3:22-cr-1140, Dkt. No. 39,
  2023 WL 157789 (W.D. Tex. Jan. 11, 2023) ....................................... 57

*United States v. Kelly*,
  No. 3:22-CR-37,
  2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022) ................................. 52

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                          **PAGE(S)**

*United States v. Kilbride,*
    584 F.3d 1240 (9th Cir. 2009)................................................26

*United States v. Kilgore,*
    No. 1:21-cr-277, Dkt. No. 40 (E.D. Cal. Mar. 14, 2023).......................54

*United States v. King,*
    No. 7:21-cr-255, Dkt. No. 50,
    2022 WL 5240928 (S.D.N.Y. Oct. 6, 2022).........................................60

*United States v. Law,*
    No. 2:20-cr-341, Dkt. No. 60 (W.D. Pa. Oct. 27, 2022) .......................60

*United States v. Lindsay,*
    931 F.3d 852 (9th Cir. 2019)................................................26

*United States v. Lindsey,*
    No. 4:22-cr-138, Dkt. No. 25 (S.D. Iowa Mar. 10, 2023).....................54

*United States v. Maurice,*
    No. 7:22-cr-48 (S.D.N.Y. Jul. 14, 2022) ................................62

*United States v. McAdory,*
    935 F.3d 838 (9th Cir. 2019)................................................12

*United States v. McCane,*
    573 F.3d 1037 (10th Cir. 2009).......................................17, 30

*United States v. McIlwain,*
    No. 2:23-cr-20012, Dkt. No. 28 (E.D. Mich. Apr. 26, 2023)................54

*United States v. Medrano,*
    No. 3:21-cr-39, Dkt. No. 65,
    2023 WL 122650 (N.D.W. Va. Jan. 6, 2023) ......................................57

*United States v. Meza-Rodriguez,*
    798 F.3d 664 (7th Cir. 2015)................................................31

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                    **PAGE(S)**

*United States v. Melendrez-Machado*,
    No. 3:22-cr-634, Dkt. No. 32,
    --- F. Supp. 3d ----, 2022 WL 17684319 (W.D. Tex. Oct. 18, 2022)......60

*United States v. Meyer*,
    No. 22-cr-10012, Dkt. No. 53 (S.D. Fla. May 9, 2023) .........................53

*United States v. Minter*,
    No. 3:22-cr-135, Dkt. No. 33 (M.D. Pa. Oct. 18, 2022) ........................60

*United States v. Mitchell*,
    No. 1:22-cr-111, Dkt. No. 43 (S.D. Ala. Nov. 17, 2022) .......................59

*United States v. Moore,*
    No. 2:21-cr-121, Dkt. No. 81 (W.D. Pa. Nov. 9, 2022) .........................59

*United States v. Moore*,
    No. 3:20-cr-474, Dkt. No. 100,
    2023 WL 154588 (D. Or. Jan. 11, 2023)................................................57

*United States v. Mugavero*,
    No. 3:22-cr-1716, Dkt. No. 29 (S.D. Cal. Dec. 19, 2022).....................57

*United States v. Murphy*,
    No. 22-cr-121, Dkt. No. 42 (N.D. Ill. May 3, 2023) .............................53

*United States v. Nevens*,
    No. 2:19-cr-774, Dkt. No. 121 (C.D. Cal. Aug. 15, 2022) ....................62

*United States v. Olson*,
    No. 1:22-cr-20525, Dkt. No. 33 (S.D. Fla. Jan. 5, 2023) ......................57

*United States v. Ortiz,*
    No. 3:21-cr-2503, Dkt. No. 91 (S.D. Cal. Oct. 14, 2022) .....................60

*United States v. Osazuwa*,
    564 F.3d 1169 (9th Cir. 2009)...............................................................65

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                             **PAGE(S)**

*United States v. Patterson*,
  No. 7:19-cr-231 (S.D.N.Y. Sept. 9, 2022) ............................................. 62

*United States v. Payne*,
  No. 4:22-cr-173, Dkt. No. 24 (S.D. Tex. Apr. 12, 2023) ....................... 54

*United States v. Peeples*,
  630 F.3d 1136 (9th Cir. 2010) ................................................................ 12

*United States v. Pena*,
  No. 2:22-cr-366, Dkt. No. 95 (C.D. Cal. Mar. 21, 2023) ...................... 54

*United States v. Perez*,
  No. 3:21-cr-508, Dkt. No. 78 (S.D. Cal. Sept. 26, 2022) ...................... 61

*United States v. Perez-Garcia,*
  No. 3:22-cr-1581, Dkt. No. 70 (S.D. Cal. Dec. 6, 2022) ....................... 58

*United States v. Phillips*,
  827 F.3d 1171 (9th Cir. 2016) ......................................................... 16, 23

*United States v. Price*,
  No. 1:19-cr-824, Dkt. No. 105 (N.D. Ill. Mar. 3, 2023) ....................... 55

*United States v. Price*,
  No. 1:21-cr-164, Dkt. No. 122 (N.D. Ill. Feb. 13, 2023) ...................... 56

*United States v. Price*,
  No. 2:22-cr-97, --- F. Supp. 3d ---,
  2022 WL 6968457 (S.D.W. Va. Oct. 12, 2022) ................................... 60

*United States v. Ramos*,
  No. 2:21-cr-395, Dkt. No. 31 (C.D. Cal. Aug. 5, 2022) ....................... 62

*United States v. Randle*,
  No. 3:22-cr-20, Dkt. No. 34 (S.D. Miss. Sept. 6, 2022) ....................... 62

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                   **PAGE(S)**

*United States v. Raheem*,
  No. 3:20-cr-61, Dkt. No. 389,
  2022 WL 10177684 (W.D. Ky. Oct. 17, 2022) .....................................60

*United States v. Reese*,
  No. 2:19-cr-257, Dkt. No. 193 (W.D. Pa. Nov. 8, 2022) .......................59

*United States v. Rice*,
  No. 3:22-cr-36, Dkt. No. 40 (N.D. Ind. Mar. 17, 2023) ........................54

 *United States v. Ridgeway*,
  No. 3:22-cr-175, Dkt. No. 32,
  2022 WL 10198823 (S.D. Cal. Oct. 17, 2022)....................................60

*United States v. Riley*,
  No. 1:22-cr-163, Dkt. No. 37,
  2022 WL 7610264 (E.D. Va. Oct. 13, 2022) ........................................60

*United States v. Robinson*,
  No. 4:22-cr-70, Dkt. No. 39,
  2023 WL 214163 (W.D. Mo. Jan. 17, 2023)........................................56

*United States v. Rojo*,
  No. 3:21-cr-682, Dkt. No. 50 (S.D. Cal. Sept. 14, 2022)......................61

*United States v. Ross*,
  No. 2:22-cr-20049, Dkt. No. 34 (E.D. Mich. Feb. 15, 2023) .................56

*United States v. Roux*,
  No. 1:22-cr-19 (D.N.H. Dec. 16, 2022) ................................................57

*United States v. Roy*,
  No. 22-10677, 2023 WL 3073266 (5th Cir. Apr. 25, 2023) .................52

*United States v. Rozier*,
  598 F.3d 768 (11th Cir. 2010)..............................................................17

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                    **PAGE(S)**

*United States v. Rush*,
　No. 4:22-cr-40008, Dkt. No. 46,
　2023 WL 403774 (S.D. Ill. Jan. 25, 2023) ...........................................56

*United States v. Scroggins*,
　599 F.3d 433 (5th Cir. 2010)..................................................................17

*United States v. Serrano*,
　No. 3:21-cr-1590, Dkt. No. 65 (S.D. Cal. Jan. 17, 2023).....................56

*United States v. Siddoway*,
　No. 1:21-cr-205, Dkt. No. 54,
　2022 WL 4482739 (D. Idaho Sept. 27, 2022) .....................................61

*United States v. Skoien*,
　614 F.3d 638 (7th Cir. 2010)..........................................................33, 47

*United States v. Smith*,
　No. 2:22-cr-20351, Dkt. No. 35 (E.D. Mich. Feb. 24, 2023) ................55

*United States v. Smith*,
　No. 2:19-cr-505, Dkt. No. 183 (C.D. Cal. Jan. 19, 2023).....................56

*United States v. Spencer*,
　No. 2:22-cr-106, 2022 WL 17585782 (E.D. Va. Dec. 12, 2022)...........58

*United States v. Spencer*,
　No. 2:22-cr-561, Dkt. No. 24 (S.D. Tex. Jan. 12, 2023) ......................56

*United States v. Taylor*,
　142 S. Ct. 2015 (2022).........................................................................66

*United States v. Taylor*,
　No. 22-cr-20315, Dkt. No. 36 (E.D. Mich. Apr. 26, 2023)...................54

*United States v. Taylor*,
　No. 3:22-cr-22, Dkt. No. 32,
　2023 WL 1423725 (E.D. Ky. Jan. 31, 2023) .......................................56

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION** **PAGE(S)**

*United States v. Teerlink,*
 No. 2:22-cr-24, Dkt. No. 33,
 2022 WL 17093425 (D. Utah Nov. 21, 2022) ......................................59

*United States v. Tekle,*
 329 F.3d 1108 (9th Cir. 2003) ............................................................12

*United States v. Therrien,*
 No. 1:21-cr-10323 (D. Mass. Mar. 6, 2023) ........................................55

*United States v. Thomas,*
 No. 2:23-cr-20036, Dkt. No. 27 (E.D. Mich. Apr. 25, 2023) ................54

*United States v. Thompson,*
 No. 22-cr-173, Dkt. No. 53 (E.D. La. Apr. 7, 2023) ............................54

*United States v. Torres,*
 911 F.3d 1253 (9th Cir. 2019) ............................................................31

*United States v. Torres-Rosario,*
 658 F.3d 110 (1st Cir. 2011) ..............................................................17

*United States v. Tran,*
 No. 3:22-cr-331, Dkt. No. 63 (S.D. Cal. Dec. 12, 2022) ......................58

*United States v. Tribble,*
 No. 2:22-cr-85, Dkt. No. 48 (N.D. Ind. Mar. 10, 2023) .......................54

*United States v. Trinidad,*
 No. 3:21-cr-398, Dkt. No. 99,
 2022 WL 10067519 (D.P.R. Oct. 17, 2022) .........................................60

*United States v. Tucker,*
 No. 2:22-cr-17, Dkt. No. 30,
 2023 WL 205300 (S.D.W. Va. Jan. 17, 2023) ......................................56

*United States v. Valdivia-Flores,*
 876 F.3d 1201 (9th Cir. 2017) ............................................................66

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                    **PAGE(S)**

*United States v. Vongxay,*
   594 F.3d 1111 (9th Cir. 2010)...................................................... passim

*United States v. Wagoner,*
   No. 4:20-cr-18, Dkt. No. 262,
   2022 WL 17418000 (W.D. Va. Dec. 5, 2022) ......................................58

*United States v. Walker,*
   No. 2:19-cr-234, Dkt. No. 83 (E.D. Cal. Dec. 6, 2022)..........................58

*United States v. Whittaker,*
   No. 1:22-cr-272, Dkt. No. 33 (D.D.C. Jan. 12, 2023) ...........................56

*United States v. Williams,*
   616 F.3d 685 (7th Cir. 2010)................................................................17

*United States v. Williams,*
   No. 1:21-cr-362, 2022 WL 17852517 (N.D. Ga. Dec. 22, 2022) ...........57

*United States v. Williams,*
   No. 3:21-cr-478, Dkt. No. 76 (S.D. Cal. Sept. 30, 2022)......................61

*United States v. Willis,*
   No. 1:22-cr-186, Dkt. No. 36 (D. Colo. Nov. 23, 2022) ........................59

*United States v. Wondra,*
   No. 1:22-cr-99, 2022 WL 17975985 (D. Idaho Dec. 27, 2022).............57

*United States v. Woolsey,*
   759 F.3d 905 (8th Cir. 2014)................................................................17

*United States v. Younger,*
   398 F.3d 1179 (9th Cir. 2005)..............................................................23

*United States v. Young,*
   No. 2:22-cr-54, Dkt. No. 47 (W.D. Pa. Nov. 7, 2022) ...........................59

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**  **PAGE(S)**

*Van Der Hule v. Holder,*
   759 F.3d 1043 (9th Cir. 2014) ............................................................... 16

*Walker v. United States,*
   No. 3:20-cv-31, Dkt. No. 16,
   2022 WL 16541183 (S.D. Cal. Oct. 28, 2022) ....................................... 60

*Young v. Hawaii,*
   992 F.3d 765 (9th Cir. 2021) .......................................................... 12, 28

**Federal Statutes**

18 U.S.C. § 922(g)(1) ................................................................... passim

18 U.S.C. § 925(c) ............................................................................. 67

18 U.S.C. § 3231 ................................................................................. 3

18 U.S.C. § 3742(a) ............................................................................ 3

28 U.S.C. § 1291 ................................................................................. 3

**State Statutes**

California Health and Safety Code § 11351.5 ......................................... 6

California Penal Code § 594(a) ............................................................. 6

California Penal Code § 29800(a)(1) ...................................................... 6

California Veh. Code § 2800.2 .......................................................... 6, 64

**Federal Rules**

Fed. R. App. P. 4(b)(1)(A)(i) ................................................................ 4

Fed. R. Crim. P. 12 ........................................................................... 12

Fed. R. Crim. P. 52(b) ....................................................................... 11

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                            **PAGE(S)**

Fed. R. Evid. 609(a) ................................................................. 7

## Other Authorities

2 *Laws of the State of New York*
  *Passed at the Sessions of the Legislature, (1785-1788),*
  (1886) ................................................................... 35, 36

2 *Statutes at Large of Pennsylvania from 1682 to 1801,*
  (1896) ........................................................................ 37

9 *Statutes at Large of Pennsylvania from 1682-1801,*
  (1903) ........................................................................ 45

*A Critical Guide to the Second Amendment,*
  62 Tenn. L. Rev. 461 (1995) ...................................... 15

*A Treatise on the Constitutional*
  *Limitations Which Rest upon the Legislative Power*
  *of the States of the American Union*, (1st ed. 1868) ........... 29

*Acts and Laws of the English Colony of*
  *Rhode Island and Providence-Plantations*
  *in New-England in America*, (1767) ............................. 38

*Being A Collection of All the Laws of Virginia,*
  (1820) ........................................................................ 43

*Commentaries on the Law of England,*
  (1st ed. 1769) ............................................................. 34

*Death Penalty: An American History,*
  (2002) ........................................................................ 35

*In Defense of Felon-in-Possession Laws,*
  43 Cardozo L. Rev. 1573 (2022) ................................ 39

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                    **PAGE(S)**

*Journals of the Continental Congress 1174-1789,*
(1906) ............................................................... 45

*Journal of the House of Lords*,
(1685-1691) .................................................. 41, 42

*Public and Private, of the Province of the Massachusetts Bay,*
(1878) ............................................................... 39

*Quaker State: Pennsylvania's Guide to Reducing the Friction
for Religious Outsiders Under the Establishment Clause,*
2 N.Y.U. J.L. & Liberty 28 (2006) ...................... 46

*Reviving the Excessive Fines Clause,*
102 Cal. L. Rev. 277 ............................... 35, 36, 37

*Statutes at Large; Being a Collection of All the
Laws of Virginia from the First Session of the Legislature*
(1821) ......................................................... 37, 45

*The Acts and Resolves, Public and Private
of the Province of the Massachusetts Bay,*
(1886) ............................................................... 45

*The Bill of Rights: A Documentary History,*
(1971) ............................................................... 33

*The Founders' Second Amendment:
Origins of the Right to Bear Arms,* (2008) ............ 48

*The Laws of Maryland, With the Charter, The Bill of Rights,
the Constitution of the State, and its Alterations, The Declaration
of Independence, and the Constitution of the United States, and its
Amendments,* (1811) ........................................ 38

*The Public Records of the Colony of Connecticut
From May, 1775 to June, 1776,* (1775 Con. Law) ... 44

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                         **PAGE(S)**

*The Second Amendment: A Dialogue,*
  49 Law & Contemp. Probs. 143 (1983)................................................15

*Unintended Collateral Consequences: Defining*
  *Felony in the Early American Republic,*
  57 Clev. St. L. Rev. 461 (2009) ...........................................................40

No. 22-50048

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

STEVEN DUARTE,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
DISTRICT COURT NO. CR 2:20-387-AB*

## GOVERNMENT'S ANSWERING BRIEF

# I

# INTRODUCTION

Following a jury trial, defendant—a five-time felon and gang member—was convicted of possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Before the district court, defendant never once mentioned the Second Amendment. But now, on appeal, he claims that § 922(g)(1) is unconstitutional as applied to him, a (self-

proclaimed) nonviolent felon. Defendant is wrong for a number of reasons.

First, defendant's argument is foreclosed by precedent. This Court has repeatedly upheld the constitutionality of § 922(g)(1) as applied to felons, nonviolent or otherwise. Those decisions remain undisturbed by—and, in fact, comport with—the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). In *Bruen*, the Court reiterated more than a dozen times that the right to keep and bear arms belongs to *law-abiding* citizens; this Court's decision in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), said the same thing. *Bruen* casts no doubt on longstanding prohibitions on the possession of firearms by felons.

Moreover, even if *Bruen* required this Court to jettison its precedent and consider the issue anew, defendant's forfeited constitutional argument would still fail. The Second Amendment's text, as historically understood, does not include felons. And even if this Court were inclined to disagree—parting with every court of appeals to consider the issue and more than a hundred district court decisions— defendant still could not establish any error that was clear or obvious

under plain-error review. Nor could he establish an effect on his substantial rights, since nothing in the record supports his claim that all five of his prior convictions were, in fact, nonviolent—and defendant offers no support or even developed argument for his assumption that an elements-based "categorical approach" should apply in this context.

Defendant's unpreserved Second Amendment claim should be rejected and his conviction affirmed.

## II

## ISSUE PRESENTED

Whether 18 U.S.C. § 922(g)(1), the federal statute that bars convicted felons from possessing firearms, is unconstitutional as applied to defendant—a five-time felon—where the claim was unpreserved below, is barred by the precedent of this Court and the Supreme Court, and has been rejected by every court to consider the issue.

## III

## STATEMENT OF THE CASE

## A. Jurisdiction, Timeliness, and Bail Status

The district court's jurisdiction rested on 18 U.S.C. § 3231. This Court's jurisdiction rests on 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

The district court entered judgment on February 28, 2022. (1-ER-3-7.)[1] Defendant filed a timely notice of appeal on March 9, 2022. (1-ER-23-28.) *See* Fed. R. App. P. 4(b)(1)(A)(i). Defendant is in custody.

## B. Statement of Facts and Procedural History

### 1. *Defendant is convicted of multiple felony offenses*

Defendant's criminal history spans nearly a decade. (PSR ¶¶ 2, 28-36.) Before committing this crime, he had sustained five felony convictions and five misdemeanor convictions in California state court. (*Id.*; *see also id.* ¶ 39.) At the time defendant committed the instant crime, he was on post-release community supervision and a member of the "18th Street" criminal street gang. (*Id.* ¶¶ 38, 62.)

### 2. *Defendant, a convicted felon, possesses a stolen firearm and ammunition*

In March 2020, at approximately 9:30 p.m., Inglewood Police Department officers saw a red Infiniti drive past them with tinted windows. (CR 169 at 44-45, 94.) They made a U-turn, followed the

---

[1] "ER" refers to defendant's Excerpts of Record. "AOB" refers to Appellant's Opening Brief and is followed by applicable page numbers. "PSR" refers to the Presentence Investigation Report and is followed by applicable paragraph references. "CR" refers to the Clerk's Record in the district court and is followed by the docket number.

Infiniti, and saw it run through a stop sign. (*Id.* at 45-46, 88, 95.) As they activated their car's lights and sirens, defendant—the sole passenger seated in the backseat—threw a black, semi-automatic, Smith and Wesson .380-caliber pistol out the rear window. (*Id.* at 46-47, 49, 95-96, 100-101; *see also* PSR ¶ 6.) The gun had been reported stolen months earlier. (PSR ¶ 8.)

The Infiniti continued down the block and eventually pulled over in a residential neighborhood. (CR 169 at 46-47.) After detaining the driver and defendant, the officers searched the car. (*Id.* at 50-52; *see also* PSR ¶ 7.) They found a Smith and Wesson magazine loaded with six .380-caliber bullets; the magazine had been stuffed between the center console and the front passenger seat, well within defendant's reach. (CR 169 at 102; *see also* PSR ¶ 7.) An officer inserted the magazine into the gun defendant had thrown out the car window, and it fit "perfectly." (PSR ¶ 7.)

### 3. *Defendant is charged with possession of a firearm and ammunition as a felon*

In September 2020, a federal grand jury charged defendant with possessing a firearm and ammunition after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (1-ER-19-22.) He had not one but

five felony convictions since 2013. (1-ER-20.) As alleged in the

indictment, those felonies were: (1) Vandalism, in violation of California

Penal Code Section 594(a); (2) Felon in Possession of a Firearm, in

violation of California Penal Code Section 29800(a)(1); (3) Evading a

Peace Officer, in violation of California Vehicle Code Section 2800.2;

(4) Possession of a Controlled Substance for Sale, in violation of

California Health and Safety Code Section 11351.5; and (5) Evading a

Peace Officer, in violation of California Vehicle Code Section 2800.2. (1-

ER-20; *see also* PSR ¶¶ 31, 34-36.) The indictment contained no

allegations about the factual circumstances of defendant's prior crimes,

or whether defendant had used violent means to commit them.

### 4. *Defendant is convicted at trial and receives a below-Guidelines sentence*

At no point before the district court did defendant mention the

Second Amendment, much less move for dismissal of the indictment on

the ground that § 922(g)(1) is unconstitutional as applied to him on the

ground that he is "nonviolent." (*See* 1-ER-29-42; AOB 5, 31-33.)

Rather, defendant went to trial, and a jury found him guilty of the

charge in the indictment. (CR 120.) Following trial, and through

sentencing, defendant still raised no Second Amendment challenge. Nor did he offer any evidence that his criminal past was nonviolent, or advance any significant argument on the point—other than to note his lack of "violent offenses" at sentencing (CR 135 at 11; CR 172 at 11), as well as in a pretrial filing addressing admissibility of prior convictions for impeachment purposes under Federal Rule of Evidence 609(a). (*See* CR 62 at 7 (defense motion); 1-ER-15 (gov't opposition).)

With a criminal history category of VI (the highest possible), defendant's Sentencing Guidelines range was 84 to 105 months' imprisonment. (PSR at 3.) That was based on a total offense level of 22, because defendant had sustained a felony conviction for a controlled substance offense and the firearm had been reported stolen. (*Id.* ¶¶ 14-24.) The PSR contained no additional information about whether the factual circumstances of defendant's prior convictions involved violence (*see* PSR ¶¶ 28-36), other than to note that his vandalism conviction involved a "gang enhancement" under California law (*id.* ¶ 31), and that his second felony evasion-of-a-police-officer conviction involved a misdemeanor hit-and-run (*id.* ¶ 36).

At sentencing, the government recommended that defendant be sentenced to 84 months' imprisonment. (CR 172 at 16-28.) Specifically, the government described defendant's felony convictions as "aggravating," because he "was on supervision" at the time he committed the instant crime; indeed, he "was on supervision" when he had committed previous crimes, too, and had even sustained a prior felon-in-possession conviction. (*Id.* at 24.) In short, defendant was not "just a repeat offender," but a "repeat offense offender." (*Id.*) The government further argued that defendant "has endangered the community and . . . continue[d] to endanger the community when he tossed the gun frame out on to the street" and when he possessed a "loaded firearm when he was not supposed to." (*Id.* at 24.)

The district court adjusted the PSR's calculations and imposed a below-Guidelines sentence. Specifically, the court declined to apply the two-level enhancement for the stolen firearm, and reduced defendant's criminal history category to V, because one prior offense resulted in diversion. (CR 172 at 29-30.) Based on those adjustments, defendant's Sentencing Guidelines range became 63 to 78 months' imprisonment,

and the district court imposed a below-Guidelines sentence of 51 months.  (*Id.* at 30, 34; 1-ER-3-7.)

# IV

# SUMMARY OF ARGUMENT

Defendant cannot show on plain-error review that the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), is unconstitutional as applied to him, a five-time felon.  This Court has upheld that statute multiple times, relying on, among other things, the Supreme Court's statement that such provisions are lawful.  *See, e.g.*, *United States v. Vongxay*, 594 F.3d 1111, 1115-18 (9th Cir. 2010).

*Bruen* did not upend this Court's precedent.  *Bruen* reiterated that the Second Amendment right, as historically understood, belongs to "law-abiding citizens," *e.g.*, 142 S. Ct. at 2131, and endorsed "shall-issue" firearm-carry licensing schemes that specifically deny licenses to felons, *id.* at 2138 n.9.  Indeed, six justices explicitly reiterated that the Court's decision should cast no doubt on longstanding prohibitions against felons' possession of firearms.  *Id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring); *id.* at 2157 (Alito, J., concurring); *id.* at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting).

And in terms of its analysis, far from overruling *Vongxay*, *Bruen* vindicated it: *Vongxay*, like *Bruen*, based its holding on the historical scope of the Second Amendment right, *see Vongxay*, 594 F.3d at 1116-18, not the "means-end scrutiny" that *Bruen* rejected, 142 S. Ct. at 2127. Defendant's argument is thus squarely foreclosed by precedent.

Moreover, even if this Court were free to consider the issue anew, § 922(g)(1) remains constitutional—and certainly defendant cannot meet his burden to show that it is *plainly unconstitutional* as applied to him. His argument fails each of the first three prongs of plain-error review. *First*, the Second Amendment's text, as historically understood, does not include felons: Section 922(g)(1) is consistent with the historical tradition of firearm regulation. When the Second Amendment was adopted, persons convicted of felonies were regularly subject to severe penalties, including death and forfeiture of their entire estates; they could also (as today) be excluded from other political rights, such as the right to vote, hold office, and serve on juries. *Second*, whatever merit there may be to defendant's contrary historical argument, it is far from clearly or obviously correct—no court has adopted it, and so at the very least defendant cannot show plain error.

And *third,* defendant cannot meet his burden to establish prejudice even under his own test: nothing in the record supports the conclusion that defendant or his criminal history is nonviolent. To the contrary, the limited record indicates that defendant is a recidivist gang member who has endangered the community around him. His claim to nonviolence appears to assume that this Court should import an elements-based "categorical approach" into Second Amendment law, but that assumption is unsupported and undeveloped.

Defendant's conviction should be affirmed.

# V

# ARGUMENT

## A.   Standard of Review

Generally, this Court reviews the constitutionality of a statute de novo. *Vongxay*, 594 F.3d at 1114. But where, as here, a defendant fails to preserve a claim before the district court, this Court reviews only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Mak*, 683 F.3d 1126, 1133 (9th Cir. 2012) ("[C]onstitutional issues not originally raised at trial are reviewed for plain error."). And where a claimed defect in a prosecution is apparent from the face of the indictment but not raised

before trial, it is not only forfeited but "waived" or barred completely under Federal Rule of Criminal Procedure 12(b)(3), unless the defendant can show "good cause" under Rule 12(c)(3).

Here, as defendant concedes, he failed to challenge § 922(g)(1) as applied to him in the district court. (AOB 5, 31-33.) Thus, to the extent that Rule 12(b)(3) does not bar his claim, this Court reviews for plain error, since plain-error review contains no exception for intervening precedent. *See, e.g.*, *United States v. Christensen*, 828 F.3d 763, 779 (9th Cir. 2015) ("Plain error review applies on direct appeal even where an intervening change in the law is the source of the error." (citing *Johnson v. United States*, 520 U.S. 461, 467-68 (1997)).[2]

---

[2] If *Bruen* had abrogated this Court's precedent, that might constitute "good cause" under Rule 12(c)(3). *See United States v. Tekle*, 329 F.3d 1108, 1112 (9th Cir. 2003). It did not, as explained below, but making that determination requires this Court to reach the merits of defendant's argument: the reason there is no good cause is that *Bruen* did not change this Court's precedent upholding § 922(g)(1). Regardless, the plain-error standard applies *even if Bruen* changed the law. *See Christensen*, 828 F.3d at 779. Nor does this case fall within this Court's "pure legal issue" exception to Rule 52(b)*, see United States v. McAdory*, 935 F.3d 838, 841-42 (9th Cir. 2019), because defendant advances an as-applied constitutional challenge. *United States v. Peeples*, 630 F.3d 1136, 1138 (9th Cir. 2010); *see also Young v. Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021) (en banc) (An as-applied challenge is "'wholly fact dependent.'"), *abrogated on other grounds by Bruen*, 142 S.

(continued . . . .)

**B.    Section 922(g)(1) is Constitutional Under the Precedents of Both the Supreme Court and this Court**

### 1.    *The Supreme Court held in* Heller *that the Second Amendment protects an individual right of law-abiding citizens*

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, the Supreme Court concluded, "on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."  554 U.S. 570, 595 (2008).

The Court made clear, however, that "the right secured by the Second Amendment is not unlimited."  *Id.* at 626; *cf. id.* at 635 (noting by way of analogy that certain types of speech, including "obscenity, libel, and disclosure of state secrets," fall outside the scope of the First Amendment's free-speech clause).  With respect to the Second Amendment, the Court identified the right to keep and bear arms as belonging to "law-abiding, responsible citizens."  *Id.* at 635.  And

---

Ct. at 2156; *Hatfield v. Barr*, 925 F.3d 950, 953 (7th Cir. 2019) ("[S]omeone who wants us to carve out particular felonies (or felons) from a category that the Supreme Court has said is presumptively valid must supply an adequate basis for that distinction.").

13

consistent with that understanding, the Court specifically stated that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which the Court deemed "presumptively lawful." *Id.* at 626 & n.26. Indeed, the Court stated that Heller—the plaintiff in that case—would be entitled to keep a handgun in his home "assuming" that he is "not disqualified from the exercise of Second Amendment rights." *Id.* at 635; *see also id.* at 631 (noting the assumption that Heller was "not a felon").

Two years later, in *McDonald v. City of Chicago*, a plurality of the Court "repeat[ed]" the "assurances" that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).

### 2. Following **Heller***, this Court repeatedly upheld § 922(g)(1) based on the text and history of the Second Amendment*

Following *Heller* and *McDonald*, this Court has upheld the constitutionally of § 922(g)(1).

Most important here, this Court's decision in *Vongxay* rejected a nonviolent felon's claim that § 922(g)(1) violated his Second Amendment

rights. 594 F.3d at 1118. As this Court held, felons are "categorically different from the individuals who have a fundamental right to bear arms." *Id.* at 1115. Relying on passages from *Heller* noted above, this Court determined that "[n]othing in *Heller* can be read legitimately to cast doubt on the constitutionality of § 922(g)(1)." *Id.* at 1114-15. To confirm its conclusion, this Court also examined "cases from other circuits and [] historical gun restrictions." *Id.* at 1116-17. And while recognizing that the "historical question" had not been "definitively resolved," this Court concluded that "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably . . . tied to' the concept of a 'virtuous citizen[ry],'" which excludes criminals. *Id.* at 1118 (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1983), and citing Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480 (1995)).

Critically, this Court's decision in *Vongxay* did not—even as an alternative holding—engage in an analysis involving intermediate scrutiny, strict scrutiny, or any "means-end" scrutiny balancing the costs and benefits of prohibiting felons from possessing firearms. *Cf.*

594 F.3d at 1117 (mentioning "heightened scrutiny" only to describe the Fifth Circuit's pre-*Heller* precedent). Instead, *Vongxay* based its holding on *Heller*'s "analy[sis] [of] the history of the Second Amendment." 594 F.3d at 1115.

This Court has since relied on *Vongxay* to repeatedly reject Second Amendment challenges to § 922(g)(1). *See, e.g.*, *United States v. Phillips*, 827 F.3d 1171, 1173-74 (9th Cir. 2016); *Van Der Hule v. Holder*, 759 F.3d 1043, 1050-51 (9th Cir. 2014); *cf. United States v. Chovan*, 735 F.3d 1127, 1144-45 (9th Cir. 2013) (Bea, J., concurring) (observing that "*Heller* seemed to equate the status of a felon . . . with a presumptive disqualification from the Second Amendment right," because "[t]hroughout history, felons have been subject to forfeiture and disqualification"). Indeed, numerous judges of this Court who have *dissented* from Second Amendment rulings in favor of the government in other contexts have relied on *Vongxay*'s holding that felons fall outside of the "historical scope of the Second Amendment." *Mai v. United States*, 974 F.3d 1082, 1091, 1093-94 (9th Cir. 2020) (Bumatay, J., joined by Ikuta, Bade, Hunsaker, JJ., dissenting from denial of rehearing en banc) (citing *Vongxay* and Blackstone for the proposition

16

that felons can be permanently dispossessed of the right to bear arms).
Nor is *Vongxay* an outlier: every other court of appeals to address the
issue has similarly concluded that felons do not have a constitutional
right to possess firearms.[3]

---

[3] *See United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir.
2011); *United States v. Bogle*, 717 F.3d 281, 281 (2d Cir. 2013) (per
curiam); *Hamilton v. Pallozzi*, 848 F.3d 614, 625-27 (4th Cir. 2017);
*United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United
States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010); *United States v.
Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *United States v. Woolsey*,
759 F.3d 905, 909 (8th Cir. 2014); *United States v. McCane*, 573 F.3d
1037, 1047 (10th Cir. 2009); *United States v. Rozier*, 598 F.3d 768, 770-
71 (11th Cir. 2010); *Medina v. Whitaker*, 913 F.3d 152, 157-60 (D.C. Cir.
2019). Although the Seventh, Eighth, and D.C. Circuits have left open
the possibility of an as-applied challenge, none of those courts have
actually found such a challenge to have merit. Only the Third Circuit,
in *Binderup v. Attorney General*, has ever held that the Second
Amendment rendered § 922(g)(1) unconstitutional as applied to a
particular individual, in a fractured en banc decision involving two
state-law misdemeanants—not felons. 836 F.3d 336, 351-52 (3d Cir.
2016); *cf. Folajtar v. Attorney General*, 980 F.3d 897, 902-03 (3d Cir.
2020) (distinguishing *Binderup* on the ground that it involved state-law
misdemeanors rather than felonies, even citing *Vongxay* for the
"historical justification" for excluding felons from the right to bear
arms).

17

### 3. *Vongxay remains controlling precedent, and its history-based analysis was reaffirmed—not overruled—by* Bruen

The Supreme Court's recent decision in *Bruen* changed none of this. *Heller* based its reasoning on the "text and history" of the Second Amendment, 554 U.S. at 595, as did *Vongxay*, 594 F.3d at 1115, 1118 (relying on the historical analysis in *Heller* and by "scholars of the Second Amendment"). And in *Bruen*, the Supreme Court reaffirmed this focus on "the Second Amendment's text, as informed by history." 142 S. Ct. at 2127; *see also id.* at 2128-29 ("constitutional text and history").

*Bruen* involved a state licensing regime for the public carrying of handguns that required applicants to demonstrate a "special need" to carry a gun in public. *Id.* at 2122. Both the applicants and the state agreed that the Second Amendment (as incorporated by the Fourteenth Amendment) "protect[s] the right[s]" of "ordinary, law-abiding citizens . . . to carry handguns publicly for their self-defense." *Id.*; *see also id.* at 2134 (looking to the Second Amendment's text and explaining that "'bear' naturally encompasses public carry"). The court of appeals, however, had upheld the "special need" licensing regime on the ground

18

that it satisfied intermediate scrutiny—i.e., that restricting the right to bear arms in public to those with a special need was "'substantially related to the achievement of an important governmental interest.'" *Id.* at 2125.

*Bruen* rejected such an "interest-balancing inquiry" or "means-end test" as inconsistent with *Heller*. *Id.* at 2129 (quotation marks omitted). Rather than apply a freestanding standard that "asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests," a court should look to "text and history" to "defin[e] the character of the right" or "the outer limits of the right," or to "assess[] the constitutionality of a particular regulation." *Id.* (quotation marks omitted). *Bruen* then undertook a lengthy historical analysis, *id.* at 2138-56, concluding that a state cannot "prevent[] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms" in public. *Id.* at 2156.[4]

---

[4] The Court also rejected out of hand the notion that the "island of Manhattan," or cities generally, could qualify as one of the "sensitive places" mentioned by *Heller* historically subject to "longstanding laws forbidding the carrying of firearms." *Id.* at 2133-34 (quotation marks

(continued . . . .)

Nothing in *Bruen* undermined *Vongxay*, or *Heller*'s recognition that felons do not have a constitutional right to bear arms. To the contrary, *Bruen*'s analysis implicitly acknowledged *Heller*'s exclusion of felons from "the people" protected by the Second Amendment. *See* 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, *law-abiding*, adult citizens—are part of 'the people' whom the Second Amendment protects." (emphasis added, citing *Heller*, 554 U.S. at 580)); *see also, e.g.*, *Heller*, 554 U.S. at 635 ("law-abiding, responsible citizens"). Indeed, *Bruen* repeatedly limited its definition of the scope of the right to "law-abiding" citizens, using that phrase no fewer than *14 times* throughout the opinion. *See* 142 S. Ct. at 2122, 2125, 2131, 2133-34, 2135 n.8, 2138 & n.9, 2150, 2156. And consistent with that definition of the scope of the right, *Bruen* approved of "shall-issue" state licensing regimes that "often require applicants to undergo a background check or pass a firearms safety course," since such requirements "are designed to ensure only that those bearing arms in

---

omitted) (noting schools, government buildings, legislative assemblies, polling places, and courthouses as examples of such "sensitive places").

the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* at 2138 & n.9 (quoting *Heller*, 554 U.S. at 635).

*Bruen* additionally stressed that it was "reiterat[ing]" *Heller*'s approach, clarifying the legal standard "[i]n keeping with *Heller*," and "apply[ing]" the "test that [the Court] set forth in *Heller*." 142 S. Ct. at 2126, 2129, 2131. Indeed, three justices who joined the Court's decision underscored the limits of *Bruen* and expressly noted that felon-possession prohibitions fell within them. *See id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating that "longstanding prohibitions on the possession of firearms by felons" are constitutional under *Heller* and *McDonald* (quotation marks omitted)); *id.* at 2157 (Alito, J., concurring) (explaining that *Bruen* did not "disturb[] anything that [the Court] said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns" (citation omitted)). Justice Alito made the point clearly: "All that we decide in this case is that the Second Amendment protects the right of *law-abiding* people to

carry a gun outside the home for self-defense." *Id.* at 2159 (emphasis added).[5]

### 4. *Defendant's arguments that* Bruen *overruled* Vongxay *are meritless*

This Court's decision in *Vongxay* is not "clearly irreconcilable" (AOB 25) with *Bruen*—as explained above, it is consistent with *Bruen*, and did not employ the means-end scrutiny that *Bruen* rejected. *See Vongxay*, 594 F.3d at 1115-18. Defendant's contrary arguments fundamentally misread *Vongxay*, *Heller,* and *Bruen*.

*First*, *Vongxay* did not improperly rely on cases holding that the Second Amendment protected a collective rather than individual right.

---

[5] In total, eight members of the *Bruen* Court—every member but Justice Barrett—has joined an opinion expressly approving of *Heller*'s and *McDonald*'s approval of felon-dispossession statutes. In addition to the three concurring justices noted above, the three dissenters in *Bruen* agreed with the concurrences that "the Court's opinion" should be understood as "cast[ing] no doubt on [the] aspect of *Heller*'s holding" permitting felons to be prohibited from possessing firearms. *Bruen*, 142 S. Ct. at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting). And two years earlier, Justices Thomas and Gorsuch wrote that *Heller* "recognized that history supported the constitutionality of some laws limiting the right to possess a firearm," including laws "prohibiting possession by felons and other dangerous individuals." *New York State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1540-41 (2020) (Alito, J., joined by Thomas and Gorsuch, JJ., dissenting from denial of *certiorari*).

(AOB 26-27.) *Vongxay* was decided after *Heller*; it obviously recognized that *Heller* "invalidated" this Court's pre-*Heller* caselaw holding that the Second Amendment did not protect an individual right. 594 F.3d at 1116. *Vongxay* cited *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), only to explain its pre-*Heller* precedent, and cited *United States v. Younger*, 398 F.3d 1179, 1192 (9th Cir. 2005), for the proposition that "that § 922(g)(1) does not violate the Second Amendment rights of a convicted felon." *Vongxay*, 594 F.3d at 1116. That holding was correct—even if, as *Vongxay* acknowledged, the reasoning was wrong—and this Court correctly explained why *Heller* did not disturb that holding. *Id.* at 1116-18. Indeed, in a later decision, this Court expressly rejected the argument that *Vongxay* somehow invalidated itself by citing pre-*Heller* precedent. *Phillips*, 827 F.3d at 1174 n.1.

*Second*, as noted, *Vongxay* does not refer to, much less apply, a "means-end test" to hold that § 922(g)(1) is constitutional. (AOB 26-27.) That *Vongxay* cited *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004), does not mean this Court engaged in means-end scrutiny rejected by *Bruen*. Rather, the Court cited *Everist* as an example from its "examination of cases from other circuits and of historical gun

restrictions [that] lends credence to the post-*Heller* viability of" its previous conclusion that § 922(g)(1) is constitutional. *Vongxay*, 594 F.3d at 1116-17.

*Third*, contrary to defendant's argument (AOB 27-30), *Bruen* is not an invitation to revisit the prohibitions that *Heller* recognized as "presumptively lawful," 554 U.S. at 627 n.26, including the possession of firearms by felons. That argument appears to be based on a misreading of both *Heller* and *Bruen*. *Heller* did not "include[] concealed carry laws as an example of a presumptively lawful regulation." (AOB 29.) The Court's reference to "19th-century courts" upholding "prohibitions on carrying concealed weapons" occurred in the prior sentence, not the following one enumerating examples of "presumptively lawful regulatory measures," such as felon dispossession. 554 U.S. at 627 & n.26. *See also* Order Denying Mot. to Dismiss, *United States v. Jacobs*, No. 2:22-CR-00160-MEMF (C.D. Cal. Nov. 28, 2022), Dkt. 28 at 6 n.3 (making this point). Moreover, *Bruen* did not invalidate prohibitions on carrying concealed weapons. (*Contra* AOB 29.) *Bruen* struck down general bans on carrying firearms "in public," 142 S. Ct. at 2135, and explained that, historically, states

24

"could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." *Id.* at 2150. *Bruen* did not in any way revisit *Heller*'s recognition that felons have no right to bear arms, or disturb *Vongxay*'s conclusion that *Heller's* statement regarding presumptively lawful measures was "integral" to its holding and not dicta. 594 F.3d at 1115.

Accordingly, *Vongxay* and its progeny constitute controlling circuit precedent that § 922(g)(1) is constitutional as applied to felons—nonviolent or otherwise. A circuit panel may disregard circuit precedent only when "the reasoning or theory of [the] prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003). *Bruen* repeatedly affirmed *Heller* and its definition of the scope of Second Amendment right to exclude felons, which this Court followed in *Vongxay* when concluding that felons are "categorically different from the individuals who have a fundamental right to bear arms." 594 F.3d at 1115-16; *see also Mai*, 974 F.3d at 1093 (dissental) (relying on *Vongxay* to explain felons fall outside the Second Amendment right because, "[u]nless pardoned, expunged, or set aside, a

conviction always remains a conviction under the law"). The fact that *Bruen* rejected an analysis that *Vongxay* did not deploy—means-end scrutiny—does not mean that *Bruen* "effectively overruled" *Vongxay*. *Miller*, 335 F.3d at 893. *Vongxay* remains binding precedent, and it forecloses defendant's argument.

## C. Even if *Bruen* Had Abrogated this Court's Precedent, Defendant Cannot Show Plain Error

Even if *Bruen* required this Court to consider § 922(g)(1)'s constitutionality afresh, defendant could not prevail—particularly on plain-error review.

Demonstrating reversible plain error under Rule 52(b) would require defendant to establish not only (1) an error but (2) a clear or obvious error that (3) prejudiced him, to the point of calling into question the fairness, integrity, or public reputation of his trial. *United States v. Lindsay*, 931 F.3d 852, 864 (9th Cir. 2019). Significantly, if his argument were not foreclosed by precedent, defendant would bear the burden of establishing both the second and third prongs—i.e., that the legal issue is "clear or obvious," as opposed to "highly unsettled," *United States v. Kilbride*, 584 F.3d 1240, 1255 (9th Cir. 2009), or where the relevant precedent "leads to conflicting results," *United States v.*

26

*Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011) (quotation marks omitted), and that as a factual matter the error "impacted his substantial rights by affecting the outcome of the district court proceedings," *United States v. Gonzalez-Aguilar*, 718 F.3d 1185, 1187 (9th Cir. 2013) (cleaned up).

Here, defendant cannot show any error at all, even putting to one side the holdings of *Vongxay*, *Heller*, and *Bruen*. Nor can he show any clear or obvious error, since every court to address the issue has ruled against him. Indeed, defendant cannot even show prejudice—i.e., that he would win even if this Court were to accept his argument that "nonviolent" felons have a right to possess firearms, since the record does not support his claimed nonviolence.

### 1. There was no error, because the Second Amendment's text and historical context show that felons can be constitutionally disarmed

This Court and other courts of appeals have previously traced the historical record underlying the Second Amendment in related contexts, some of which the government sets forth below. *See, e.g., Range v. Att'y Gen.*, 53 F.4th 262, 273-81 (3d Cir. 2022) (reviewing historical record relating to prohibiting felons' firearm possession), *reh'g en banc granted,*

*opinion vacated,* 2023 WL 1118469 (3d Cir. Jan. 6, 2023); *Young*, 992 F.3d at 786-813, *abrogated by Bruen*, 142 S. Ct. at 2156 (same, as to open-carry restrictions); *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 929-39 (9th Cir. 2016) (same, as to concealed-carry restrictions).[6]  That record demonstrates that the Second Amendment does not prevent Congress from banning firearm possession by felons, and that § 922(g)(1) comports with the Nation's historical tradition of firearm regulation.

### a.  The Second Amendment's text and history excludes felons

Where the validity of a restriction is challenged, a court looks to "the Second Amendment's plain text," as informed by "this Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2126. As set forth above, the Second Amendment protects "the right of the people to keep and bear Arms."  U.S. Const. amend. II.  It does not prevent legislatures from disarming felons.

---

[6] *See also* Appendix, Brief for Fed. Gov't, *Vincent v. Garland*, No. 21-4121 (10th Cir. Jan. 17, 2023) (providing links to access historical sources).

*First*, felons do not fall within "the people" protected by the Second Amendment, a term that *Heller* said refers to "members of the political community." *Heller*, 554 U.S. at 580. From the founding to the present, legislatures historically retained wide latitude to exclude felons from the political community. As Thomas Cooley explained in his "massively popular 1868 Treatise on Constitutional Limitations," *id.* at 616, "the *people* in whom is vested the sovereignty of the State . . . cannot include the whole population," and "[c]ertain classes have been almost universally excluded"—including "the idiot, the lunatic, and the felon, on obvious grounds." Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 28-29 (1st ed. 1868); *see also Kanter v. Barr*, 919 F.3d 437, 446 n.6 (7th Cir. 2019). Felons could therefore historically be excluded from "exercis[ing] the elective franchise," Cooley, *supra*, at 29, as well as from other, closely related "political rights"—including the rights to "hold public office," to "serve on juries," and, most relevant here, "the right to bear arms," Akhil Reed Amar, *The Bill of Rights* 48 (1998).

This remains true today. "The commission of a felony often results in the lifelong forfeiture of a number of rights" tied to membership in the political community, including "the right to serve on a jury and the fundamental right to vote." *Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir. 2019); *see also United States v. McCane*, 573 F.3d 1037, 1049 (10th Cir. 2009) (Tymkovich, J., concurring) (noting in a § 922(g)(1) case that felons also "lose out on fundamental rights such as voting and serving on juries, and face discrimination that need only survive rational basis review"). This reality aligns with this Court's view that "most scholars of the Second Amendment agree that the right to bear arms was inextricably tied to the concept of a 'virtuous citizenry' that would protect society through defensive use of arms against criminals, oppressive officials, and foreign enemies alike, and that the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals)." *Vongxay*, 594 F.3d at 1118 (cleaned up).

Contrary to defendant's contention (AOB 10-11), the term "people" need not have the same meaning in the Second Amendment that it does in the First and Fourth Amendments. When discussing the ambit of the Second Amendment, the Supreme Court initially described the right

as belonging to "all members of the political community." *Heller*, 554
U.S. at 580.  But the Court made this comment in the context of
concluding that the Amendment confers "an 'individual right,' unrelated
to service in militia." *United States v. Torres*, 911 F.3d 1253, 1259 (9th
Cir. 2019) ("[T]he *Heller* decision did not resolve *who* had the Second
Amendment right; *Heller* resolved if there were an individual right *per
se* under the Second Amendment." (emphasis in original)).[7]  As
described above, the Court went on to define the right as belonging to
"law-abiding, responsible citizens," *id.* at 635, and repeated that
definition at length in *Bruen*, *e.g.*, 142 S. Ct. at 2122, 2156.  Nowhere in
defendant's brief does he even acknowledge, much less confront, the
Court's consistent interpretation of the right as one belonging to "law-
abiding" citizens.

---

[7] Defendant's cases—*United States v. Jimenez-Shilon*, 34 F.4th
1042, 1044-45 (11th Cir. 2022), and *United States v. Meza-Rodriguez*,
798 F.3d 664, 670-71 (7th Cir. 2015)—concern an entirely different
question: whether an unlawfully present alien falls within the scope of
the Second Amendment.  In *Torres*, this Court explicitly opted for the
Tenth Circuit's approach on this issue, which was to assume without
deciding that an unlawfully present alien falls within the Second
Amendment's scope.  911 F.3d at 1261-62.

31

*Second*, the "right . . . to keep and bear arms" has never been understood to prevent disarming felons. While the historical record is set forth in detail below, two examples aptly reflect the historical understanding of the Second Amendment. The first example stems from English law: *Heller* explained that "the Second Amendment was not intended to lay down a 'novel principl[e]' but rather codified a right 'inherited from our English ancestors.'" 554 U.S. at 599 (quoting *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897)). The 1689 English Bill of Rights, which "has long been understood to be the predecessor to our Second Amendment," *id.* at 593, provided that "the Subjects which are Protestants, may have Arms for their Defence *suitable to their Conditions, and as allowed by Law,*" *id.* (quoting 1 W. & M., ch. 2, § 7, in 3 Eng. Stat. at Large 441 (emphasis added)). That meant that "the legislature—Parliament—had the power and discretion to determine who was sufficiently loyal and law-abiding to exercise the right to bear arms," *Range*, 53 F.4th at 275, and that when the Second Amendment "codified [the] pre-existing right" to bear arms, it codified a right that was "not unlimited," *Heller*, 554 U.S. at 592, 595, 626.

32

The second example stems from the Constitution's ratification debates. In a "highly influential" proposal, *Heller*, 554 U.S. at 604, a group of Pennsylvania Antifederalists sought an amendment guaranteeing the right to bear arms "unless for crimes committed, or real danger of public injury." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 662, 665 (1971)). This "Second Amendment precursor[ ]," *Heller*, 554 U.S. at 604, explicitly allowed legislatures to disarm those who had committed "crimes," such as felonies. This too confirms that the Second Amendment's text, as historically understood, applied only to law-abiding citizens.

### b. The nation's historical tradition confirms that felons can be disarmed

Section 922(g)(1)'s constitutionality is further confirmed by a review of "this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Specifically, two types of historical laws support § 922(g)(1)'s constitutionality: (1) laws authorizing capital punishment and estate forfeiture for felons, and (2) laws disarming those deemed untrustworthy based on lack of adherence to the rule of law.

33

      i.    Laws authorizing capital punishment and estate forfeiture

For centuries, felonies have been "the most serious category of crime," *Medina*, 913 F.3d at 158, resulting in "forfeiture of property and rights," *Mai*, 974 F.3d at 1093 (dissental).

In 1769, Blackstone defined a felony as "an offence which occasions a total forfeiture of either lands, or goods, or both, at the common law; and to which capital or other punishment may be superadded, according to the degree of guilt." 4 William Blackstone, *Commentaries on the Laws of England* 95 (1st ed. 1769). Blackstone observed that "[t]he idea of felony is so generally connected with that of capital punishment, that we find it hard to separate them." *Id.* at 98 (capitalization omitted).

Capital punishment and forfeiture of estate were also commonly authorized punishments in the American colonies (and then the states) around the time of the founding. *See Folajtar v. Attorney General*, 980 F.3d 897, 904-05 (3d Cir. 2020). Capital punishment for felonies was "ubiquit[ous]" in the late eighteenth century and was "'the standard penalty for all serious crimes.'" *See Baze v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J., concurring in the judgment) (quoting Stuart Banner, *The*

*Death Penalty: An American History* 23 (2002)).  Indeed, the First Congress (which drafted and proposed the Second Amendment) made a variety of felonies punishable by death, including treason, murder on federal land, forging or counterfeiting a public security, and piracy on the high seas.  *See* An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112-15 (1790).  And many American jurisdictions up through the end of the 1700s authorized complete forfeiture of a felon's estate.  *See* Beth A. Colgan, *Reviving the Excessive Fines Clause*, 102 Cal. L. Rev. 277, 332 & nn.275-276 (2014) (citing statutes) (noting that statutes calling for a forfeiture of estate upon conviction "were in vogue" during the Revolutionary war).

A few examples demonstrate the severe consequences of committing a felony at the time.  In 1788, just three years before the Second Amendment's ratification, New York passed a law providing for the death penalty for crimes such as burglary, robbery, arson, malicious maiming and wounding, and counterfeiting.  2 *Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788)* at 664-65 (1886).  The act established that every person convicted of an offense making the person "liable to suffer death, shall forfeit to the people of

this State, all his, or her goods and chattels, and also all such lands, tenements, or hereditaments" the person possessed "at the time of any such offence committed, or at any time after." *Id.* at 666. For all other felonies, the authorized punishment for "the first offence" was a "fine, imprisonment, or corporal punishment," and the punishment "for any second offense or felony committed after such first conviction" was "death." *Id.* at 665.

Two years earlier, New York had passed a law severely punishing counterfeiting of bills of credit. 2 *Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788)* at 260-61 (1886). The law said a counterfeiter "shall be guilty of felony, and being thereof convicted, shall forfeit all his or her estate both real and personal to the people of this State, and shall be committed to the [correction house] of the city of New York for life, and there confined to hard labor." *Id.* at 261. In addition, "to prevent escape," the defendant was to be "branded on the left cheek with the letter C, with a red hot iron." *Id.*

Similarly, in 1777, Virginia adopted a law for the punishment of forgery, which the legislature believed had previously "ha[d] not a punishment sufficiently exemplary annexed thereto." 9 William Waller

Hening, *Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature* 302 (1821) (1777 Va. forgery law). The act stated that anyone convicted of forging, counterfeiting, or presenting for payment a wide range of forged documents "shall be deemed and holden guilty of felony, shall forfeit his whole estate, real and personal, shall receive on his bare back, at the publick whipping post, thirty nine lashes, and shall serve on board some armed vessel in the service of this commonwealth, without wages, for a term not exceeding seven years." *Id.* at 302-03; *see also, e.g., A Digest of the Laws of Maryland* 255-56 (1799) (collecting Maryland forgery laws enacted between 1776 and 1778, each of which provided that those convicted "shall suffer death as a felon, without benefit of clergy").

Throughout the 1700s, other American colonies punished a variety of crimes with death, estate forfeiture, or both. For example, a 1700 Pennsylvania law provided that any person convicted of "wilfully firing any man's house, warehouse, outhouse, barn or stable, shall forfeit his or her whole estate to the party suffering, and be imprisoned all their lives in the House of Correction at hard labor." 2 *Statutes at Large of Pennsylvania from 1682 to 1801* at 12 (1896). A 1705 Pennsylvania law

provided that a person convicted of rape "shall forfeit all his estate" if unmarried, and "one-third part thereof" if married, in addition to receiving 31 lashes and imprisonment for "seven years at hard labor." *Id.* at 178. As 1715 Maryland law provided that anyone convicted of "corruptly embezzling, impairing, razing, or altering any will or record" that resulted in injury to another's estate or inheritance "shall forfeit all his goods and chattels, lands and tenements." 1 *The Laws of Maryland[,] With the Charter, The Bill of Rights, the Constitution of the State, and its Alterations, The Declaration of Independence, and the Constitution of the United States, and its Amendments* 79 (1811). A 1743 Rhode Island law provided that any person convicted of forging or counterfeiting bills of credit "be adjudged guilty of Felony" and "suffer the Pains of Death" and that any person knowingly passing a counterfeit bill be imprisoned, pay double damages, and "forfeit the remaining Part of his Estate (if any he hath) both real and personal, to and for the Use of the Colony." *Acts and Laws of The English Colony of Rhode Island and Providence-Plantations in New-England in America* 33-34 (1767). And a 1750 Massachusetts law provided that rioters who refused to disperse "shall forfeit all their lands and tenements, goods

and chattles [sic]," in addition to receiving 39 lashes and one year's imprisonment.  3 Acts and Resolves, *Public and Private, of the Province of the Massachusetts Bay* 545 (1878).

This "widespread, continued condemnation of felons, including those who committed non-violent offenses, to death demonstrates that in 1791 Americans understood felons, as a group, to commit serious crimes." *Folajtar*, 980 F.3d at 905.  It is also compelling evidence that "framers could not have intended Second Amendment guarantees to apply to felons if, as a rule, all the felons were dead."  Dru Stevenson, *In Defense of Felon-in-Possession Laws*, 43 Cardozo L. Rev. 1573, 1587 (2022).  Thus, "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms."  *Medina*, 913 F.3d at 158.

Defendant provides no good reason to disregard this history.  That the death penalty was used "sparingly" (AOB 19-20) is "beside the point," because "[w]hat matters is the exposure" those would face for committing a felony.  *Range*, 53 F.4th at 281 n.24 (citing *Kanter*, 919 F.3d at 459 ("[M]any crimes remained eligible for the death penalty.") (Barrett, J., dissenting)).  And while penalties for felony crimes became

less severe in the decades following American independence (AOB 20),

states passed laws "replacing capital punishment with incarceration,

using the term 'felony' to denote crimes that required time in prison to

'reform[] [] the convict's character,' in contrast to less serious crimes

'that only required a sharp reminder to obey the law,'" *Folajtar*, 980

F.3d at 905 (quoting Will Tress, *Unintended Collateral Consequences:*

*Defining Felony in the Early American Republic*, 57 Clev. St. L. Rev.

461, 463 (2009)). *See also Medina*, 913 F.3d at 158. Thus, "even as the

term evolved and expanded, felonies continued to reflect the category of

serious crimes committed by those outside the virtuous citizenry."

*Folajtar*, 980 F.3d at 905.

> ii.   Laws disarming untrustworthy individuals and
>        those outside the political community

A second category of laws also provides an analogy to felon

disarmament: historical laws that "categorically disqualified people

from possessing firearms based on a judgment that certain individuals

were untrustworthy parties to the nation's social compact." *Range*, 53

F.4th at 274; *see also Folajtar*, 980 F.3d at 908-10 (reviewing historical

evidence and concluding that such disqualification was not limited to

dangerousness); *Medina*, 913 F.3d at 159 ("The historical evidence and

40

the Supreme Court's discussion of felon disarmament laws leads us to reject the argument that non-dangerous felons have a right to bear arms.").

In England, Parliament's authority to disarm classes of people who (in its view) could not be depended upon to obey the law was well established. As noted above, in 1689, the same Parliament that "wr[ote] the 'predecessor to our Second Amendment' into the 1689 English Bill of Rights," *Bruen*, 142 S. Ct. at 2141 (quoting *Heller*, 554 U.S. at 593), also passed an "Act for the better secureing the Government by disarming Papists and reputed Papists," 1 W. & M., Sess. 1, ch. 15, 6 Statutes of the Realm 71.[8] That Act provided that any Catholic who refused to make a declaration renouncing his faith could not "have or keepe in his House or elsewhere" any "Arms Weapons Gunpowder or Ammunition (other than such necessary Weapons as shall be allowed to him by Order of the Justices of the Peace . . . for the defence of his House or person)." *Id.* at 72. The required oath "was a

---

[8] Though the statutory compilation identifies this as a 1688 act, it was enacted in 1689. See 14 *Journal of the House of Lords* (1685-1691) 208-09 (reflecting enactment on May 11, 1689).

gesture of allegiance to the English government and an assurance of conformity to its laws." *Range*, 53 F.4th at 275.

Defendant's counter that "threatened violence" animated the disarmament of Catholics is mistaken. (AOB 18.) That "interpretation not only rests on the implausible premise that all Catholics were violent, but also ignores the more likely historical reason for disarming this entire group: their perceived disrespect for and disobedience to the Crown and English law." *Range*, 53 F.4th at 275. Indeed, once individuals swore that they rejected the tenets of Catholicism, their right to weapons was restored. *See* 1 W. & M., Sess. 1, ch. 15, *in* 6 *The Statutes of the Realm*, *supra*, at 72.

The American colonies enacted similar laws. For example, "several colonies enacted complete bans on gun ownership by slaves and Native Americans," based on "alienage or lack of allegiance to the sovereign." *Jimenez-Shilon*, 34 F.4th at 1047 (quotation marks omitted). And during the French and Indian War, Virginia imported the English tradition of disarming Catholics who refused to take a loyalty oath. *See* 7 The Statutes at Large; *Being A Collection of All the Laws of Virginia* 35-39 (1820) (1756 Va. law). Like the English law

42

discussed above, the Virginia statute tied disarmament to failure to take a loyalty oath and exempted those who took the oath. *Id.* at 38. Maryland and Pennsylvania similarly confiscated firearms from Catholics. *See Range*, 53 F.4th at 277 (citing historical sources). Those laws also did not respond to "violence," as "Catholics had remained peaceable even when the colony's Anglicans Protestants took control of its government and required Catholics to take oaths recognizing the legal authority of the Crown, rather than the Pope, over matters of religion." *Id.* (citing historical sources); *see also id.* at 276 (describing Massachusetts 1630s disarmament of an outspoken preacher "not because those supporters had demonstrated a propensity for violence," but because they disavowed "the rule of law" and failed to obey "the commands of the government").

To be sure, such specific "status-based regulations of this period are repugnant (not to mention unconstitutional)." *Range*, 53 F.4th at 276 n.18. But the fact that they would run afoul of the First or Fourteenth Amendments, which did not yet exist, does not alter the conclusion that the "pre-existing right" codified in the Second Amendment, *Heller*, 554 U.S. at 592, allowed legislatures "the power

and discretion to use status as a basis for disarmament" even of nonviolent groups, *Range*, 53 F.4th at 276 n.18.

Similarly, during the Revolutionary War, American legislatures passed numerous laws "disarming non-violent individuals because their actions evinced an unwillingness to comply with the legal norms of the nascent social compact"—often specifically targeting those who failed to demonstrate loyalty to the new American government. *Range*, 53 F.4th at 277; *Folajtar*, 980 F.3d at 908 ("[O]ther colonies did not require violence or dangerousness for disarmament."). An early example is a 1775 Connecticut law providing that any person convicted of "libel[ing] or defam[ing]" any acts or resolves of the Continental Congress or the Connecticut General Assembly "made for the defence or security of the rights and privileges" of the colonies "shall be disarmed and not allowed to have or keep any arms." *The Public Records of the Colony of Connecticut From May, 1775 to June, 1776*, at 1993 (1890) (1775 Conn. law). And in 1776, the Continental Congress recommended that the colonial governments disarm those who were "notoriously disaffected to the cause of America" or who simply "have not associated" with the colonial governments in the war effort. 4 *Journals of the Continental*

*Congress 1774-1789*, at 205 (1906) (resolution of March 14, 1776). At least six of the governments enacted legislation in this vein—disarming the "disaffected" who refused to take an oath of allegiance to those states. *See, e.g.*, 5 *The Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay* 479-84 (1886) (1776 Mass. law).

Pennsylvania's statute offers a particularly clear rebuttal to the claim that only dangerous felons could be disarmed. Pennsylvania's state constitution protected the people's right to bear arms, *see Heller*, 554 U.S. at 601, but its statute nonetheless provided that all white males over eighteen must swear to "be faithful and bear true allegiance to the commonwealth of Pennsylvania as a free and independent state," and that those who failed to take the oath—regardless of dangerousness or propensity for physical violence—"shall be disarmed" by the local authorities. 9 *The Statutes at Large of Pennsylvania from 1652-1801*, 110, 111, 112-13, § 3 (William Stanley Ray ed., 1903); *see also Range*, 53 F.4th at 278. Pennsylvania thus deprived sizeable numbers of pacifists of the right to bear arms, because oath-taking violated Quakers' and others' religious convictions. *See Range*, 53 F.4th at 278 (citing Jim Wedeking, *Quaker State: Pennsylvania's Guide to Reducing the Friction*

*for Religious Outsiders Under the Establishment Clause*, 2 N.Y.U. J.L. & Liberty 28, 51 (2006)). Quakers were obviously not "suspected of possible rebellion." (AOB 18.) *See Heller*, 554 U.S. at 590 ("Quakers opposed the use of arms not just for militia service, but for any violent purpose whatsoever."); *cf. Folajtar*, 980 F.3d at 908, n.11 (explaining "[r]efusing to swear an oath" does not "qualify as dangerous").

In sum, the disarmament measures adopted during the Republic's early period reflect that "legislatures were understood to have the authority and broad discretion to decide when disobedience with the law was sufficiently grave to exclude even a non-violent offender from the people entitled to keep and bear arms." *Range*, 53 F.4th at 279 (offering, as another example, a Virginia law that disarmed individuals who refused to swear a loyalty oath but still required them to attend militia trainings and run drills without weapons); *cf.* Stevenson, *supra*, at 1586 ("[T]he founders thought the legislature should decide which groups pose a threat to the social order or the community.").

Finally, the ratification debates leading up to the enactment of the Constitution confirm this understanding that legislatures had the power to disarm groups that could not be trusted to follow the law.

46

Specifically, three of the thirteen states proposed amendments "limiting the right to bear arms to *both* law-abiding *and* 'peaceable' citizens." *Folajtar*, 980 F.3d at 908 (emphasis in original); *see also Medina*, 913 F.3d at 159. In Pennsylvania, and as noted above, the Antifederalists proposed a constitutional amendment providing that "no law shall be passed for disarming the people or any of them unless *for crimes committed*, or real danger of public injury from individuals." Schwartz, *supra*, at 665 (emphasis added, reproduced at *Skoien*, 614 F.3d at 648 (Sykes, J., dissenting)). Again, that illustrates the founding generation's recognition that "crimes committed"—violent or not—could supply an independent ground for a legislature to prohibit firearm possession. *See, e.g.*, *Medina*, 913 F.3d at 158-59 ("The use of the word 'or' indicates that criminals, in addition to those who posed a 'real danger' . . . were proper subjects of disarmament."). Similar proposals were adopted at the ratifying conventions of Massachusetts and New Hampshire. 2 Schwartz, *supra*, at 675, 681, 758, 761.

Contrary to defendant's argument (AOB 16), the fact that the Second Amendment did not adopt the wording of those proposals does not undermine their significance. To the contrary, their significance, as

*Heller* explained, lies in revealing the nature of the right as it was understood at the time. *See* 554 U.S. at 604 (relying on the Pennsylvania, Massachusetts, and New Hampshire proposals to conclude that they "plainly" and "unequivocally referred to individual rights"). Not all limitations are explicit. *See, e.g.*, *id.* at 635 ("obscenity, libel, and disclosure of state secrets," fall outside the scope of the First Amendment). It would have been "'obvious'" to the founders that certain groups, including (but not necessarily limited to) "'the felon,'" *Kanter*, 919 F.3d at 446 n.6 (quoting Cooley, *supra*, at 29), could properly be subject to disarmament laws consistent with the "pre-existing right" that was "codified" in the Second Amendment, *Bruen*, 142 S. Ct. at 2127. *See also Heller*, 554 U.S. at 592; *Amar*, *supra*, at 48; Stephen P. Halbrook, *The Founders' Second Amendment: Origins of the Right to Bear Arms* 273 (2008) (founding-era proponents of a constitutional right to bear arms "did not object to the lack of an explicit exclusion of criminals from the individual right to keep and bear arms" during the debates over "what became the Second Amendment," because this limitation "was understood").

48

Nor can these important Second Amendment precursors be "shoehorn[ed] . . . into the silo of dangerousness." *Folajtar*, 980 F.3d at 908-09. Even limiting the right to "peaceable citizens," as Samuel Adams' Massachusetts proposal would have (AOB 15-16), fails to indicate that legislatures only disarmed citizens who threatened violence or risked public injury. Common-law breaches of the peace did "not necessarily involve violence or a threat." *Atwater v. City of Lago Vista*, 532 U.S. 318, 327 n.2 (2001) (citing historical sources). And while "some of the laws at the Founding were concerned about dangerousness" and that "was one reason to restrict firearm possession," "it hardly was the only one." *Folajtar*, 980 F.3d at 909.

### c. *Section 922(g)(1) is relevantly similar to historical laws regulating firearms*

The historical laws discussed above demonstrate § 922(g)(1)'s constitutionality. *Bruen* recognized that "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791," and explained that courts should "reason[] by analogy—a commonplace task for any lawyer or judge." *Bruen*, 142 S. Ct. at 2132. A court should ask "how and why the regulations burden a law-abiding citizen's right to armed self-defense."

*Id.* at 2133. Put another way, the "central considerations" are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133 (emphasis and quotation marks omitted).

Under the first metric, § 922(g)(1) imposes *no* "burden [on] a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2133. "[C]onviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment." *Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017). Moreover, the burden imposed on the felon's rights is comparable to historical laws disarming the untrustworthy and *less* severe than many historical felony-punishment laws, which often included the death penalty and forfeiture of one's property.

Furthermore, the modern and historical laws are "comparably justified." *Bruen*, 142 S. Ct. at 2133. The historical laws sought to punish felons and deter re-offending, as well as to protect society from the untrustworthy. Section 922(g)(1) serves a more limited but equally justified purpose. It seeks to protect society from gun violence committed by felons, who have previously shown disregard for society's

50

laws and are more likely to reoffend potentially in dangerous ways.
Indeed, that was the case here. Defendant's felony convictions were
"aggravating" because he was not "just a repeat offender," he was a
"repeat offense offender." (CR 172 at 24.)

Defendant's claim that § 922(g)(1) is inconsistent with the nation's
history of firearm regulation because it is a "late invention" (AOB 14),
misunderstands *Bruen's* historical inquiry. *Bruen* emphasized that the
government need only identify a "historical *analogue*, not a historical
*twin*." 142 S. Ct. at 2133 (emphasis in original). "[A]nalogical
reasoning under the Second Amendment is neither a regulatory
straightjacket nor a regulatory blank check." *Id.* As explained above,
§ 922(g)(1) and the historical laws are "relevantly similar," *id.* at 2132,
because they imposed severe consequences on the commission of a
felony and authorized legislatures to disarm untrustworthy people.

Moreover, the lack of an identical historical statute does not
suggest that the founding generation would have viewed § 922(g)(1) as
violating the Second Amendment. As one district court recently
observed, a "list of the laws that *happened to exist* in the founding era is
. . . not the same thing as an exhaustive account of what laws would

51

have been theoretically *believed to be permissible* by an individual sharing the original public understanding of the Constitution." *United States v. Kelly*, No. 3:22-CR-37, 2022 WL 17336578, at *2 (M.D. Tenn. Nov. 16, 2022) (emphasis in original). Founding-era legislatures cannot be presumed to have legislated to the full limits of their constitutional authority.

In sum, § 922(g)(1) comports with the nation's historical tradition of firearm regulation; defendant cannot show that § 922(g)(1) is unconstitutional as applied to him.

### 2. *There was no clear or obvious error, since every court to address the issue has rejected defendant's argument*

Even if defendant's historical argument were correct, he would still be unable to establish plain error.

Not only is there no reason to think that § 922(g)(1) is all of a sudden unconstitutional after *Bruen*, but no court to consider the issue has come to that conclusion. The Fifth Circuit has twice considered and rejected a post-*Bruen* challenge to the constitutionality of § 922(g)(1) on plain-error review. *See United States v. Roy*, No. 22-10677, 2023 WL 3073266, *1 (5th Cir. Apr. 25, 2023); *United States v. Hickox*, No. 22-50365, 2023 WL 3075054, *1 (5th Cir. Apr. 25, 2023). The Third Circuit

also rejected a post-*Bruen* challenge to § 922(g)(1), although the panel

decision was vacated and the case is currently before the en banc court.

*See Range*, 53 F.4th at 262, *reh'g en banc granted, opinion vacated,* 2023

WL 1118469 (3d Cir. Jan. 6, 2023).  And before *Bruen*, of course, "no

circuit" ever held § 922(g)(1) unconstitutional as applied to a convicted

felon.  *Medina*, 913 F.3d at 155.[9]

    In addition, over 100 district court decisions have considered post-

*Bruen* challenges to the constitutionality of § 922(g)(1).  As far as the

government is aware, none of them have held that prohibiting a felon

from possessing a firearm or ammunition is unconstitutional.  *See*

*United States v. Meyer*, No. 22-cr-10012, Dkt. No. 53 (S.D. Fla. May 9,

2023); *United States v. Carter*, No. 22-cr-20477, Dkt. No. 51 (E.D. Mich.

May 9, 2023); *United States v. Bluer*, No. 22-cr-20557, Dkt. No. 27 (E.D.

Mich. May 8, 2023); *United States v. Hazley*, No. 22-cr-20612, Dkt. No.

32 (E.D. Mich. May 5, 2023); *United States v. Murphy*, No. 22-cr-121,

---

[9] Post-*Bruen*, this Court has not considered an as-applied
challenge to § 922(g)(1), although it has issued an order upholding a
pre-trial release condition barring a non-felon from possessing a
firearm, noting that an "opinion explaining this disposition" would
follow.  *See United States v. Garcia*, C.A. No. 22-50314 (9th Cir. Jan. 26,
2023) (Dkt. No. 21).

Dkt. No. 42 (N.D. Ill. May 3, 2023); *United States v. Thompson*, No. 22-cr-173, Dkt. No. 53 (E.D. La. Apr. 7, 2023); *United States v. Taylor*, No. 22-cr-20315, Dkt. No. 36 (E.D. Mich. Apr. 26, 2023); *United States v. McIlwain*, No. 2:23-cr-20012, Dkt. No. 28 (E.D. Mich. Apr. 26, 2023); *United States v. Thomas*, No. 2:23-cr-20036, Dkt. No. 27 (E.D. Mich. Apr. 25, 2023); *United States v. Cummings*, No. 1:22-cr-51, Dkt. No. 49 (N.D. Ind. Apr. 20, 2023); *United States v. Payne*, No. 4:22-cr-173, Dkt. No. 24 (S.D. Tex. Apr. 12, 2023); *United States v. Guthery*, No. 2:22-cr-173, Dkt. No. 49 (E.D. Cal. Mar. 29, 2023); *United States v. Finney*, No. 2:23-cr-13, Dkt. No. 23 (E.D. Va. Mar. 29, 2023); *United States v. Dixon*, No. 1:22-cr-140, Dkt. No. 76 (N.D. Ill. Mar. 28, 2023); *United States v. Pena*, No. 2:22-cr-366, Dkt. No. 95 (C.D. Cal. Mar. 21, 2023); *United States v. Hoeft*, No. 4:21-cr-40163, Dkt. No. 103 (D.S.D. Mar. 21, 2023); *United States v. Davis*, No. 1:23-cr-10018, Dkt. No. 49 (D. Mass. Mar. 17, 2023); *United States v. Rice*, No. 3:22-cr-36, Dkt. No. 40 (N.D. Ind. Mar. 17, 2023); *United States v. Davis*, No. 1:21-cr-206, Dkt. No. 86 (E.D. Cal. Mar. 14, 2023); *United States v. Kilgore*, No. 1:21-cr-277, Dkt. No. 40 (E.D. Cal. Mar. 14, 2023); *United States v. Lindsey*, No. 4:22-cr-138, Dkt. No. 25 (S.D. Iowa Mar. 10, 2023); *United States v. Tribble*, No.

54

2:22-cr-85, Dkt. No. 48 (N.D. Ind. Mar. 10, 2023); *Leonard v. United States*, No. 1:22-cv-22670, Dkt. No. 15 (S.D. Fla. Mar. 10, 2023); *United States v. Therrien*, No. 1:21-cr-10323 (D. Mass. Mar. 6, 2023); *United States v. Price*, No. 1:19-cr-824, Dkt. No. 105 (N.D. Ill. Mar. 3, 2023); *United States v. Belin*, No. 1:21-cr-10040, Dkt. No. 65 (D. Mass. Mar. 2, 2023); *United States v. Clark*, No. 1:20-cr-49, Dkt. No. 61 (N.D. Ind. Mar. 2, 2023); *United States v. Braster*, No. 1:20-cr-66, Dkt. No. 42 (N.D. Ind. Mar. 2, 2023); *United States v. Barnes*, No. 1:22-cr-43, Dkt. No. 42 (S.D.N.Y. Feb. 28, 2023); *United States v. Beard*, No. 4:22-cr-92, Dkt. No. 58 (S.D. Tex. Feb. 27, 2023); *United States v. Smith*, No. 2:22-cr-20351, Dkt. No. 35 (E.D. Mich. Feb. 24, 2023); *United States v. Barber*, No. 3:22-cr-65, Dkt. No. 58 (D. Ak. Feb. 21, 2023); *United States v. Ross*, No. 2:22-cr-20049, Dkt. No. 34 (E.D. Mich. Feb. 15, 2023*); United States v. Price*, No. 1:21-cr-164, Dkt. No. 122 (N.D. Ill. Feb. 13, 2023); *United States v. Gleaves*, No. 3:22-cr-14, Dkt. No. 116 (M.D. Tenn. Feb. 6, 2023); *United States v. Bacchus*, No. 2:22-cr-450, Dkt. No. 120 (C.D. Cal. Feb. 2, 2023); *United States v. Isaac*, No. 5:22-cr-117, Dkt. No. 27, 2023 WL 1415597 (N.D. Ala. Jan. 31, 2023); *United States v. Taylor*, No. 3:22-cr-22, Dkt. No. 32, 2023 WL 1423725 (E.D. Ky. Jan.

31, 2023); *United States v. Barber*, No. 4:20-cr-384, Dkt. No. 118, 2023 WL 1073667 (E.D. Tex. Jan. 27, 2023); *United States v. Hester*, No. 1:22-cr-20333, Dkt. No. 39 (S.D. Fla. Jan. 27, 2023); *United States v. Brown*, No. 2:20-cr-260, Dkt. No. 186, 2023 WL 424260 (E.D. Pa. Jan. 26, 2023); *United States v. Rush*, No. 4:22-cr-40008, Dkt. No. 46, 2023 WL 403774 (S.D. Ill. Jan. 25, 2023); *Davis v. United States*, No. 5:22-cv-224, Dkt. No. 1, 2023 WL 373172 (E.D. Ky. Jan. 24, 2023); *Battles v. United States*, No. 4:23-cv-63, Dkt. No. 2, 2023 WL 346002 (E.D. Mo. Jan. 20, 2023); *United States v. Gordon*, No. 1:14-cr-312, Dkt. No. 170, 2023 WL 336137 (N.D. Ga. Jan. 20, 2023); *Shipley v. Hijar*, No. 3:23-cv-11, Dkt. No. 3, 2023 WL 353994 (W.D. Tex. Jan. 20, 2023); *United States v. Smith*, No. 2:19-cr-505, Dkt. No. 183 (C.D. Cal. Jan. 19, 2023); *United States v. Serrano*, No. 3:21-cr-1590, Dkt. No. 65 (S.D. Cal. Jan. 17, 2023*); United States v. Tucker*, No. 2:22-cr-17, Dkt. No. 30, 2023 WL 205300 (S.D.W. Va. Jan. 17, 2023); *United States v. Robinson*, No. 4:22-cr-70, Dkt. No. 39, 2023 WL 214163 (W.D. Mo. Jan. 17, 2023); *United States v. Whittaker*, No. 1:22-cr-272, Dkt. No. 33 (D.D.C. Jan. 12, 2023); *United States v. Spencer*, No. 2:22-cr-561, Dkt. No. 24 (S.D. Tex. Jan. 12, 2023); *United States v. Garrett*, No. 1:18-cr-880, Dkt. No. 144 (N.D.

Ill. Jan. 11, 2023); *United States v. Moore*, No. 3:20-cr-474, Dkt. No. 100, 2023 WL 154588 (D. Or. Jan. 11, 2023); *United States v. Jordan*, No. 3:22-cr-1140, Dkt. No. 39, 2023 WL 157789 (W.D. Tex. Jan. 11, 2023); *Campiti v. Garland*, No. 3:22-cv-177, Dkt. No. 27 (D. Conn. Jan. 10, 2023); *United States v. Coleman*, No. 3:22-cr-8, Dkt. No. 117, 2023 WL 122401 (N.D.W. Va. Jan. 6, 2023); *United States v. Medrano*, No. 3:21-cr-39, Dkt. No. 65, 2023 WL 122650 (N.D.W. Va. Jan. 6, 2023); *United States v. Olson*, No. 1:22-cr-20525, Dkt. No. 33 (S.D. Fla. Jan. 5, 2023); *United States v. Good*, No. 1:21-cr-180, 2022 WL 18107183 (W.D. Mo. Nov. 18, 2022), *report and recommendation adopted*, 2023 WL 25725 (W.D. Mo. Jan. 3, 2023); *United States v. Wondra*, No. 1:22-cr-99, 2022 WL 17975985 (D. Idaho Dec. 27, 2022); *United States v. Jones*, No. 5:22-cr-376, Dkt. No. 59 (W.D. Okla. Dec. 23, 2022); *United States v. Williams*, No. 1:21-cr-362, 2022 WL 17852517 (N.D. Ga. Dec. 22, 2022); *United States v. Dawson*, No. 3:21-cr-293, 2022 WL 17839807 (W.D.N.C. Dec. 21, 2022); *United States v. Goins*, No. 5:22-cr-91, Dkt. No. 32 (E.D. Ky. Dec. 21, 2022); *United States v. Mugavero*, No. 3:22-cr-1716, Dkt. No. 29 (S.D. Cal. Dec. 19, 2022); *United States v. Roux*, No. 1:22-cr-19 (D.N.H. Dec. 16, 2022); *United States v. Hunter*, No. 1:22-cr-84, 2022

WL 17640254 (N.D. Ala. Dec. 13, 2022); *United States v. Spencer*, No. 2:22-cr-106, 2022 WL 17585782 (E.D. Va. Dec. 12, 2022); *United States v. Dotson*, No. 3:22-cr-1502, Dkt. No. 26 (S.D. Cal. Dec. 12, 2022); *United States v. Tran*, No. 3:22-cr-331, Dkt. No. 63 (S.D. Cal. Dec. 12, 2022); *United States v. Fencl*, No. 3:21-cr-3101, Dkt. No. 81 (S.D. Cal. Dec. 7, 2022); *United States v. Perez-Garcia*, No. 3:22-cr-1581, Dkt. No. 70 (S.D. Cal. Dec. 6, 2022); *United States v. Walker*, No. 2:19-cr-234, Dkt. No. 83 (E.D. Cal. Dec. 6, 2022); *United States v. Grinage*, No. 5:21-cr-399, Dkt. No. 51, 2022 WL 17420390 (W.D. Tex. Dec. 5, 2022); *United States v. Wagoner*, No. 4:20-cr-18, Dkt. No. 262, 2022 WL 17418000 (W.D. Va. Dec. 5, 2022); *United States v. Gay*, No. 4:20-cr-40026, Dkt. No. 412 (C.D. Ill. Dec. 5, 2022); *Shelby-Journey-Egnis v. United States*, No. 2:21-cr-20535, Dkt. No. 53 (E.D. Mich. Dec. 5, 2022); *United States v. Glaze*, No. 5:22-cr-425, Dkt. No. 23 (W.D. Okla. Dec. 1, 2022); *United States v. Ford*, No. 4:21-cr-179, Dkt. No. 52, 2022 WL 17327499 (W.D. Mo. Nov. 29, 2022); *United States v. Jones*, No. 4:20-cr-354, Dkt. No. 78, 2022 WL 17327498 (W.D. Mo. Nov. 29, 2022); *United States v. Jacobs*, No. 2:22-cr-160, Dkt. No. 28 (C.D. Cal. Nov. 28, 2022); *United States v. Cage*, No. 3:21-cr-68, Dkt. No. 41, 2022 WL 17254319 (S.D. Miss. Nov.

28, 2022); *United States v. Willis*, No. 1:22-cr-186, Dkt. No. 36 (D. Colo. Nov. 23, 2022); *United States v. Teerlink*, No. 2:22-cr-24, Dkt. No. 33, 2022 WL 17093425 (D. Utah Nov. 21, 2022); *United States v. Brunson*, No. 3:22-cr-149, Dkt. No. 66 (S.D. Cal. Nov. 18, 2022); *United States v. Hill*, No. 4:22-cr-249, Dkt. No. 42 (S.D. Tex. Nov. 17, 2022); *United States v. Blackburn*, No. 1:22-cr-209, Dkt. No. 28 (M.D. Pa. Nov. 17, 2022); *United States v. Mitchell*, No. 1:22-cr-111, Dkt. No. 43 (S.D. Ala. Nov. 17, 2022); *United States v. Dumont*, No. 1:22-cr-53 (D.N.H. Nov. 14, 2022); *United States v. Baker*, No. 2:20-cr-301, Dkt. No. 179, 2022 WL 16855423 (D. Utah Nov. 10, 2022); *United States v. Carpenter*, No. 1:21-cr-86, Dkt. No. 38, 2022 WL 16855533 (D. Utah Nov. 10, 2022); *United States v. Gray*, No. 1:22-cr-247, Dkt. No. 22, 2022 WL 16855696 (D. Colo. Nov. 10, 2022); *United States v. Moore*, No. 2:21-cr-121, Dkt. No. 81 (W.D. Pa. Nov. 9, 2022); *United States v. Reese*, No. 2:19-cr-257, Dkt. No. 193 (W.D. Pa. Nov. 8, 2022); *United States v. Young*, No. 2:22-cr-54, Dkt. No. 47 (W.D. Pa. Nov. 7, 2022); *United States v. Butts*, No. 9:22-cr-33, Dkt. No. 33 (D. Mont. Oct. 31, 2022); *United States v. Burton*, No. 3:22-cr-362, Dkt. No. 48 (D.S.C. Oct. 28, 2022); *United States v. Carleson*, No. 3:22-cr-32, Dkt. No. 39 (D. Ak. Oct. 28, 2022);

*United States v. Grant*, No. 3:22-cr-161, Dkt. No. 44, 2022 WL 16541138 (D. S.C. Oct. 28, 2022); *Walker v. United States*, No. 3:20-cv-31, Dkt. No. 16, 2022 WL 16541183 (S.D. Cal. Oct. 28, 2022); *United States v. Law*, No. 2:20-cr-341, Dkt. No. 60 (W.D. Pa. Oct. 27, 2022); *United States v. Borne*, No. 1:22-cr-83, Dkt. No. 35 (D. Wyo. Oct. 24, 2022); *United States v. Minter*, No. 3:22-cr-135, Dkt. No. 33 (M.D. Pa. Oct. 18, 2022); *United States v. Melendrez-Machado*, No. 3:22-cr-634, Dkt. No. 32, --- F. Supp. 3d ----, 2022 WL 17684319 (W.D. Tex. Oct. 18, 2022); *United States v. Raheem*, No. 3:20-cr-61, Dkt. No. 389, 2022 WL 10177684 (W.D. Ky. Oct. 17, 2022); *United States v. Ridgeway*, No. 3:22-cr-175, Dkt. No. 32, 2022 WL 10198823 (S.D. Cal. Oct. 17, 2022); *United States v. Trinidad*, No. 3:21-cr-398, Dkt. No. 99, 2022 WL 10067519 (D.P.R. Oct. 17, 2022); *United States v. Carrero*, No. 2:22-cr-30, Dkt. No. 50, 2022 WL 9348792 (D. Utah Oct. 14, 2022); *United States v. Ortiz*, No. 3:21-cr-2503, Dkt. No. 91 (S.D. Cal. Oct. 14, 2022); *United States v. Riley*, No. 1:22-cr-163, Dkt. No. 37, 2022 WL 7610264 (E.D. Va. Oct. 13, 2022); *United States v. Price*, No. 2:22-cr-97, --- F. Supp. 3d ---, 2022 WL 6968457, at *6-9 (S.D. W. Va. Oct. 12, 2022); *United States v. King*, No. 7:21-cr-255, Dkt. No. 50, 2022 WL 5240928 (S.D.N.Y. Oct. 6, 2022); *United States v. Daniels*,

No. 1:03-cr-83, Dkt. No. 69, 2022 WL 5027574 (W.D.N.C. Oct. 4, 2022);
*United States v. Charles*, No. 7:22-cr-154, Dkt. No. 48, 2022 WL
4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Williams*, No. 3:21-
cr-478, Dkt. No. 76 (S.D. Cal. Sept. 30, 2022); *United States v. Harper*,
No. 5:21-cr-4085, 2022 WL 8288406 (N.D. Iowa Sept. 9, 2022), *report
and recommendation adopted*, 2022 WL 4595060 (N.D. Iowa Sept. 30,
2022); *United States v. Campbell*, No. 5:22-cr-138, Dkt. No. 64 (W.D.
Okla. Sept. 27, 2022); *United States v. Siddoway*, No. 1:21-cr-205, Dkt.
No. 54, 2022 WL 4482739 (D. Idaho Sept. 27, 2022); *United States v.
Perez*, No. 3:21-cr-508, Dkt. No. 78 (S.D. Cal. Sept. 26, 2022); *United
States v. Collette*, No. 7:22-cr-141, Dkt. No. 66, 2022 WL 4476790 (W.D.
Tex. Sept. 25, 2022); *United States v. Delpriore*, No. 3:18-cr-136, Dkt.
No. 287 (D. Ak. Sept. 23, 2022); *United States v. Coombes*, No. 4:22-cr-
189, Dkt. No. 39, 2022 WL 4367056 (N.D. Okla. Sept. 21, 2022); *United
States v. Hill*, No. 3:21-cr-107, Dkt. No. 70, 2022 WL 4361917 (S.D. Cal.
Sept. 20, 2022); *United States v. Rojo*, No. 3:21-cr-682, Dkt. No. 50 (S.D.
Cal. Sept. 14, 2022); *United States v. Cockerham*, No. 5:21-cr-6, Dkt. No.
31 (S.D. Miss. Sept. 13, 2022); *United States v. Jackson*, No. 0:21-cr-51,
Dkt. No. 114, 2022 WL 4226229 (D. Minn. Sept. 13, 2022); *United States*

*v. Havins*, No. 3:21-cr-1515, Dkt. No. 62 (S.D. Cal. Sept. 12, 2022);

*United States v. Patterson*, No. 7:19-cr-231 (S.D.N.Y. Sept. 9, 2022);

*United States v. Doty*, No. 5:21-cr-21, Dkt. No. 34 (N.D.W. Va. Sept. 9,

2022); *United States v. Burrell*, No. 3:21-cr-20395, Dkt. No. 34, 2022 WL

4096865 (E.D. Mich. Sept. 7, 2022); *United States v. Randle*, No. 3:22-

cr-20, Dkt. No. 34 (S.D. Miss. Sept. 6, 2022); *United States v. Ingram*,

No. 0:18-cr-557, Dkt. No. 1714, --- F. Supp. 3d ---, 2022 WL 3691350 (D.

S.C. Aug. 25, 2022); *United States v. Nevens*, No. 2:19-cr-774, Dkt. No.

121 (C.D. Cal. Aug. 15, 2022); *United States v. Farris*, No. 1:22-cr-149,

Dkt. No. 29 (D. Colo. Aug. 12, 2022); *United States v. Adams*, No. 1:20-

cr-628 (S.D.N.Y. Aug. 10, 2022); *United States v. Ramos*, No. 2:21-cr-

395, Dkt. No. 31 (C.D. Cal. Aug. 5, 2022); *United States v. Doss*, No.

4:21-cr-74, Dkt. No. 126 (S.D. Iowa Aug. 2, 2022); *United States v.

Maurice*, No. 7:22-cr-48 (S.D.N.Y. Jul. 14, 2022).

As these authorities show, *Bruen* merely confirmed—for the third

time—that the Second Amendment belongs to law-abiding citizens, not

felons. Against this wall of authority, defendant cannot establish any

clear or obvious error. *See Gonzalez-Aparicio*, 663 F.3d at 428.

### 3. *There was no effect on defendant's substantial rights, because defendant has not established that he is nonviolent*

Nor can defendant satisfy the third prong of plain-error review: he cannot show that, as a factual matter, he would win under his own theory.

Defendant has the burden, under plain-error review, to lay the factual record necessary to show prejudice. *See Gonzalez-Aguilar*, 718 F.3d at 1189; *see also Jones v. United States*, 527 U.S. 373, 394-95 (1999) ("Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights."). And defendant, as the proponent of an as-applied constitutional challenge, also has the burden of showing that § 922(g)(1) is unconstitutional as applied to him. *See Hatfield v. Barr*, 925 F.3d 950, 953 (7th Cir. 2019) ("[S]omeone who wants us to carve out particular felonies (or felons) from a category that the Supreme Court has said is presumptively valid must supply an adequate basis for that distinction."). He can do neither.

Defendant's claimed "nonviolence" has no support in the record. To the contrary, defendant is a recidivist gang member. His criminal

history includes two convictions for Evading a Peace Officer, in violation of California Vehicle Code Section 2800.2 (PSR ¶¶ 34-36)—an offense that involves "a willful or wanton disregard for the safety of persons or property." *See* Cal. Veh. Code § 2800.2(a)-(b). One of them involved a hit-and-run offense. (PSR ¶ 36.) Further, at the time defendant committed the instant offense, he was on supervision and a self-admitted member of the 18th Street criminal street gang. (*Id.* ¶ 38; *see also id.* ¶ 62.) And at sentencing, the government explicitly argued that defendant was dangerous: his offense was "aggravating" because he was not "just a repeat offender," he was a "repeat offense offender." (CR 172 at 16-28.)

Defendant hangs his hat on a supposed concession taken out of context. The government could not have "conceded" that defendant was nonviolent (AOB 23) for purposes of the Second Amendment when defendant never raised any Second Amendment issue below. The statement defendant quotes came from the government's opposition to defendant's motion *in limine* to preclude Rule 609 impeachment evidence. (1-ER-15.) As this Court has explained, Rule 609 disallows the introduction of "collateral details and circumstances attendant" to a

defendant's convictions, as such specific instances of conduct must be introduced under Rule 608. *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009). Thus, that the government stated that defendant's "prior convictions" are not categorically "violent" for purposes of Rule 609 does not mean that they were not in fact violent or committed violently.

At best, the record has not been developed on whether defendant is violent enough to be disarmed—even assuming this Court disregarded its precedent, accepted defendant's historical argument on the merits, and bypassed the "clear or obvious" requirement of plain-error review. Defendant therefore cannot satisfy his burden to demonstrate prejudice, since he cannot demonstrate that § 922(g)(1) would be unconstitutional as applied to him. *See Jones*, 527 U.S. at 394-95.

Finally, to the extent defendant assumes this Court should apply some form of "categorical approach" to the "nonviolent felon" analysis—though he never actually says this (*cf.* AOB 23-25)—that assumption should be rejected. *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations

65

to the record or to case authority are generally deemed waived."). An elements-based categorical approach should not be the standard. As countless judges have recognized, the categorical approach requires courts to "perform absurd legal gymnastics" and produces "absurd results." *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1149 (9th Cir. 2020) (Garber, J., concurring) (adding her voice to "the substantial chorus of federal judges pleading for the Supreme Court or Congress to rescue us from the morass of the categorical approach"); *United States v. Valdivia-Flores*, 876 F.3d 1201, 1210-11 (9th Cir. 2017) (O'Scannlain, J., specially concurring) ("I am hardly the first federal circuit judge to express puzzlement at how the categorical approach has come to be applied.") (collecting cases), *overruled on other grounds by Alfred v. Garland*, 64 F.4th 1025, 1047-48 (9th Cir. 2023); *see also Orellana v. Barr*, 967 F.3d 927, 940 (9th Cir. 2020) (Owens, J., concurring) ("We should avoid doing dumb things. Especially ones that are dumb[-cubed].").  This Court should decline to expand a "byzantine and resource-depleting legal doctrine that so encumbers federal courts and threatens public safety." *United States v. Taylor*, 142 S. Ct. 2015, 2032 (2022) (Thomas, J., dissenting).

That said, even a case-by-case analysis would task courts with "weighing the relative dangerousness" (or violence) "of hundreds of offenses"—from drug dealing to environmental contamination—without meaningful guidance. *Folajtar*, 980 F.3d at 906; *see also Johnson v. United States*, 576 U.S. 591, 598 (2015) (striking down Armed Career Criminal Act's residual clause, while citing the Court's "repeated attempts and repeated failures to craft a principled and objective standard" for defining violent crimes). Such an analysis would bear a striking resemblance to a process Congress already tried in the felon-dispossession context, under 18 U.S.C. § 925(c), before making a policy judgment to abandon it. *See Kanter*, 919 F.3d at 439, 450 (explaining that before 1992, Congress authorized the government to assess whether an individual applicant should be granted an exception from § 922(g)(1) but then "abandoned that approach after finding that the dangerousness inquiry was a 'very difficult' and time-intensive task, and that 'too many of these felons whose gun ownership rights were restored went on to commit violent crimes with firearms.'" (citations omitted) (quoting H.R. Rep. No. 102-618, at 14 (1992), and H.R. Rep. No. 104-183, at 15 (1995))); *see also United States v. Bean*, 537 U.S. 71,

77 (2002) (explaining that the now-defunct process under Section 925(c) was "performed by the Executive, which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation").

For the reasons explained above, however, what type of "violent felon" analysis should apply is completely academic. There is no "violent felon" analysis required by the Second Amendment. The Supreme Court has made clear that the right to bear arms belongs only to "law-abiding" citizens, and this Court has so held. Defendant's argument is foreclosed by that precedent and is wrong on the merits. The Second Amendment, as historically understood, categorically bars felons—nonviolent or otherwise—from possessing firearms.

# VI

# CONCLUSION

Defendant's conviction should be affirmed.

DATED: May 31, 2023        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

*/s/ Suria M. Bahadue*

SURIA M. BAHADUE
Assistant United States Attorney
Criminal Appeals Section

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that the following case is expected to raise the same question presented here; that is, whether 18 U.S.C. § 922(g)(1) is constitutional after *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022): *United States v. Ramos*, C.A. 22-50177.

# CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains 13,657 words, excluding the portions exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: May 31, 2023          */s/ Suria M. Bahadue*

SURIA M. BAHADUE
Attorney for Plaintiff-Appellee
UNITED STATES OF AMERICA