No. 22-50048

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

STEVEN DUARTE, AKA Shorty,
Defendant–Appellant.

———————————————

On Appeal from the United States District Court for the
Central District of California, No. 2:20-CR-387
(Hon. Andre Birotte, Jr.)

———————————————

**PETITION FOR REHEARING EN BANC
AND FOR EXPEDITED ORDER VACATING PANEL OPINION**

———————————————

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Chief, Criminal Division

BRAM M. ALDEN
Chief, Criminal Appeals Section

SURIA M. BAHADUE
Assistant United States Attorney
Central District of California

NICOLE M. ARGENTIERI
Principal Deputy Assistant Attorney
General

LISA H. MILLER
Deputy Assistant Attorney General

WILLIAM A. GLASER
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave, NW, Ste. 1264
Washington, DC 20530
(202) 532-4495
William.Glaser@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION AND RULE 35(B)(1) STATEMENT ........................... 1

ISSUES PRESENTED ....................................................................... 2

BACKGROUND ............................................................................... 2

      A.    Offense conduct ............................................................ 2

      B.    Panel decision ............................................................... 3

ARGUMENT .................................................................................... 6

    I.    The Panel Wrongly Held That § 922(g)(1) Violates the Second Amendment. ................................................... 6

      A.    *Bruen* did not abrogate *Vongxay*'s holding that § 922(g)(1) is constitutional. ............................... 7

      B.    Section 922(g)(1) is constitutional under *Bruen*. ................. 8

      C.    The panel decision conflicts with the holdings of multiple other circuits. ..................................... 14

    II.    The Panel's Failure to Apply Plain-Error Review Contravenes Rule 52(b) and Creates a Circuit Conflict. ............ 16

    III.    This Court Should Promptly Grant Rehearing En Banc and Vacate the Panel's Decision ....................................... 18

CONCLUSION ................................................................................. 20

CERTIFICATE OF COMPLIANCE ...................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Binderup v. Attorney General United States*,
  836 F.3d 336 (3d Cir. 2016) (en banc) ................................................ 10, 13

*Bucklew v. Precythe*,
  587 U.S. 119 (2019) ......................................................................... 9

*Dickerson v. New Banner Institute, Inc.*,
  460 U.S. 103 (1983) ....................................................................... 10

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ........................................................ 4, 7, 8, 9, 12

*Duncan v. Bonta*,
  83 F.4th 803 (9th Cir. 2023) (en banc) ................................................ 18

*Epic Systems Corp. v. Lewis*,
  584 U.S. 497 (2018) ....................................................................... 18

*Folajtar v. Attorney General*,
  980 F.3d 897 (3d Cir. 2020) .............................................................. 13

*Greer v. United States*,
  593 U.S. 503 (2021) ....................................................................... 17

*In re Zermeno-Gomez*,
  868 F.3d 1048 (9th Cir. 2017) ........................................................... 19

*Kanter v. Barr*,
  919 F.3d 437 (7th Cir. 2019) ............................................................. 13

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012) ............................................................. 8

*McIntyre v. Ohio Elections Commission*,
  514 U.S. 334 (1995) ....................................................................... 11

*Medina v. Whitaker*,
  913 F.3d 152 (D.C. Cir. 2019) ............................................................. 9

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) (en banc) ................................................. 5, 14

*New York State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022) .......................................... 1, 3, 5, 7, 10, 11, 12

*Puckett v. United States*,
    556 U.S. 129 (2009) ................................................................. 17

*Range v. Attorney General*,
    69 F.4th 96 (3d Cir. 2023) (en banc), *petition for cert. filed*,
    No. 23-374 (Oct. 5, 2023) .......................................................... 16

*Rehaif v. United States*,
    585 U.S. 225 (2019) ................................................................. 18

*Richardson v. Ramirez*,
    418 U.S. 24 (1974) .................................................................... 8

*Spencer v. Kemna*,
    523 U.S. 1 (1998) ...................................................................... 8

*United States v. Barton*,
    633 F.3d 168 (3d Cir. 2011) ......................................................... 9

*United States v. Dubois*,
    94 F.4th 1284 (11th Cir. 2024) ..................................................... 14

*United States v. Gay*,
    98 F.4th 843 (7th Cir. 2024) ....................................................... 15

*United States v. Guerrero*,
    921 F.3d 895 (9th Cir. 2019) .................................................... 4, 17

*United States v. Herrera*,
    51 F.4th 1226 (10th Cir. 2022) ..................................................... 17

*United States v. Jackson*,
    69 F.4th 495 (8th Cir. 2023) .....................................................12, 15

*United States v. Jones*,
    88 F.4th 571 (5th Cir. 2023) ....................................................... 18

*United States v. Maez*,
    960 F.3d 949 (7th Cir. 2020)....................................................................... 17

*United States v. Mung*,
    989 F.3d 639 (8th Cir. 2021)....................................................................... 17

*United States v. Perez-Garcia*,
    96 F.4th 1166 (9th Cir. 2024) ................................................9, 10, 11, 12, 13

*United States v. Vongxay*,
    594 F.3d 1111 (9th Cir. 2010)............................................................4, 7, 8

*Vincent v. Garland*,
    80 F.4th 1197 (10th Cir. 2023)................................................................ 14

**Statutes and Rules**

U.S. Const. amend. XIV, § 2 .........................................................................8

Cal. Health & Safety Code § 11351.5 ...........................................................2

Cal. Penal Code § 29800...............................................................................2

Cal. Penal Code § 594 ..................................................................................2

Cal. Veh. Code § 2800.2 ...............................................................................2

Fed. R. Crim. P. 12 ..................................................................................... 17

Fed. R. Crim. P. 52 ..................................................................................... 17

**Other Authorities**

4 William Blackstone, *Commentaries on the Laws of England* (1769)...................9

Beth A. Colgan, *Reviving the Excessive Fines Clause*, 102 Cal. L. Rev. 277
    (2014) ......................................................................................................9

Ninth Circuit General Order 5.4 ................................................................. 19

Ninth Circuit General Order 5.5 ................................................................. 19

U.S. Sent. Comm'n, *Quick Facts: 18 U.S.C. § 922(g) Firearms Offenses* (July 2023).................................................................................................. 19

## INTRODUCTION AND RULE 35(B)(1) STATEMENT

A divided panel of this Court held that 18 U.S.C. § 922(g)(1)'s prohibition on possession of a firearm by a felon violates the Second Amendment as applied to Steven Duarte, a five-time felon. The panel majority concluded that *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), abrogated this Court's prior precedent upholding § 922(g)(1). It also concluded that § 922(g)(1) was unconstitutional because the government did not show that a person convicted of offenses "distinctly similar" to Duarte's would have been permanently disarmed at the Founding.

The panel decision addresses an issue of exceptional importance—the constitutionality of a longstanding, frequently applied statute that plays an essential role in combating gun violence. The panel decision conflicts with decisions from other circuits, which have held both that *Bruen* did not overrule similar circuit precedent upholding § 922(g)(1) and that § 922(g)(1) is constitutional under *Bruen*'s text-and-history approach. The panel majority compounded its errors—and generated another circuit conflict—by applying de novo review despite Duarte's failure to raise his challenge below. This Court should expedite consideration of the government's rehearing petition, grant rehearing to correct the panel's errors, and immediately vacate the decision to minimize the harmful practical consequences that it portends.

1

## ISSUES PRESENTED

1. Whether 18 U.S.C. § 922(g)(1)'s prohibition on firearm possession by a felon violates the Second Amendment as applied to the defendant, who has five prior felony convictions.

2. Whether Federal Rule of Criminal Procedure 52(b) requires plain-error review of the defendant's Second Amendment claim, which he failed to raise in the district court.

## BACKGROUND

### A.     Offense conduct

In March 2020, Inglewood, California police officers pulled over a car for running a stop sign.  Op. 6.  Duarte, the back-seat passenger, threw a .380 caliber pistol out of the car before the stop.  *Id.*  At the time, Duarte had five misdemeanor convictions, PSR ¶¶ 28, 30, 32-33, 36, and five felony convictions for the following: vandalism, in violation of Cal. Penal Code § 594(a); possession of a firearm by a felon, in violation of Cal. Penal Code § 29800(a)(1); possession of a controlled substance for sale, in violation of Cal. Health & Safety Code § 11351.5; and evading a police officer (on two occasions), in violation of Cal. Veh. Code § 2800.2.  Op. 6-7; *see* PSR ¶¶ 31, 34-36.  "Each of these convictions carried a possible sentence of one year or more

2

in prison." Op. 7. At his arrest, Duarte was on post-release community supervision and was a member of the 18th Street Gang. PSR ¶¶ 38, 62.

A grand jury charged Duarte with knowingly possessing a firearm having previously been convicted of "a crime punishable by imprisonment for a term exceeding one year," in violation of 18 U.S.C. § 922(g)(1). Op. 6. Duarte did not raise a Second Amendment challenge in the district court. *Id.* at 7. A jury convicted Duarte in 2021, and the district court sentenced him to 51 months of imprisonment. *Id.* at 7; D. Ct. Doc. 120.

## B. Panel decision

While Duarte's appeal was pending, the Supreme Court decided *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 11, 71 (2022), which invalidated a New York licensing scheme requiring "proper cause" to obtain a permit to publicly carry firearms. *Bruen* explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 24. And when a regulation burdens such conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

3

For the first time on appeal, Duarte argued that § 922(g)(1) violated the Second Amendment as applied to him. A divided panel of this Court agreed with Duarte and reversed. Op. 1-63.

The panel reviewed Duarte's Second Amendment claim de novo, despite his failure to raise that claim below. Op. 7-8. The panel acknowledged that "Rule 52(b)'s plain error standard" was the "default standard" in this situation. *Id.* at 7 (quotation omitted). But, the panel reasoned, "when the untimely issue is a Rule 12(b)(3) 'defense[]' or 'objection[]' to a criminal indictment, 'Rule 12's good-cause standard . . . displac[es] the plain-error standard' under Rule 52(b)." *Id.* at 7-8 (quoting *United States v. Guerrero*, 921 F.3d 895, 897 (9th Cir. 2019) (per curiam)). The panel concluded that Duarte "demonstrated good cause" for his forfeiture because, at the time of trial and sentencing, this Court's decision in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which upheld § 922(g)(1) under the Second Amendment, "foreclosed the argument Duarte now makes." Op. 8 (brackets and quotation omitted).

The panel next held that *Bruen* abrogated *Vongxay*. Op. 8-22. *Vongxay* had relied on the Supreme Court's statement in *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008), that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which *Heller* described as "presumptively lawful."

4

The panel here concluded that *Vongxay* was "'clearly irreconcilable'" with *Bruen* because *Vongxay* "did not follow the textually and historically focused 'mode of analysis' that *Bruen* established." Op. 10 (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). The panel also noted *Vongxay*'s "heavy reliance on prior cases that are clearly inconsistent with *Bruen*" and said that it could no longer "defer (as *Vongxay* did) to *Heller*'s footnote." *Id.* at 17, 20.

Addressing the issue afresh, the panel held that § 922(g)(1) violated the Second Amendment. At *Bruen*'s textual step, it concluded that "Duarte is one of 'the people' because he is an American citizen." Op. 23. At the historical-tradition step, the panel said the government needed to identify a "distinctly similar" regulation because "gun violence" is a "problem that has persisted [in this country] since the 18th century." *Id.* at 35 (quoting *Bruen*, 597 U.S. at 26-27). The panel then rejected the government's historical evidence, including state ratifying-convention proposals, laws categorically disarming dangerous groups, and 18th-century laws punishing felons with death or estate forfeiture. *Id.* at 35-63.

The panel concluded that a "faithful application of *Bruen*" required the government to identify "Founding-era felony analogues that are 'distinctly similar' to Duarte's underlying offenses" and that "would have been

5

punishable either with execution, with life in prison, or permanent forfeiture of the offender's estate." Op. 61. The panel concluded that Duarte's convictions failed this standard. His vandalism conviction "likely would have made him a misdemeanant at the Founding," his felon-in-possession offense "was a nonexistent crime" at the Founding, and there was no evidence that "drug possession and evading a peace officer" had "an analogous, Founding-era predecessor." *Id.* at 62. Thus, the panel concluded, § 922(g)(1) could not constitutionally be applied to Duarte.

Judge Milan Smith dissented, explaining that *Vongxay* was not "clearly inconsistent" or "clearly irreconcilable" with *Bruen*. Op. 64, 68, 69, 72. Judge Smith "express[ed] the hope" that this Court would "rehear this case en banc to correct the majority's misapplication of *Bruen*." *Id.* at 74.

## ARGUMENT

### I. The Panel Wrongly Held That § 922(g)(1) Violates the Second Amendment.

The panel wrongly held that § 922(g)(1)'s longstanding prohibition violates the Second Amendment as applied to Duarte. The panel's decision is foreclosed by this Court's binding precedent, misapplies Supreme Court decisions, and conflicts with decisions from multiple other circuits. The decision will sow confusion within this circuit and threaten public safety. The en banc Court's prompt intervention is warranted.

### A.     *Bruen* did not abrogate *Vongxay*'s holding that § 922(g)(1) is constitutional.

Contrary to the panel's conclusion, *Bruen* did not abrogate this Court's decision in *Vongxay*. *Vongxay* relied on *Heller*'s assurances that it was not calling into question "longstanding prohibitions on the possession of firearms by felons" to conclude that prior circuit precedent upholding § 922(g)(1) remained binding. *Vongxay*, 594 F.3d at 1115 (emphasis and quotation omitted). *Vongxay* held that *Heller*'s statements were not "dicta" but were "integral" to *Heller*'s holding. *Id.*

As Judge Smith explained, "[n]othing . . . in *Bruen* reflects a retreat" from the statements in *Heller* on which *Vongxay* relied. Op. 66 (Smith, J., dissenting). Indeed, several justices in the *Bruen* majority specifically underscored this aspect of *Heller*. *Bruen*, 597 U.S. at 79 (Kavanaugh, joined by Robert, C.J., concurring); *id.* at 72 (Alito, J., concurring) (*Bruen* did not "disturb[] anything that [the Court] said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns"). And the *Bruen* majority echoed more than a dozen times *Heller*'s statement that the Second Amendment protects the right of "law-abiding, responsible citizens," *Heller*, 554 U.S. at 635—a category that excludes felons. *See Bruen*, 597 U.S. at

7

9, 15, 26, 29-31, 34, 38, 60, 70-71, & nn.8-9.  Thus, *Vongxay* is not "clearly

irreconcilable" with *Bruen*.  Op. 10 (quotation omitted).

It does not matter that *Vongxay* did not undertake a full textual and

historical analysis like that conducted in *Bruen*.  Op. 10.  *Vongxay* relied on

statements that were "integral" to *Heller*'s holding, *Vongxay*, 594 F.3d at 1115,

and that members of the *Bruen* majority specifically reaffirmed.  Because the

panel could have applied "prior circuit precedent" in *Vongxay* "without

running afoul of the intervening authority" in *Bruen*, it was required to "do so."

*Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012).

### B.     Section 922(g)(1) is constitutional under *Bruen*.

Contrary to the panel's decision, § 922(g)(1) is constitutional in all its

applications—and plainly in its application to Duarte.  As an initial matter,

felons are not protected by the Second Amendment's plain text because they

are not part of "the people" under that amendment.  "The people" includes

only "members of the political community," *Heller*, 554 U.S. at 580, and felons

have forfeited their membership in that community.  States have long denied

felons the right to vote, *see* U.S. Const. amend. XIV, § 2; *Richardson v. Ramirez*,

418 U.S. 24, 41-56 (1974); the right to hold public office, *see Spencer v. Kemna*,

523 U.S. 1, 8-9 (1998); and the right to serve on juries, *see id.*  The Second

Amendment does not preclude legislatures from making a similar determination with respect to bearing arms.

Even apart from the textual limitation to "the people," the Second Amendment right has long been understood to extend only to "law-abiding" persons. *Heller*, 554 U.S. at 635. In both England and America, "death was the standard penalty for all serious crimes at the time of the founding." *Bucklew v. Precythe*, 587 U.S. 119, 129 (2019) (quotation omitted); *see* 4 William Blackstone, *Commentaries on the Laws of England* 98 (1769). Many states also subjected certain felons to the complete forfeiture of their property. *See* Beth A. Colgan, *Reviving the Excessive Fines Clause*, 102 Cal. L. Rev. 277, 332 nn.275-76 (2014) (collecting statutes). Accordingly, "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019).

Moreover, the historical tradition of disarming people whose possession of a firearm endangers themselves or others, *see United States v. Perez-Garcia*, 96 F.4th 1166, 1185-89 (9th Cir. 2024), supports § 922(g)(1)'s constitutionality. Common sense suggests that "felons are more likely to commit violent crimes" than are law-abiding individuals. *United States v. Barton*, 633 F.3d 168, 175 (3d Cir. 2011). "[N]umerous studies" show a "link between past criminal conduct

9

and future crime, including gun violence." *Binderup v. Attorney General United States*, 836 F.3d 336, 400 (3d Cir. 2016) (en banc) (Fuentes, J., concurring in part, dissenting in part, and dissenting from the judgments). And the Supreme Court has recognized that persons "convicted of serious crimes," as a class, can "be expected to misuse" firearms. *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 119 (1983).

In holding § 922(g)(1) unconstitutional as applied to Duarte, the panel applied a "divide-and-conquer approach" that this Court has already rejected, rather than considering "the historical evidence as a whole." *Perez-Garcia*, 96 F.4th at 1191. The panel majority erred in several ways.

First, the panel wrongly rejected the government's textual and historical arguments demonstrating that Congress can ban firearm possession by all felons. Op. 22-33. As the government has explained, Answering Br. 40-49, Congress may make the categorical judgment that those who have committed felony-level crimes should be disarmed, *see also* Petition for Writ of Certiorari 8-22, *Garland v. Range*, No. 23-374 (filed Oct. 5, 2023).

Second, the panel wrongly stated that lack of a "'distinctly similar'" historical regulation is "strong if not conclusive 'evidence' that the law 'is inconsistent with the Second Amendment.'" Op. 35 (quoting *Bruen*, 597 U.S. at 26). This seriously misreads *Bruen*, which said the lack of such a regulation

10

"is relevant evidence" of unconstitutionality, 597 U.S. at 27, not "strong" or "conclusive" evidence. And because founding-era legislatures cannot be presumed to have legislated to the full extent of their constitutional authority, courts should not read too much into legislative silence. The absence of an 18th-century regulation governing particular conduct does not mean that founding-era legislatures believed such a regulation would be unconstitutional. *See McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 373 (1995) (Scalia, J., dissenting) ("Quite obviously, not every restriction upon expression that did not exist in 1791 or 1868 is ipso facto unconstitutional.").

Third, the panel appears to have wrongly required the government to show not just that felons, as a class, could be disarmed at the Founding, but that those who committed felonies "distinctly similar" to Duarte's offenses could have been punished with "execution, with life in prison, or permanent forfeiture" of estate. Op. 61. This Court recently rejected that same approach in *Perez-Garcia*, 96 F.4th at 1185, which upheld under the Second Amendment the firearm-prohibition condition of pretrial release. *Perez-Garcia* explained that, having established that the condition was "consistent with our nation's tradition of disarming criminal defendants charged with serious crimes pending trial, the Government need not go further and dig up an 18th century law under which [the defendants], specifically, would have been disarmed

while awaiting trial" for their specific crimes.  *Id.* 1185-86.  Such a

requirement, this Court said, would be to require a "dead ringer" or "historical

*twin*" in defiance of *Bruen*.  *Id.* at 1185 (quotation omitted).

The panel here apparently held that no distinctly modern offense—such

as a felon-in-possession or drug-trafficking offense—can *ever* serve as a basis for

disarmament because such crimes were "nonexistent" at the Founding.  Op.

62; *see id.* n.16.  That is wholly inconsistent with *Bruen*, which said that the

Second Amendment's historically "fixed" meaning "can, and must, apply to

circumstances beyond those the Founders specifically anticipated."  *Bruen*, 597

U.S. at 28.  Similarly, *Heller* rejected as "bordering on the frivolous" the

argument that "only those arms in existence in the 18th century are protected

by the Second Amendment."  *Heller*, 554 U.S. at 582.  Equally indefensible is

the panel's conclusion that only conduct that was punished with disarmament

in the 18th century can lead to disarmament today.

Finally, the panel confusingly focused on the fact that Duarte's prior

offenses were "non-violent."  Op. 4, 6, 34, 39, 46, 50, 57.  Because of the

repeated references to Duarte's "non-violent offenses," lower courts might

easily mistake "non-violence" as the relevant standard—a result that "would

substantially invalidate the provision enacted by Congress."  *United States v.*

*Jackson*, 69 F.4th 495, 502 n.2 (8th Cir. 2023) (referring to data indicating "that

only 18.2 percent of felony convictions in state courts and 3.7 percent of federal felony convictions were for 'violent offenses'"). As the last few decades of litigation related to the Armed Career Criminal Act illustrate, determining whether a particular offense is "violent" is no easy task. So this is not an administrable constitutional standard.

Moreover, the fact that Duarte's prior offenses were "non-violent" is not constitutionally dispositive. "At the time of the Second Amendment's ratification . . . , nonviolent crimes such as forgery and horse theft were capital offenses." *Perez-Garcia*, 96 F.4th at 1183. Many crimes, such as "residential burglary and drug dealing are not necessarily violent," but are nevertheless "dangerous because they often lead to violence." *Folajtar v. Attorney General*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting). And even crimes not usually associated with violence can potentially demonstrate "a propensity for dangerous behavior." *Kanter v. Barr*, 919 F.3d 437, 469 (7th Cir. 2019) (Barrett, J., dissenting). Thus, even those judges who would (wrongly, in the government's view) conclude that § 922(g)(1) is unconstitutional in some applications still draw the line at dangerousness, rather than violence. *See id.* at 451, 456 (Barrett, J., dissenting); *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting); *Binderup*, 836 F.3d at 369 (Hardiman, J., concurring in part and

13

concurring in the judgment). The panel's focus on the "non-violent" nature of Duarte's offenses was both novel and misplaced.

**C.    The panel decision conflicts with the holdings of multiple other circuits.**

The panel decision conflicts with decisions from multiple circuits. Its holding that *Bruen* abrogated *Vongxay* directly conflicts with the reasoning of decisions from the Tenth and Eleventh Circuits. Both those circuits have held that *Bruen* did *not* abrogate circuit precedent that, like *Vongxay*, relied on *Heller*'s assurances that felon-dispossession laws were lawful. *See Vincent v. Garland*, 80 F.4th 1197, 1200-02 (10th Cir. 2023) (holding that *Bruen* did not "contradict[] or invalidate[]" circuit precedent); *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) (holding that *Bruen* did not "clearly abrogate[]" circuit precedent). Contrary to the panel's claim, this Court does not employ "a more 'flexible approach'" regarding superseding decisions than "other circuits." Op. 9 (quoting *Miller*, 335 F.3d at 899). In fact, *Miller* observed that some other circuits, including the Eleventh Circuit, "have taken comparable, pragmatic approaches" to intervening decisions. *Miller*, 335 F.3d at 899-900. Thus, the panel decision creates a circuit conflict regarding *Bruen*'s effect on circuit precedent that upheld § 922(g)(1) based on *Heller*.

14

The panel decision also deepens a circuit conflict regarding § 922(g)(1)'s constitutionality under a full *Bruen* analysis. The decision directly conflicts with the Eighth Circuit's decision in *Jackson*, which held that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Jackson*, 69 F.4th at 502. *Jackson* determined that "history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society." *Id.* at 504. The court also held that § 922(g)(1) was consistent with the historical tradition of disarming categories of persons "who presented an unacceptable risk of dangerousness." *Id.* at 505.

The panel's decision is also in tension with *United States v. Gay*, 98 F.4th 843, 846-47 (7th Cir. 2024). *Gay* observed that the defendant's as-applied challenge to § 922(g)(1) was "hard to square" with *Heller*, which "pointedly stated that 'longstanding prohibitions on the possession of firearms by felons' are valid." *Id.* at 846. *Gay* further observed that, "[w]hen describing the persons who possess rights under the Second Amendment, *Bruen* repeatedly used the phrase 'law-abiding, responsible citizens' or a variant." *Id.* And the defendant did "not fit that description" given his 22 prior felonies. *Id.* at 846-47. *Gay* required no showing that the defendant's specific crimes were

15

"distinctly similar" to founding-era crimes punishable by death, life imprisonment, or estate forfeiture.  *See* Op. 61.

Finally, the panel decision goes well beyond *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), *petition for cert. filed*, No. 23-374 (Oct. 5, 2023).  *Range* held that § 922(g)(1) was unconstitutional "only as applied" to a civil plaintiff with a 25-year-old conviction for food-stamp fraud.  *Id.* at 98, 106.  *Range* emphasized that its decision was "a narrow one," tied to "Range and his individual circumstances," and that its analysis concerned only the historical tradition of disarming people "like Range."  *Id.* at 105-06.  Three concurring judges indicated that "[m]ost felons" could be disarmed and "join[ed] the majority opinion with the understanding that it speaks only to [Range's] situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like."  *Id.* at 110, 112 (Ambro, J., concurring). *Range* did not suggest that § 922(g)(1) would be unconstitutional as applied someone like Duarte, who committed multiple felonies and then possessed a firearm without seeking prospective relief in a civil lawsuit.  The panel's decision here is far broader than *Range*'s "narrow" holding.

## II. The Panel's Failure to Apply Plain-Error Review Contravenes Rule 52(b) and Creates a Circuit Conflict.

The panel separately created a circuit split by erroneously reviewing Duarte's forfeited Second Amendment claim de novo.  "If an error is not

16

properly preserved, appellate-court authority to remedy the error" is "strictly circumscribed." *Puckett v. United States*, 556 U.S. 129, 134 (2009). An unpreserved error may be corrected only if it is "[a] plain error that affects substantial rights." Fed. R. Crim. P. 52(b).

The panel declined to apply the plain-error rule on the ground that *Vongxay* "foreclosed" Duarte's argument at the time of trial. Op. 8 (quotation omitted). But the Supreme Court has expressly rejected a "'futility' exception to Rule 52(b)," which "lacks any support in the text of the Federal Rules of Criminal Procedure or in this Court's precedents." *Greer v. United States*, 593 U.S. 503, 511-12 (2021).

Rule 12(c)(3)'s "good cause" standard cannot save the panel's futility exception. Under Rule 12(b)(3), certain motions must be made before trial, and "a court may consider" an untimely motion only "if the party shows good cause." Fed. R. Crim. P. 12(c)(3). Where a defendant fails to show good cause, the claim is waived entirely (in this circuit) and cannot be reviewed even for plain error. *Guerrero*, 921 F.3d at 897-98. But where a defendant *shows* good cause, other circuits have correctly held that Rule 52(b)'s plain-error standard still applies to the forfeited claim. *See United States v. Mung*, 989 F.3d 639, 642 (8th Cir. 2021); *United States v. Maez*, 960 F.3d 949, 957 (7th Cir. 2020); *see also United States v. Herrera*, 51 F.4th 1226, 1271 (10th Cir. 2022).

17

The government is aware of no decision holding, as the panel did here, that a showing of good cause under Rule 12(c)(3) allows a defendant to evade Rule 52(b)'s plain-error standard altogether. Because both rules can be enforced without conflict, a court must "give effect to both." *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (quotation omitted) (discussing the application of statutes).

Moreover, the Fifth Circuit has applied plain-error review to a forfeited *Bruen* claim in this precise posture. *United States v. Jones*, 88 F.4th 571, 572-73 (5th Cir. 2023) (per curiam). Although the Fifth Circuit has not considered the panel's novel reasoning that Rule 12(c)(3) can be used to avoid Rule 52(b)'s standard, the panel's application of de novo review in this posture conflicts with Fifth Circuit precedent. For that reason as well, the en banc Court's intervention is warranted.

## III. This Court Should Promptly Grant Rehearing En Banc and Vacate the Panel's Decision.

The panel's erroneous decision requires this Court's prompt intervention. This Court regularly rehears Second Amendment questions en banc. *See, e.g., Duncan v. Bonta*, 83 F.4th 803 (9th Cir. 2023) (en banc). And the reasons for rehearing are particularly compelling here. Section 922(g) as a whole "probably does more to combat gun violence than any other federal law." *Rehaif v. United States*, 585 U.S. 225, 239 (2019) (Alito, J., dissenting).

18

And § 922(g)(1) is by far the most frequently applied of Section 922(g)'s disqualifications. In Fiscal Year 2022, more than 8,600 convictions were convicted under Section 922(g), more than 7,600 of them under Section 922(g)(1). *See* U.S. Sent. Comm'n, *Quick Facts: 18 U.S.C. § 922(g) Firearms Offenses* (July 2023), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY22.pdf.

The panel decision struck down this vitally important federal law in a way that suggests many of its applications are unconstitutional. The decision is precedential even before the mandate issues. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052-53 (9th Cir. 2017). It could well prompt hundreds of challenges to pending prosecutions or final convictions under § 922(g)(1). District courts will likely reach inconsistent results as they struggle to apply the panel's demanding standard. And dangerous defendants may obtain release. The government has filed this petition just five days after the decision given these serious concerns, and it respectfully requests that the Court consider the petition on an expedited basis. *Cf.* General Orders 5.4, 5.5 (establishing default timeframe).

As Judge Smith observed, the Supreme Court will likely need to "address the constitutionality of § 922(g)(1)." Op. 73. But rather than adhering to this Court's precedent upholding § 922(g)(1) and awaiting the

19

Supreme Court's disposition of pending Second Amendment cases, s*ee United States v. Rahimi*, No. 22-915 (oral argument held Nov. 7, 2023); Petition for Writ of Certiorari, *Range*, No. 23-374, the panel majority split with other circuits to invalidate a longstanding federal law. Given the serious consequences of this decision, this Court should not await the Supreme Court's eventual resolution of § 922(g)(1)'s constitutionality before correcting the panel's errors. Instead, this Court should expedite the process for considering this petition and promptly vacate the panel's decision.

## CONCLUSION

The petition for rehearing en banc should be granted and the panel opinion promptly vacated.

Respectfully submitted,

E. Martin Estrada
United States Attorney

Mack E. Jenkins
Chief, Criminal Division

Bram M. Alden
Chief, Criminal Appeals Section

Suria M. Bahadue
Assistant United States Attorneys
Central District of California

Nicole M. Argentieri
Principal Deputy Assistant Attorney
General

Lisa H. Miller
Deputy Assistant Attorney General

s/William A. Glaser
William A. Glaser
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave, NW, Ste. 1264
Washington, DC 20530
(202) 532-4495
William.Glaser@usdoj.gov

20

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Circuit

Rules 35-4(a) and 40-1(a) because it contains 4,195 words, excluding the parts

of the petition exempted by Fed. R. App. P. 32(f).

2.      This petition complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a proportionally spaced typeface using

Microsoft Word in Calisto MT 14-point type.

s/William A. Glaser
WILLIAM A. GLASER
