CA NO. 22-50048

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

STEVEN DUARTE,

      Defendant-Appellant.

DC NO. 2:20-cr-00387-AB-1

---

**OPPOSITION TO GOVERNMENT'S PETITION FOR REHEARING EN BANC AND FOR EXPEDITED ORDER VACATING PANEL OPINION**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

HONORABLE ANDRE BIROTTE, JR.
United States District Judge

CUAUHTEMOC ORTEGA
Federal Public Defender
SONAM HENDERSON
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081
Email: Sonam_Henderson@fd.org

Attorneys for Defendant-Appellant

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................1

II. ARGUMENT ........................................................................................2

    A. THE PANEL OPINION IS FAITHFUL TO *BRUEN* AND FAR NARROWER THAN WHAT THE GOVERNMENT CLAIMS.........2

        1. The panel properly applied *Miller v. Gammie* to *Vongxay*.........2

        2. The panel correctly held at *Bruen* step one that the Second Amendment applies to all citizens. ...............................................4

        3. The panel's step two analysis meticulously reviewed the government's historical evidence, rejecting part of it but determining that other parts supported barring some felons from possessing guns, but not Duarte.........................................5

        4. The government's attacks show no error at *Bruen*'s second step. ......................................................................................9

            a. The panel's approach is no less correct even if death was the standard penalty for "serious crimes" at the Founding. ..........................................................................9

            b. The government's claim that it can dispossess anyone it deems more likely to commit violent crimes proves far too much. ................................................................10

            c. The government's claimed methodological errors are illusory. .............................................................................11

            d. The panel didn't hold that no modern offense and no nonviolent offense could serve as a basis for disarmament................................................................13

        5. The panel opinion is no broader than the Third Circuit decision in *Range* and created no new Circuit split.................14

    B. THE PANEL'S RULE 12(B)(3) "GOOD CAUSE" RULING CORRECTLY APPLIED *GUERRERO*.............................................16

i

**TABLE OF CONTENTS**

**Page**

C.　　THE OPINION CREATES NO CRISIS REQUIRING
IMMEDIATE ACTION.......................................................................18

III.　　CONCLUSION................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Atkinson v. Garland,*
    70 F.4th 1018 (7th Cir. 2023) ...................................................4, 16

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) .........................................................................4, 8

*Hedlund v. Ryan,*
    854 F.3d 557 (9th Cir. 2017) ................................................................13

*Kanter v. Barr,*
    919 F.3d 437 (7th Cir. 2019) ..................................................6, 14, 18

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003) (en banc) ...........................................2

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    597 U.S. 1 (2022) ....................................................................*passim*

*Range v. Att'y Gen.,*
    69 F.4th 96 (3d Cir. 2023) (en banc) .........................................11, 14

*Tekoh v. County of Los Angeles,*
    997 F.3d 1260 (9th Cir. 2021) ...............................................................2

*United States v. Bowline,*
    917 F.3d 1227 (10th Cir. 2019) ..........................................................17

*United States v. Dubois,*
    94 F.4th 1284 (11th Cir. 2024) ..........................................................15

*United States v. Gay,*
    98 F.4th 843 (7th Cir. 2024) ..............................................................16

*United States v. Guerrero,*
    921 F.3d 895 (9th Cir. 2019) .......................................................16, 17

*United States v. Harper,*
    2023 WL 5672311 (M.D. Pa. Sept. 1, 2023) .....................................19

*United States v. Jackson,*
    69 F.4th 495 (8th Cir. 2023) ...............................................................15

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Jones*,
  88 F.4th 571 (5th Cir. 2023) ...............................................17

*United States v. Perez-Garcia*,
  96 F.4th 1166 (9th Cir. 2024) .....................................3, 5, 12

*United States v. Quailes*,
  2023 WL 5401733 (M.D. Pa. Aug. 22, 2023) ...................19

*United States v. Ramamoorthy*,
  949 F.3d 955 (6th Cir. 2020) .............................................17

*United States v. Sperrazza*,
  804 F.3d 1113 (11th Cir. 2015) ........................................18

*United States v. Vongxay*,
  594 F.3d 1111 (9th Cir. 2010) .............................................2

*United States v. Younger*,
  398 F.3d 1179 (9th Cir. 2005) .............................................3

*Vincent v. Garland*,
  80 F.4th 1197 (10th Cir. 2023) .........................................15

**Federal Statutes**

18 U.S.C. § 922 .........................................................*passim*

**Federal Rules**

Fed R. Evid. 101 ...............................................................12

Fed. R. Crim. P. 12............................................................16, 17

Fed. R. Crim. P. 52............................................................16, 17

**Federal Constitution**

U.S. Const. Amend. II...................................................*passim*

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

Federal Bureau of Investigation, *Crime in the United States 2019*,
   https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-
   2019/topic-pages/tables ....................................................................................10

Government's Answering Brief, *United States v. Guerrero*,
   CA No. 17-50348, 2018 WL 4035328 (Aug. 14. 2018)....................................17

## I.  INTRODUCTION

The government presents no legitimate reason for en banc review.  Contrary to its alarmist claims, the panel didn't "str[ike] down" § 922(g)(1).  Rather, it faithfully applied the text-and-history methodology from *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), to derive a rule that appears to justify § 922(g)(1) in many instances, although not as applied to Duarte with his particular nonviolent priors.

Consistent with *Bruen*, the panel read the Second Amendment's text to cover all American citizens, including prior felons.  At *Bruen*'s second step, it meticulously reviewed the government's proposed historical analogues for § 922(g)(1), rejecting some but ultimately holding that the government may constitutionally disarm individuals convicted of modern felonies that it demonstrates are meaningfully analogous to Founding-era felonies punishable by death, life imprisonment, or estate forfeiture.  The government here, however, made no such showing—nor even tried.  Instead, it single-mindedly pursued an untenable, ahistorical contention that any misbehavior that is today designated a "felony" justifies permanent disarmament, no matter how divorced that "felony" is from Founding-era conceptions of serious crimes warranting the most serious punishment.

Rather than accept the panel's carefully researched opinion and undertake the historical work *Bruen* mandates, the government requests this Court go en banc

and eschew the panel's *Bruen*-focused analysis in favor of deferring to Congress's judgment. *But see Bruen*, 597 U.S. at 26 (Second Amendment leaves no room for "judicial deference to legislative interest balancing"). It insists that doing so could resolve circuit splits, yet its claimed splits are either illusory or already well-established between other circuits, such that this Court cannot resolve them. Ultimately, the government's complaint is with *Bruen*'s requirements. But that complaint must be directed to the Supreme Court, not this one. *See, e.g.*, *Tekoh v. County of Los Angeles*, 997 F.3d 1260, 1261-62 (9th Cir. 2021) (Miller, J, concurring in denial of rehearing en banc).

## II.  ARGUMENT

### A.  THE PANEL OPINION IS FAITHFUL TO *BRUEN* AND FAR NARROWER THAN WHAT THE GOVERNMENT CLAIMS.

#### 1.  The panel properly applied *Miller v. Gammie* to *Vongxay*.

The government first attacks the panel's determination that *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), is clearly irreconcilable with *Bruen*. Pet. 7-8. But its arguments mostly ignore *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), even while conceding *Vongxay* didn't do what *Bruen* requires.

Under *Miller*, "where *the reasoning* or theory of [a] prior circuit authority is clearly irreconcilable with *the reasoning* or theory of intervening higher authority," this Court "reject[s] the prior circuit opinion as . . . effectively overruled." 335

F.3d at 893 (emphasis added). As the panel carefully explained, *Vongxay*'s

reasoning was clearly irreconcilable with *Bruen*.

*Bruen* requires a two-step inquiry that first examines whether "the Second

Amendment's plain text" covers the person, his weapon, and his conduct. *Bruen*,

597 U.S. at 17. If so, "the Constitution presumptively protects that conduct." *Id.*

To justify a regulation, the government "may not simply posit that the regulation

promotes an important interest," but instead "must demonstrate that the regulation

is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17-

18. *See also United States v. Perez-Garcia*, 96 F.4th 1166, 1178 (9th Cir. 2024).

*Vongxay* neither grappled with the Amendment's text nor examined whether

there were Founding-era analogues for § 922(g)(1). Op. 12-13. Instead, it relied

on older cases that likewise failed to conduct a text-and-history analysis: *United*

*States v. Younger*, 398 F.3d 1179 (9th Cir. 2005), which held there was no

individual right to bear arms, and two Fifth Circuit decisions applying means-end

scrutiny. Op. 14-16. But neither rationale is reconcilable with *Bruen*, which

reaffirmed that the Second Amendment right is individual and held that "means-

end" scrutiny plays no role in Second Amendment analysis. Op. 16-17; *Bruen*,

597 U.S. at 19, 33. Because *Vongxay* both failed to apply the methodology

required by *Bruen* and rested on reasoning flatly inconsistent with *Bruen*, the panel

correctly concluded that it couldn't stand under *Miller*. Op. 17-22.

The government doesn't contest *Vongxay*'s reliance on *Younger* and means-end scrutiny, and admits *Vongxay* included neither the textual nor the historical analysis *Bruen* requires. Pet. 8. But it asserts that "does not matter," because *Vongxay* relied on language from *District of Columbia v. Heller*, 554 U.S. 570 (2008). Pet. 8. The panel, however, also carefully explained why that argument fails. Briefly stated, *Bruen* outlined a methodology applicable to every Second Amendment question. *Heller*'s pre-*Bruen* references to "longstanding" felon-in-possession bans as "presumptively constitutional"—even while saying that any actual historical analysis would wait for another day—are an insufficient basis for assuming that, in this one area, *Bruen*'s otherwise-universal mandate doesn't apply. Op. 17-21; *see also Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023) ("Nothing [in *Heller*] allows us to sidestep *Bruen* in th[is] way.")

## 2. The panel correctly held at *Bruen* step one that the Second Amendment applies to all citizens.

The government next takes aim at the panel's *Bruen* step one conclusion that all American citizens are among "the people" covered by the Second Amendment. It repeats the claim that because felons can be deprived of the rights to vote, hold office and serve on juries, they also stand outside "the people" the Second Amendment protects. Pet. 8-9.

But the panel carefully weighed these arguments against precedent and historical evidence before rejecting them. It noted the textual analyses in *Bruen*

4

and *Heller*, which concluded that the Second Amendment right extends to "all Americans." Op. 22-23 (quoting *Bruen*, 597 U.S. at 70; *Heller*, 554 U.S. at 581).[1] It then reviewed Founding-era dictionaries, constitutions, and other sources, which confirmed "the people" means all American citizens. Op. 26-31. The panel also thoroughly examined the government's claim that the Second Amendment right is limited in the same way as voting, holding office, and jury service. It isn't: even the government's proposed 19th century source, Thomas Cooley, distinguished between such civic rights, which are held by a subset of individuals for the collective good, and individual rights, like keeping and bearing arms, which are held by every individual for his or her own good. Op. 23, 31-33. The government fails to acknowledge—let alone undermine—the panel's detailed analysis on this issue.

**3.    The panel's step two analysis meticulously reviewed the government's historical evidence, rejecting part of it but determining that other parts supported barring some felons from possessing guns, but not Duarte.**

Having determined that the Second Amendment's plain text covered Duarte, the panel then did what *Bruen* commands: examine whether the government successfully "'shoulder[ed] the burden of demonstrating'" that § 922(g)(1) "'is

---

[1] *See also Perez-Garcia*, 96 F.4th at 1180 (the Supreme Court "has never suggested that felons are not among 'the people' within the plain meaning of the Second Amendment").

consistent with the Second Amendment's . . . historical scope.'"  Op. 33 (quoting *Bruen*, 597 U.S. at 44 n.11); *see also Bruen*, 597 U.S. at 33-34.

The government proposed three categories of historical analogues, and the panel gave each thoughtful consideration.  It eventually determined that some of those analogues would allow for disarming certain felons, but not Duarte, with his particular nonviolent priors.

First, consistent with *Heller* and with now-Justice Barrett's carefully researched dissent in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), the panel determined that three rejected proposals from state constitutional conventions were poor evidence of a "well-established and representative" historical tradition of permitting disarmament.  Op. 35-39.  In any event, read in light of Founding-era dictionaries, they would at most justify disarming only individuals whose priors suggested a proclivity for violence, not nonviolent offenders like Duarte.  Op. 35-39.

Similarly, the panel carefully combed through Founding-era laws temporarily disarming British Loyalists during the Revolutionary War and Catholics during the French and Indian War, as well as laws disarming Black people and Native Americans.  Indeed, it spent eighteen pages reviewing numerous historical sources before concluding these laws didn't meet the "why" and "how" of *Bruen*'s analogical test.  Op. 39-57.  In terms of "why," the laws weren't aimed at limiting crime, but at preventing armed insurrection, generally during wartime,

6

by groups united along political, ideological, or social lines. Op. 42-46, 50-51, 53-54. Moreover, none of these groups was considered part of the "people" at the time they were disarmed. Op. 39-40, 44, 46, 50-51, 53. And in terms of "how," the government's examples were temporary, limited in scope, confined to certain jurisdictions, and subject to need-based and case-specific exemptions. Op. 40, 43, 46-49, 51, 55-56. They didn't show anything like the government's claimed authority to permanently disarm anyone it considers untrustworthy. Op. 40, 52; GAB 32-33.

Finally, the panel reviewed the government's assertions that the default penalties for "felonies" at the Founding were death or total estate forfeiture, and so anything labeled a "felony" today can be punished with the relatively less-severe penalty of dispossession. Op. 57-63. The panel concluded that the historical evidence showed such penalties were far less prevalent for Founding-era felons than the government's argument pre-supposed, and that the term "felony" today is a much broader category than it was at the Founding, such that many of today's "felonies" were historically either classified as misdemeanors or not crimes at all. Op. 57-60. Accordingly, it couldn't conclude from the Founding-era evidence that Congress today can permanently dispossess anyone convicted of a modern "felony." Op. 60-61.

The panel nevertheless concluded that Founding-era "laws punishing *certain* felonies with death, estate forfeiture, or a life sentence" might be the closest thing

to the "longstanding" felon firearm bans *Heller* referenced. Op. 59-60 (emphasis in opinion). Such laws could justify dispossessing felons convicted of the same crimes today and also serve as analogies justifying dispossession for people convicted of relevantly similar, but purely modern, crimes. Op. 59-60. The panel analyzed Duarte's priors under this rubric, determining that vandalism was a misdemeanor at the Founding, that felon-in-possession had no Founding-era antecedent, and that the government had presented no evidence or argument that Duarte's remaining convictions for drug possession and evading a police officer were analogous to Founding-era crimes serious enough to be punished by death, life in prison, or estate forfeiture. Op. 62-63.

Thus, the panel did not "reject[]" the government's evidence in its entirety, Pet. 5, but carefully extracted from it an understanding of when felon-in-possession laws are constitutional under *Bruen*. In doing so, the panel reconciled statements in *Heller* and some *Bruen* concurrences about "longstanding" felon-in-possession bans with *Bruen*'s requirement of a historic tradition going back to the Founding to support firearm regulation—and the undisputed absence of felon-in-possession bans prior to the 20th century. *See* Op. 35; *Heller*, 554 U.S. at 626 & n.26; *Bruen*, 597 U.S. at 17, 27; *id.* at 72 (Alito, J., concurring); *id.* at 81 (Kavanaugh, J., concurring). The panel didn't answer the government's call to take those statements to mean that the government may name any misbehavior a "felony" today and permanently disarm all those convicted of such a "felony." *See* Pet. 7-8.

8

Rather, it demonstrated that Founding-era felonies serious enough to punish with death, forfeiture, or life imprisonment constituted plausible longstanding antecedents for dispossessing some but not all modern felons: namely, individuals convicted of modern offenses meaningfully similar to those Founding-era crimes. Op. 59-62.

### 4. The government's attacks show no error at *Bruen*'s second step.

The government doesn't show that the panel misread or ignored any historical sources.  Nor does it propose Founding-era analogues for Duarte's convictions that would have been punishable by death or forfeiture.  Instead of accepting *Bruen*'s "burden" of demonstrating a historical tradition of regulation, the government basically asks this Court to carry on as if *Bruen* had never issued.

### a. The panel's approach is no less correct even if death was the standard penalty for "serious crimes" at the Founding.

The government first claims § 922(g)(1) is constitutional in every application because at the Founding "serious crimes" were punished by death and "certain felons" were subject to forfeiture.  Pet. 9.  But even assuming its premise is accurate,[2] its argument begs the question: what *were* "serious crimes" and these "certain felon[ies]" at the Founding?  The government ignores entirely that the

---

[2] *But see, e.g.*, Op. 57-58 & n.15.

panel identified a methodology consistent with *Bruen* for answering that question: the government must show a modern offense bears sufficient similarity to Founding-era crimes subject to execution, forfeiture, or life imprisonment. Op. 59-62. The more prevalent the government can show such penalties actually were at the Founding, the more § 922(g)(1) prosecutions it can pursue.

> ### b. The government's claim that it can dispossess anyone it deems more likely to commit violent crimes proves far too much.

The government next claims a broad historical tradition of disarming anyone whose possession of firearms it considers dangerous, and asserts that felons on the whole are more likely than "law-abiding individuals" to commit violence. Pet. 9-10. Not only is this argument means-end interest-balancing prohibited by *Bruen*, it proves far too much. Government statistics suggest that the vast majority of violent crimes are committed by people aged 18 to 39, and disproportionately by men.[3] Yet no one supposes that just because men under 40 are more likely to commit violent crimes, disarming them all would be constitutional.

Moreover, the government has consistently failed to explain what "law-abiding" means. As the Third Circuit recognized, that term is so expansively

---

[3] Federal Bureau of Investigation, Crime in the United States 2019, Tables 38 & 42, https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/tables/table-38 & https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/tables/table-42.

vague that its invocation amounts to little more than a claim that Congress can exclude almost whomever it wants from Second Amendment protection. *Range v. Att'y Gen.*, 69 F.4th 96, 102-03 (3d Cir. 2023) (en banc); *see also* ARB 12-13. Similarly, the government offers no principle for determining what the relevant unit of comparison is. It provides no data suggesting non-violent, low-level prior felons like Duarte present any unusual risk of gun violence, and no reason why he—or, for instance, a person whose only felony was releasing balloons in Florida, Op. 61—should be grouped with people with much more serious criminal histories.

### c. The government's claimed methodological errors are illusory.

The government also inaccurately claims several methodological errors by the panel. First, the government circularly asserts the panel "wrongly" rejected its textual and historical arguments, citing only its own Answering Brief and its certiorari petition in *Range*. Pet. 10. But the panel explained at length why the government's evidence and arguments fail. Op. 33-63.

Second, the government asserts *Perez-Garcia* rejected the panel's purported "divide-and-conquer" approach to historical inquiry. Pet. 10. But *Perez-Garcia* didn't bar courts from individually examining the government's proposed historical analogues; nor could it have, since *Bruen* itself examined numerous proposed analogues before concluding that the state's burden wasn't met. *Bruen*, 597 U.S. at 39-70. *Perez-Garcia*'s point was that overreliance on trivial

11

distinctions between historical and modern regulations risks requiring a historical "dead-ringer." 96 F.4th at 1191. But the panel did nothing like that: instead, it carefully applied history to extract a rule for when the government can dispossess individuals with prior convictions—just not the boundless permission the government wanted.

Equally untenable is the government's claim that *Perez-Garcia* rejected the panel's requirement that the government identify Founding-era felonies subject to execution and forfeiture analogous to the modern "felonies" for which it seeks dispossession. Pet. 11. *Perez-Garcia* said only that—for temporary pretrial gun conditions imposed after individualized review—the government didn't need to produce Founding-era "dead-ringers" that would have disarmed a specific defendant pretrial. 96 F.4th at 1185-86. Again, the panel did nothing like that. Although it easily determined there were no Founding-era laws depriving any former felons of guns, it nevertheless reasoned analogically that some individuals convicted of felonies today could be permanently disarmed. Op. 35, 61-62.

Finally, the government complains the panel described the absence of Founding-era laws disarming former convicts as "strong" evidence that § 922(g)(1) conflicts with the Second Amendment: it asserts that *Bruen* only called such an absence "relevant evidence." *See* Pet. 10-11; Op. 35; *Bruen*, 597 U.S. at 26-27. The government is confused. Evidence is relevant if it has "any tendency" to make a fact more probable than it would otherwise be. *See* Fed R. Evid. 101. Relevant

evidence might be weak or strong, depending on the facts and circumstances of a particular case. *See, e.g.*, *Hedlund v. Ryan*, 854 F.3d 557, 587 n.23 (9th Cir. 2017) (distinguishing "weight" and "relevance" conceptually). Here, the panel correctly concluded that evidence *Bruen* called "relevant" was, in this case, also "strong."

More important, the panel affirmed that the lack of a direct historical precedent was "not fatal," extensively considered the government's proposed analogues, and eventually concluded that some of those analogues appeared to justify many applications of § 922(g)(1). Op. 35-62. That isn't a panel treating the absence of a distinctly similar regulation as "conclusive."

> ### d. The panel didn't hold that no modern offense and no nonviolent offense could serve as a basis for disarmament.

The government additionally raises alarmist and unfounded claims about the scope of the panel's holding, asserting the panel "apparently held" that no distinctly modern offense, like drug trafficking, can ever be a basis for disarmament. Pet. 12. To the contrary, the opinion explicitly identified "drug trafficking" as a modern offense that might be, with proper evidence, analogized to Founding-era felonies punished by death or forfeiture. Op. 60. The government's actual complaint seems to be with the panel's (correct) conclusion that the government failed to offer evidence or argument showing any Founding-era felony serious enough to be punished by death or forfeiture analogous to Duarte's particular drug possession conviction. Op. 62-63. This Court shouldn't go en banc

13

to rescue the government from its strategic briefing decisions in one particular case.

The government also complains about the panel's references to Duarte's priors as "nonviolent," claiming those references might cause confusion, and that even judges who see § 922(g)(1) as unconstitutional in some applications view "dangerousness," not nonviolence, as the relevant constitutional line. Pet. 12-14. That argument ignores the substantial overlap between being nonviolent and being not dangerous. *See Kanter*, 919 F.3d at 451, 467 (Barrett, J., dissenting) (treating nonviolence and lack of dangerousness as essentially interchangeable); *Range*, 69 F.4th at 105 n.9 (same). But more important, it ignores the panel's clear test: whether § 922(g)(1) is constitutional as applied to a particular individual depends on whether that person's priors are meaningfully analogous to Founding-era offenses punished by death, life imprisonment, or forfeiture. Op. 5-6, 60-62.

**5.    The panel opinion is no broader than the Third Circuit decision in *Range* and created no new Circuit split.**

The government inaccurately sensationalizes the panel's careful, limited opinion as going well beyond the Third Circuit's en banc opinion in *Range*. Pet. 14-16. But its arguments entirely ignore *Range*'s reasoning. The Third Circuit evaluated and dismissed as potential analogues *all* the government's proffered historical evidence—*including the Founding-era offenses punishable by death and forfeiture* relied on by the panel here. *Range*, 69 F.4th at 103-06. Thus, *Range* did

not identify *any* historical analogues justifying *any* application of § 922(g)(1). That is far broader than the opinion here, which, again, held § 922(g)(1) can be constitutionally applied where the government demonstrates that the defendant's priors are meaningfully analogous to Founding-era felonies punishable by death, life imprisonment, or forfeiture. Op. 60-62.

The panel here thus took no outlier position. Rather, it situated itself between poles in a complicated and still-emerging legal landscape:

- The Third Circuit held § 922(g)(1) is unconstitutional in some of applications and that none of the government's proposed analogues are valid (*Range*);

- The Tenth and Eleventh Circuit upheld § 922(g)(1) with no textual or historical analysis, instead holding that *Bruen* did not disturb their pre-*Bruen* precedent (*Vincent v. Garland*, 80 F.4th 1197, 1200-02 (10th Cir. 2023), and *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024));

- The Eighth Circuit relied on the now-vacated panel opinion in *Range* to conclude that legislatures may disarm any group they deem "dangerous" or "demonstrat[ing] disrespect for legal norms of society" (*United States v. Jackson*, 69 F.4th 495, 503-04 (8th Cir. 2023)); and

- The Seventh Circuit rejected claims that *Bruen* has no application to § 922(g)(1), and acknowledged that it may be unconstitutional in some cases, while nonetheless concluding it constitutionally applied to a defendant

15

with 22 prior felonies, including aggravated battery of a police officer

(*Atkinson*, 70 F.4th at 1022, and *United States v. Gay*, 98 F.4th 843, 846-47

(7th Cir. 2024)).

Given these disparate approaches, nothing this Court can do will resolve the

split.  And the panel opinion stands out for its detailed historical analysis, and for a

nuanced approach that follows *Bruen*'s holding while honoring the references in

*Heller* and some *Bruen* concurrences to "longstanding" felon-in-possession

regulations.  *See* Section II.A.3, *supra*.

## B.     THE PANEL'S RULE 12(B)(3) "GOOD CAUSE" RULING CORRECTLY APPLIED *GUERRERO*.

Grasping for reasons to go en banc, the government attacks the panel's

approach to Duarte's Second Amendment claim being raised for the first time on

appeal.  Proceeding under Rule 12(b)(3)—the correct vehicle for seeking dismissal

on constitutional grounds—the panel determined that Duarte had shown "good

cause" for his failure to raise the claim pretrial, then reviewed the claim on the

merits.  Op. 7-8.  The government tries to recast this Rule 12(b)(3) ruling as an

improper Rule 52(b) "futility" exception, and as creating a circuit split.  Neither

claim is accurate.

The panel followed to the letter this Court's decision in *United States v.*

*Guerrero*, which rejected a claim "that untimely Rule 12(b)(3) defenses,

objections, and requests raised for the first time on appeal should be reviewed for

plain error." 921 F.3d 895, 897-98 (9th Cir. 2019). This Court noted that the Rules Committee explicitly "permitt[ed] the Courts of Appeals to decide *if and how* to apply Rules 12 and 52 when arguments that should have been the subject of required Rule 12(b)(3) motions are raised for the first time on appeal." *Id.* at 898 (emphasis added). This Court then held that it would continue to "construe[] Rule 12's good-cause standard as *displacing* the plain-error standard" for such issues. *Id.* at 897 (emphasis added). In doing so, it adopted *the government*'s contention that de novo review applies once a defendant-appellant shows Rule 12 good cause. *See* Gov. Ans. Br. at 24, *United States v. Guerrero*, 2018 WL 4035328.

Thus, the issue isn't a "futility" exception to Rule 52(b), but simply a determination—already made in *Guerrero* at the government's urging—that Rule 52(b) doesn't apply in the Rule 12(b)(3) setting. The government may now prefer a different rule, but it cannot claim this panel created a circuit split or did anything but apply *Guerrero* as written. Nor is it correct that other circuits uniformly require someone in Duarte's position to show both good cause and plain error. Pet. 17-18. In actuality, circuits take at least two other approaches to this issue, and at least the Tenth Circuit joins this Court in its approach.[4]

---

[4] *See United States v. Bowline*, 917 F.3d 1227, 1236 (10th Cir. 2019) ("when an untimely argument subject to Rule 12 is raised for the first time on appeal the Rule 12 good-cause standard, and not Rule 52, applies"); *United States v. Ramamoorthy*, 949 F.3d 955, 962 (6th Cir. 2020) (applying *only* plain error, and not good cause, to a Rule 12(b)(3) claim raised for the first time on appeal); *United*

## C.   THE OPINION CREATES NO CRISIS REQUIRING IMMEDIATE ACTION.

Finally, the government castigates the panel for "str[iking] down" § 922(g)(1) without "awaiting the Supreme Court's disposition[s]" of *United States v. Rahimi*, No. 22-915, and *Range*.  Pet. 19-20.  This claim is pure chutzpah.

Long before oral argument, Duarte requested a stay pending *Rahimi*.  Dkt. 53.  But the government vociferously opposed, insisting: "Neither question [in this case] has anything to do with *Rahimi*."  Dkt. 55 at 3.  Having insisted the panel press forward despite *Rahimi*, the government cannot now complain that the opinion issued before *Rahimi* has been decided.

Furthermore, any claim that § 922(g)(1) has been "struck down" is nonsense.  The panel set out a framework for allowing some applications of § 922(g)(1) to proceed.  *See* Section II.A.3, *supra*.  It appears likely that the government will be able to demonstrate that the most serious crimes, starting with violent offenses like murder, rape, and arson, will meet the opinion's test.  *See, e.g.*, *Kanter*, 919 F.3d at 467 n.14 (Barrett, J., dissenting).  Moreover, the panel's decision is no broader than the Third Circuit's decision in *Range*, and despite that decision having been

---

States v. Jones*, 88 F.4th 571, 572 (5th Cir. 2023) (same); *United States v. Sperrazza*, 804 F.3d 1113, 1119 (11th Cir. 2015) (same).

around for a year, the government doesn't here claim—nor show—a significant impact on its ability to enforce § 922(g)(1).[5]

The sky is not falling.  The government will continue to prosecute serious felon-in-possession cases.  It simply must do so in compliance with *Bruen*.

### III.  CONCLUSION

The government's petition for rehearing en banc and request for expedited vacatur should be denied.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender


DATED:  May 30, 2024          By  */s/ SONAM HENDERSON*
                                  SONAM HENDERSON
                                  Deputy Federal Public Defender
                                  Attorney for Defendant-Appellant

---

[5]  Appellant is aware of only two cases that have been dismissed under *Range*: *United States v. Quailes*, 2023 WL 5401733 (M.D. Pa. Aug. 22, 2023), and *United States v. Harper*, 2023 WL 5672311 (M.D. Pa. Sept. 1, 2023).

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 22-50048

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 4,192 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Sonam Henderson      **Date** | May 30, 2024

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11**                                    *Rev. 12/01/2021*