No. 22-50048

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN DUARTE,

Defendant-Appellant.

_____

On Appeal from the United States District Court
for the Central District of California

No. 2:20-cr-00387
The Honorable Andre Birotte, Jr.

## EN BANC BRIEF OF AMICI CURIAE ILLINOIS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND WASHINGTON IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE

ALEX HEMMER
SARAH A. HUNGER
Deputy Solicitors General
SAMANTHA SHERMAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ii

IDENTITY AND INTEREST OF AMICI STATES ................................... 1

SUMMARY OF ARGUMENT .................................................................. 2

ARGUMENT ............................................................................................ 4

I.    Exercising Their Authority To Keep Firearms Out Of The Hands Of Individuals Who Are Not Law-Abiding, Nearly All States Have Restricted Felons From Possessing Firearms ................................. 6

    A.    The Second Amendment allows States to enact measures to promote gun safety and protect against gun violence that are consistent with historical tradition. ....................................... 6

    B.    Section 922(g)(1) is consistent with longstanding measures taken by essentially all States. ................................................. 9

II.    The Court Should Reject Defendant's Invitation To Upend These Longstanding Laws. ....................................................................... 15

    A.    A case-by-case approach to adjudicating as-applied challenges to section 922(g)(1) would be unworkable. ......... 16

    B.    A crime-by-crime approach would be equally unworkable. . 20

    C.    Accepting defendant's Second Amendment claim would complicate a range of other federal and state regulations ... 25

CONCLUSION ....................................................................................... 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Almanza-Arenas v. Lynch,*
815 F.3d 469 (9th Cir. 2016) (en banc) ........................................... 21

*Application of Markham,*
134 N.W.2d 84 (Neb. 1965) ............................................................. 11

*Bianchi v. Brown,*
111 F.4th 438 (4th Cir. 2024) (en banc) ........................................... 1

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ........................................................... 7, 8, 9, 27

*Folajtar v. Att'y Gen.,*
980 F.3d 897 (3d Cir. 2020) ............................................................. 17

*Johnson v. United States,*
576 U.S. 591 (2015) ................................................... 19, 21, 22, 25

*Malta-Espinoza v. Gonzales,*
478 F.3d 1080 (9th Cir. 2007) ......................................................... 24

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) ........................................................... 7, 8, 9, 14

*Medtronic, Inc. v. Lohr,*
518 U.S. 470 (1996) ......................................................................... 6

*Nelson v. State,*
195 So.2d 853 (Fla. 1967) ............................................................... 11

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
597 U.S. 1 (2022) ................................................... 4, 7, 8, 9, 27, 29

*Range v. Att'y Gen.,*
69 F.4th 96 (3d Cir. 2023) (en banc) ........................... 19, 26, 27, 28

*State v. Noel,*
    414 P.2d 162 (Ariz. Ct. App. 1966) ................................................. 11

*Sykes v. United States,*
    564 U.S. 1 (2011) ........................................................................ 22

*Taylor v. United States,*
    495 U.S. 575 (1990) ................................................................ 18, 19

*United States v. Harper,*
    689 F. Supp. 3d 16 (M.D. Pa. 2023) ............................................. 24

*United States v. Mayer,*
    560 F.3d 948 (9th Cir. 2009) ....................................................... 23

*United States v. Morrison,*
    529 U.S. 598 (2000) ...................................................................... 6

*United States v. Lopez,*
    514 U.S. 549 (1995) ...................................................................... 6

*United States v. Quailes,*
    688 F. Supp. 3d 184 (M.D. Pa. 2023) ........................................... 24

*United States v. Pearson,*
    No. 22-cr-271, 2023 WL 6216527 (E.D. Pa. Sept. 25, 2023) .......... 25

*United States v. Rahimi,*
    144 S. Ct. 1889 (2024) ...................................................... 7, 8, 9, 16

*United States v. Reichenbach,*
    No. 22-cr-57, 2023 WL 5916467 (M.D. Pa. Sept. 11, 2023) ........... 25

## HISTORICAL STATUTES

Act of July 8, 1932, Pub L. No. 72-275, 47 Stat. 650 .............................. 11

An Act to Regulate Commerce in Arms, Pub. L. No. 75-785, 52 Stat.
    1250 (1938) ...................................................................... 11

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 .................. 11

Act of Apr. 6, 1936, No. 82, 1936 Ala. Laws 51 ........................................ 11

Act of June 13, 1923, ch. 339, 1923 Cal. Stat. 695 .................................. 10

Act of Mar. 7, 1923, ch. 266, 1923 N.D. Laws 379 .................................. 10

Act of May 4, 1923, ch. 118, 1923 N.H. Laws 138 ................................... 10

Act of Mar. 12, 1925, ch. 207, 1925 Ind. Acts 495 ................................... 10

Act of Apr. 29, 1925, ch. 284, 1925 Mass. Acts 323 ................................ 10

Act of June 2, 1927, No. 372, 1927 Mich. Pub. Acts 887 ......................... 10

Act of Mar. 30, 1927, ch. 321, 1927 N.J. Laws 742 ................................. 10

Act of Feb. 26, 1925, ch. 261, 1925 Or. Laws 468 ................................... 10

Act of June 11, 1931, No. 158, 1931 Pa. Laws 497 .................................. 11

Act of Apr. 22, 1927, ch. 1052, 1927 R.I. Pub. Laws 256 ........................ 11

Act of Mar. 14, 1935, ch. 208, 1935 S.D. Sess. Laws 355 ....................... 11

Act of Mar. 23, 1935, ch. 172, 1935 Wash. Sess. Laws 599 .................... 11

Act of June 5, 1925, ch. 3,
   1925 W. Va. Acts (Extraordinary Session) 24 ................................ 10

## STATUTES, REGULATIONS, AND RULES

18 U.S.C.
   § 921 ......................................................................................... 12
   § 922 ..................................................................................... *passim*

430 Ill. Comp. Stat.
   65/4 .......................................................................................... 12
   65/8 .......................................................................................... 12

720 Ill. Comp. Stat. 5/24-3.5 .................................................................. 26

Ala. Code
    § 13A-11-70 ...................................................................... 17
    § 13A-11-72 ................................................................ 13, 14

Alaska Stat.
    § 11.61.200 ...................................................................... 13
    § 11.61.200 ...................................................................... 13

Ariz. Rev. Stat
    § 13-904(A)(5) ................................................................ 12
    § 13-3101(A)(7)(B) ........................................................ 12
    § 13-3102(A)(4) .............................................................. 12

Ark. Code Ann. § 5-73-103 .................................................................. 12

Cal. Penal Code
    § 4852.17 .......................................................................... 13
    § 4854. .............................................................................. 13
    § 27515 ............................................................................. 26
    § 27540 ............................................................................. 26
    § 29800 ............................................................................. 12

Cal. Vehicle Code § 2800.2 .................................................................. 22

Colo. Rev. Stat.
    § 18-12-108 ...................................................................... 12
    § 18-12-111 ...................................................................... 26

Conn. Gen. Stat. § 53a-217 .................................................................. 12

D.C. Code § 22-4503 .......................................................................... 12

Del. Crim. Code Ann. tit. 11, § 1448 .................................................... 12

Fla. Stat. § 790.23 .............................................................................. 12

Ga. Code Ann. § 16-11-131 .................................................................. 12

Haw. Rev. Stat. § 134-7 ............................................................... 12

Idaho Code Ann. § 18-3316 ......................................................... 13

Ind. Code. Ann. § 35-47-4-5 .................................................. 13, 14

Iowa Code § 724.26 ..................................................................... 12

Kan. Stat. Ann. § 21-6304 ........................................................... 13

Ky. Rev. Stat. Ann. § 527.040 ..................................................... 12

La. Rev. Stat. § 14:95.1 .......................................................... 14, 17

Mass. Gen. Laws. ch. 140,
    § 129B ................................................................................. 12
    § 131 ................................................................................... 12

Md. Code Ann., Pub. Safety
    § 5-133 ................................................................................ 12
    § 5-101 ................................................................................ 12

Me. Stat. tit. 15, § 393 ................................................................. 12

Mich. Comp. Laws § 750.224f .................................................... 13

Minn. Stat. § 624.713 ................................................................. 12

Miss. Code Ann. § 97-37-5 ......................................................... 12

Mont. Code Ann. § 45-8-313 ...................................................... 13

Mo. Rev. Stat. § 571.070 ............................................................ 12

N.C. Gen. Stat. § 14-415.1 .......................................................... 12

N.D. Cent. Code § 62.1-02-01 ..................................................... 13

Neb. Rev. Stat. § 28-1206 ........................................................... 12

Nev. Rev. Stat. § 202.360 ........................................................... 12

N.H. Rev. Stat. Ann. § 159:3 ................................................................ 13

N.J. Stat. Ann. § 2C:39-7 .................................................................. 13

N.M. Stat. Ann. § 30-7-16 ................................................................. 13

N.Y. Penal Law
    § 265.01 ..................................................................................... 12
    § 400.00 ..................................................................................... 12

Ohio Rev. Code § 2923.13 ......................................................... 13, 17

Okla. Stat. tit. 21, § 1283 .................................................................. 12

Or. Rev. Stat.
    § 166.250 ................................................................................... 12
    § 166.270 ................................................................................... 12

18 Pa. Cons. Stat. § 6105 .................................................................. 13

R.I. Gen. Laws
    § 11-47-2 ............................................................................. 14, 17
    § 11-47-5 ............................................................................. 13, 14
    § 11-47-23 ................................................................................. 26

S.C. Code § 16-23-500 ...................................................................... 14

S.D. Codified Laws § 22-14-15 ......................................................... 14

Tenn. Code Ann. § 39-17-1307 ......................................................... 12

Tex. Penal Code Ann. § 46.04 .......................................................... 13

Utah Code § 76-10-503 ..................................................................... 13

Va. Code Ann. § 18.2-308.2 .............................................................. 12

Vt. Stat. Ann. tit. 13, § 4017 ................................................... 13, 14, 17

Wash. Rev. Code § 9.41.040 .............................................................. 12

W. Va. Code § 61-7-7 ....................................................................... 12

Wis. Stat. § 941.29 .......................................................................... 12

Wyo. Stat. § 6-8-102 ....................................................................... 12

## OTHER AUTHORITIES

*Stalking Fact Sheet*, Stalking Prevention, Awareness, and Resource
  Ctr. (2018), https://tinyurl.com/yufh3paf ........................................ 23

Zeoli, April M., et al., *Effectiveness of Firearm Restrictions, Background
  Checks, and Licensing Laws in Reducing Gun Violence*, 704
  Annals of the Am. Acad. of Pol.& Soc. Sci. 118 (2022) ................. 28

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington (collectively, "amici States") submit this amicus brief in support of plaintiff-appellee the United States of America pursuant to Federal Rule of Appellate Procedure 29(a)(2).

Amici States have a substantial interest in the health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence. *See Bianchi v. Brown*, 111 F.4th 438, 442 (4th Cir. 2024) (en banc) (describing "the basic obligation of government to ensure the safety of the governed"). The challenged statute, 18 U.S.C. § 922(g)(1), prohibits individuals convicted of a "crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. Section 922(g)(1) protects residents in amici States by reducing the risk of gun violence. Additionally, almost all States and the District of Columbia have implemented measures restricting gun possession by people with felony convictions—the vast

majority of which closely resemble the prohibition in section 922(g)(1).

States likewise consider individuals' criminal records in administering a

range of regulatory systems designed to protect public safety, including

firearm licensure regimes and background check requirements. Amici

States thus have a substantial interest in defending section 922(g)(1)

from as-applied challenges like defendant's, which threaten to

destabilize these important protections.

## SUMMARY OF ARGUMENT

Defendant has been convicted of five felonies, including two

convictions for recklessly evading a police officer. He was arrested in

2020 and charged with violating 18 U.S.C. § 922(g)(1), which prohibits

the possession of firearms by individuals who have been convicted of a

felony. He was found guilty by a federal jury, but argued on appeal that

the conviction violated his Second Amendment rights because there is

no relevant historical tradition that would permit the government to

disarm individuals previously convicted of "non-violent" felonies, a

category to which he asserts he belongs. A panel of this Court agreed,

but the Court granted the United States's petition for rehearing en

banc.

Amici States agree that the panel incorrectly held that section 922(g)(1) violates the Second Amendment as applied to defendant. As the federal government explains, the right to keep and bear arms is not unlimited, and defendant's as-applied challenge fails on multiple bases, including that there is a robust historical tradition that permits the government to disarm individuals convicted of serious or dangerous crimes. Amici States therefore urge this Court to affirm defendant's conviction and reject his as-applied challenge to section 922(g)(1).

Amici States write separately, however, to emphasize how a decision upholding defendant's as-applied challenge would negatively impact their ability to maintain sensible gun safety regulations that are consistent with historical tradition. Almost all States and the District of Columbia have imposed some limitations on the possession of firearms by individuals with felony convictions, and the vast majority of these prohibitions closely resemble section 922(g)(1). A decision holding that section 922(g)(1) is unconstitutional as applied to individuals like defendant could, at minimum, raise questions about the enforceability of the States' analogous statutes.

Moreover, accepting defendant's Second Amendment argument would create serious administrability and fairness problems. Section 922(g)(1) and analogous state statutes set forth objective and readily administrable rules that provide both courts and the public with clear guidance on who may possess firearms. The States not only enforce these statutes, they also incorporate them into administrative regimes to ensure that only those who are legally permitted to obtain or possess firearms are, in practice, able to do so. But defendant's regime would frustrate legislatures' ability to enact uniform regulations and instead require courts either to delve into the facts and circumstances of an individual's case or to reason abstractly about whether an individual offense is sufficiently violent or serious to warrant disarmament. The Court should reject defendant's as-applied challenge to section 922(g)(1) and affirm his conviction.

## ARGUMENT

The Second Amendment safeguards the right of "law-abiding, responsible citizens" to keep and bear arms. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 26 (2022). Section 922(g)(1) does not intrude on that important right; instead, it protects the public by

preventing individuals who have demonstrated that they are *not* law-abiding from possessing deadly weapons. Nearly all States and the District of Columbia place restrictions on firearm possession by individuals with felony convictions, and the vast majority of these state laws closely resemble section 922(g)(1). But defendant's proposal would unsettle these laws, replacing the longstanding and straightforward approach they set out with a patchwork of judge-made regimes. Courts would be forced to evaluate, using amorphous and ill-defined standards, whether each individual or each distinct felony offense is sufficiently "violent" to warrant disarmament. Case-by-case or crime-by-crime adjudication of this sort would be unworkable in practice, and adopting such a method would in turn destabilize other firearm regulations that likewise rest on this distinction. The Court should reject defendant's Second Amendment claim.

I. **Exercising Their Authority To Keep Firearms Out Of The Hands Of Individuals Who Are Not Law-Abiding, Nearly All States Have Restricted Felons From Possessing Firearms.**

A. **The Second Amendment allows States to enact measures to promote gun safety and protect against gun violence that are consistent with historical tradition.**

Although this case concerns a federal statute, defendant's Second Amendment challenge to his conviction implicates fundamental principles of state authority. The States have long exercised their police powers to protect the health, safety, and welfare of their residents. In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotation marks omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). These responsibilities include enacting measures to promote safety, prevent crime, and minimize gun violence within their borders. *See*, *e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in

6

the States, than the suppression of violent crime and vindication of its victims.").

The Supreme Court has repeatedly affirmed the States' authority in this area, even as it has defined the scope and significance of the rights conferred by the Second Amendment. Indeed, in each of its major Second Amendment opinions—*District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *Bruen*, 597 U.S. 1, and *United States v. Rahimi*, 144 S. Ct. 1889 (2024)—the Court has recognized the important role that States play in protecting residents from gun violence. This role is consistent with our Nation's historical tradition.

To begin, in *Heller*, the Supreme Court made clear that the Second Amendment right to keep and bear arms is "not unlimited." 554 U.S. at 225. The Court explained that although governments may not ban the possession of all handguns by responsible, law-abiding individuals, or impose similarly severe burdens on the Second Amendment right, they still possess "a variety of tools" to combat the problem of gun violence. *Id.* at 636. The Court made the same point shortly thereafter in *McDonald*, emphasizing that the Second Amendment "by no means

7

eliminates" the States' "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785.

Although the Court's subsequent decision in *Bruen* set out a new standard by which courts are to assess firearm regulations, both that opinion and the Court's opinion in *Rahimi* nevertheless preserved governments' substantial authority to regulate the possession, sale, and use of firearms. *Bruen* emphasized that the historical test demanded by the Second Amendment is not a "regulatory straightjacket," 597 U.S. at 30, and that "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868," *id.* at 27. *Rahimi*, for its part, reaffirmed that the right to bear arms "was never thought to sweep indiscriminately," and that the Second Amendment does not demand "a law trapped in amber." 144 S. Ct. at 1897. And the Court repeatedly has taken special care to note that prohibitions on the possession of firearms by felons are "presumptively lawful." *Heller*, 554 U.S. at 627 n.26; *McDonald*, 561 U.S. at 786 (plurality opinion) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by

8

felons and the mentally ill'" and "repeat those assurances here."
(quoting *Heller*, 554 U.S. at 626-27)); *Rahimi*, 144 S. Ct. at 1902
("[M]any . . . prohibitions, like those on the possession of firearms by
'felons and the mentally ill,' are 'presumptively lawful.'" (quoting *Heller*,
554 U.S. at 626, 627, & 627 n.26)); *see also Bruen*, 597 U.S. at 81
(Kavanaugh, J., joined by Roberts, C.J., concurring) ("[N]othing in our
opinion should be taken to cast doubt on longstanding prohibitions on
the possession of firearms by felons . . . ." (quoting *McDonald*, 561 U.S.
at 786)).

Taken together, then, *Heller*, *McDonald*, *Bruen*, and *Rahimi*
underscore that our Nation's tradition of firearm regulation reflects
that States and the federal government retain a substantial measure of
regulatory authority to protect the health and safety of their residents,
including by regulating the possession of firearms by individuals who
are not "law-abiding citizens," such as felons. *Bruen*, 597 U.S. at 71.

**B.** **Section 922(g)(1) is consistent with longstanding measures taken by essentially all States.**

Consistent with this authority, essentially all States, like the
federal government, have enacted laws generally restricting felons from
possessing firearms. Most of these laws closely resemble section

9

922(g)(1), though a minority of States have established slightly different rules.  Section 922(g)(1), in other words, is hardly an outlier; indeed, it is broadly consistent with the choices that most government entities in our Nation have made to protect their residents from gun violence.

Section 922(g)(1) and its state analogues have a long history, dating back over a century.  In the 1920s, at least nine States — California, Indiana, Massachusetts, Michigan, New Hampshire, Nevada, North Dakota, Oregon, and West Virginia—enacted laws prohibiting individuals convicted of felonies from possessing or carrying handguns.[1]  Over the following decade, other States, including Alabama, the District of Columbia, New Jersey, Pennsylvania, Rhode Island, South Dakota, and Washington, also prohibited possession of firearms by those convicted of specific enumerated crimes, which were

---

[1]  Act of June 13, 1923, ch. 339, § 2, 1923 Cal. Stat. 695; Act of Mar. 12, 1925, ch. 207, § 4, 1925 Ind. Acts 495; Act of Apr. 29, 1925, ch. 284, § 4, 1925 Mass. Acts 323; Act of June 2, 1927, No. 372, § 2, 1927 Mich. Pub. Acts 887; 1925 Nev. Stat. 54, ch. 47, § 2; Act of Mar. 7, 1923, ch. 266, § 5, 1923 N.D. Laws 379; Act of May 4, 1923, ch. 118, § 3, 1923 N.H. Laws 138; Act of Feb. 26, 1925, ch. 261, § 2, 1925 Or. Laws 468; Act of June 5, 1925, ch. 3, § 7, 1925 W. Va. Acts (Extraordinary Session) 24.

often defined by statute as "crimes of violence."[2]  The federal

restrictions followed shortly thereafter:  In 1938, Congress restricted

access to firearms by those individuals convicted of certain enumerated

"crime[s] of violence," and then, in 1968, it expanded the statute to

prohibit anyone convicted of a felony from possessing a firearm.[3]

Today, at least 36 States and the District of Columbia have

determined, like Congress, that imposing restrictions on all those with

felony convictions is appropriate to promote public safety and curb gun

violence within their borders.  Among those jurisdictions, 30 States—

---

[2] *See* Act of Apr. 6, 1936, No. 82, § 4, 1936 Ala. Laws 51; Act of July 8, 1932, Pub L. No. 72-275, § 3, 47 Stat. 650 (District of Columbia); Act of Mar. 30, 1927, ch. 321, § 4, 1927 N.J. Laws 742; Act of June 11, 1931, No. 158, § 4, 1931 Pa. Laws 497; Act of Apr. 22, 1927, ch. 1052, § 3, 1927 R.I. Pub. Laws 256; Act of Mar. 14, 1935, ch. 208, § 4, 1935 S.D. Sess. Laws 355; Act of Mar. 23, 1935, ch. 172, § 4, 1935 Wash. Sess. Laws 599.  States continued to implement these and similar restrictions in the decades that followed.  *See, e.g.*, *Nelson v. State*, 195 So.2d 853, 854 (Fla. 1967) (discussing Florida statute prohibiting possession of firearms by those convicted of felonies); *State v. Noel*, 414 P.2d 162, 163 (Ariz. Ct. App. 1966) (discussing statute prohibiting possession of firearms by individuals convicted of a crime of violence); *Application of Markham*, 134 N.W.2d 84, 85 (Neb. 1965) (discussing 1961 statute prohibiting possession of certain firearms by individuals "convicted of a crime of violence amounting to a felony").

[3] An Act to Regulate Commerce in Arms, Pub. L. No. 75-785, § 2, 52 Stat. 1250 (1938); Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1214.

Arizona, Arkansas, California, Colorado, Connecticut, Delaware,
Florida, Georgia, Hawaii, Illinois, Iowa, Kentucky, Maine, Maryland,
Massachusetts, Minnesota, Mississippi, Missouri, Nebraska, Nevada,
New York, North Carolina, Oklahoma, Oregon, Tennessee, Virginia,
Washington, West Virginia, Wisconsin, and Wyoming—and the District
of Columbia bar all convicted felons from possessing firearms for an
indefinite period.[4]  As in the federal system, *see* 18 U.S.C. § 921(a)(20),
many of these state statutes contain a mechanism for individuals
subject to this bar to have their firearm rights restored—and thus
obtain relief from an indefinite restriction—whether through

---

[4] Ariz. Rev. Stat. §§ 13-904(A)(5), 13-3101(A)(7)(B), 13-3102(A)(4); Ark.
Code Ann. § 5-73-103; Cal. Penal Code § 29800(a); Colo. Rev. Stat. § 18-
12-108(1); Conn. Gen. Stat. § 53a-217(a); D.C. Code § 22-4503(a); Del.
Crim. Code Ann. tit. 11, § 1448(a)(1); Fla. Stat. §§ 790.23(1)(a),
790.23(1)(c); Ga. Code Ann. § 16-11-131(b); Haw. Rev. Stat. § 134-7; 430
Ill. Comp. Stat. 65/4(a)(2)(ii), 65/8(c); Iowa Code § 724.26(1); Ky. Rev.
Stat. Ann. § 527.040(1); Me. Stat. tit. 15, § 393(1)(A-1); Md. Code Ann.,
Pub. Safety § 5-133(b)(1), 5-101(g)(2); Mass. Gen. Laws. ch. 140, §§ 131,
129B(1)(i)-(ii); Minn. Stat. § 624.713, subd. (1)(10)(i); Miss. Code Ann.
§ 97-37-5(1); Mo. Rev. Stat. § 571.070(1); Neb. Rev. Stat. § 28-
1206(1)(a)(i); Nev. Rev. Stat. § 202.360(1)(b); N.Y. Penal Law §§ 400.00,
265.01(4); N.C. Gen. Stat. § 14-415.1; Okla. Stat. tit. 21, § 1283(A); Or.
Rev. Stat. §§ 166.270, 166.250; Tenn. Code Ann. § 39-17-1307(f)(1)(C);
Va. Code Ann. § 18.2-308.2; Wash. Rev. Code §§ 9.41.040(1)(a),
9.41.040(2)(a); W. Va. Code § 61-7-7(a)(1); Wis. Stat. §§ 941.29(1m)(a),
941.29(1m)(b); Wyo. Stat. §§ 6-8-102(a), 6-8-102(c).

expungement, gubernatorial pardon, or similar procedures. In California, for example, individuals with state felony convictions may obtain such relief by gubernatorial pardon, except if the underlying offense involved the use of a dangerous weapon.[5]

Other States have taken slightly different approaches. For instance, seven States—Alaska, Kansas, New Mexico, North Dakota, Michigan, Texas, and Utah—likewise bar convicted felons from possessing firearms, but for a statutorily defined period of time.[6] Other States impose indefinite restrictions, as section 922(g)(1) does, but apply those restrictions to individuals convicted of certain statutorily enumerated crimes.[7] A handful of States in this category ban firearm

---

[5] Cal. Penal Code §§ 4852.17, 4854.

[6] Alaska Stat. § 11.61.200(a)(1), (b)(1)(C) (between ten years and indefinite); Kan. Stat. Ann. § 21-6304 (between three months and indefinite); N.D. Cent. Code §§ 62.1-02-01(1)(a), 62.1-02-01(1)(b) (between five and ten years); Mich. Comp. Laws § 750.224f (between three years and indefinite); N.M. Stat. Ann. §§ 30-7-16(A), 30-7-16(E)(3) (ten years); Tex. Penal Code Ann. § 46.04(a), (e) (five years); Utah Code § 76-10-503 (between seven years and indefinite). Alaska prohibits possession of concealable weapons only. Alaska Stat. § 11.61.200(a)(1).

[7] Ala. Code § 13A-11-72(a); Idaho Code Ann. §§ 18-3316(1), 18-3316(2); Ind. Code Ann. § 35-47-4-5(c); Mont. Code Ann. § 45-8-313; N.H. Rev. Stat. Ann. § 159:3; N.J. Stat. Ann. § 2C:39-7; Ohio Rev. Code §§ 2923.13(A), 2923.13(B); 18 Pa. Cons. Stat. § 6105(a); R.I. Gen. Laws § 11-47-5; S.C. Code § 16-23-500; Vt. Stat. Ann. tit. 13, §§ 4017(a),

possession for those convicted of "crimes of violence," but statutorily define this phrase by enumerating the specific offenses that fall under that label. [8] And although these States use "crimes of violence" or similar terminology to describe those crimes warranting disarmament, they nevertheless generally include felonies that do not require an element of physical harm, such as burglary and drug-related offenses.[9]

All in, then, essentially every State and the District of Columbia has chosen (as Congress has) to prohibit many or all felons from carrying firearms. Section 922(g)(1) is thus broadly consistent not only with the Supreme Court's recognition in *Heller*, *McDonald*, *Bruen*, and *Rahimi* that the States and the federal government retain substantial authority to keep firearms out of the hands of convicted felons, but also

---

4017(d)(3). Louisiana and South Dakota likewise prohibit possession of a firearm for individuals convicted of certain enumerated felonies, but for a statutory period of ten years (Louisiana) and fifteen years (South Dakota). La. Rev. Stat. § 14:95.1(C); S.D. Codified Laws § 22-14-15.

[8] Ala. Code § 13A-11-72(a); Ind. Code. Ann. § 35-47-4-5(b); R.I. Gen. Laws § 11-47-5; S.C. Code § 16-23-500; Vt. Stat. Ann. tit. 13, §§ 4017(a), 4017(d)(3).

[9] Ala. Code § 13A-11-70(a); Ind. Code. Ann. § 35-47-4-5(b); R.I. Gen. Laws § 11-47-2(5); S.C. Code § 16-23-500; Vt. Stat. Ann. tit. 13, § 4017(d)(3).

with the way that States have chosen to handle this issue for over a century.

## II. The Court Should Reject Defendant's Invitation To Upend These Longstanding Laws.

In addition to mirroring the longstanding approach taken by almost all States, section 922(g)(1)'s restriction on felons has the benefit of creating a fair, democratically accountable, and readily administrable system for identifying those individuals convicted of serious crimes who consequently cannot possess firearms.  Defendant's proposal, by contrast, would require courts to make case-by-case or crime-by-crime determinations regarding whether a defendant can permissibly be disarmed.  Such an approach would task courts with developing a common law of dangerousness (or some other attribute)—an undertaking to which they are poorly suited—and mire them in endless litigation involving the application of that standard.  It would also call into question many other aspects of state firearm regulation that rest on or otherwise invoke felon-in-possession laws.  The Court should not invite such instability, and instead should reject defendant's Second Amendment claim.

**A.      A case-by-case approach to adjudicating as-applied challenges to section 922(g)(1) would be unworkable.**

Defendant's challenge to section 922(g)(1) is an as-applied one:  He argues not that section 922(g)(1) violates the Second Amendment as to all defendants, but rather that it violates the Second Amendment only as to him.  *See* Def. Supp. Br. 31-36; *see also Rahimi*, 144 S. Ct. at 1898 (drawing this distinction).  But defendant does not identify a method that courts could use to consistently or reliably adjudicate claims of his sort.  That fact alone should counsel hesitation on the Court's part before opening the courthouse doors to such challenges.

To start, an individualized approach—in which courts consider a defendant's specific conduct and circumstances when weighing whether section 922(g)(1) is constitutional as applied to him or her—would be untenable.  As an initial matter, it is not clear what courts conducting such inquiries would need to ascertain about a defendant's conduct. The vacated panel opinion, for instance, repeatedly described defendant as a "non-violent" offender, Op. 4, 34, 57, a formulation echoed by defendant and his amici, *see* Def. Supp. Br. 1 (describing defendant as "nonviolent"); NRA Br. 39 (same); ACLU Br. 6 (same).  But as others have explained, some non-violent conduct (for instance, driving under

16

the influence of alcohol) can still be "dangerous," in that it "often lead[s] to violence." *Folajtar v. Att'y Gen.*, 980 F.3d 897, 913 (3d Cir. 2020) (Bibas, J., dissenting) (abrogated by *Bruen*). And as the United States explains, there is a historical tradition of disarming persons convicted of serious crimes that were not "violent" in nature, including forgery, horse theft, and more. U.S. Supp. Br. 21. Consistent with that tradition, as discussed, *supra* pp. 13-14, those States that enumerate felonies for which disarmament is a consequence generally do not limit those felonies to "violent" ones, instead also including conduct that is serious but arguably non-violent in nature. *E.g.*, La. Rev. Stat. § 14:95.1(A) (drug and sex offenses); Ohio Rev. Code § 2923.13(A)(3) (drug offenses). And even the small minority of States that restrict firearm possession only for "crimes of violence" generally define that phrase by statute to include crimes like drug offenses and burglary that do not have an element of physical harm. *E.g.*, Ala. Code § 13A-11-70(3); R.I. Gen. Laws § 11-47-2(5); Vt. Stat. Ann., tit. 13, § 4017(d)(3).

Even if the Court were able to identify a standard for courts to apply in adjudicating claims like defendant's (i.e., that the prior felony was "violent," "serious," or some other descriptor), requiring courts to

consider claims of this sort on a case-by-case basis would mire them in

endless litigation over the application of that standard in individual

cases, raising both "practical difficulties and potential unfairness."

*Taylor v. United States*, 495 U.S. 575, 601 (1990). A case-by-case

approach could require courts to undertake a wide range of fact-

intensive inquiries, including into the actual conduct underlying the

predicate conviction, any sentencing enhancements that the defendant

received, the number of years that have passed since the conviction,

whether the defendant is a repeat offender, and more. A case-by-case

inquiry might in some cases not be possible on the papers, especially

where the predicate conviction is old or resulted from a guilty plea,

raising the prospect of live testimony, whether from the defendant or

others. *See id.* at 601-02 ("Would the Government be permitted to

introduce the trial transcript before the sentencing court, or if no

transcript is available, present the testimony of witnesses? Could the

defense present witnesses of its own . . . ?"). Indeed, it was exactly

these concerns that led the Supreme Court to reject just such a "factual"

approach to deciding whether a defendant's prior conviction was

sufficiently "violent" to trigger a sentencing enhancement under the

Armed Career Criminal Act ("ACCA"); such an approach, the Court held, would be "utter[ly] impractica[l]." *Johnson v. United States*, 576 U.S. 591, 605 (2015). The same is true here.

As the Supreme Court also observed in that context, requiring courts to consider on a case-by-case basis whether a defendant's past conduct was sufficiently "violent" (or whatever standard might apply) also raises fairness concerns. *See Taylor*, 495 U.S. at 601. Requiring courts to decide whether the facts and circumstances of a defendant's predicate conviction or convictions warrant disarmament will yield "unpredictability and arbitrariness," *Johnson*, 576 U.S. at 598, as courts embark on the task of applying a nebulous standard to a wide range of fact patterns arising out of the laws of 50 States. *See, e.g., Range v. Att'y Gen.*, 69 F.4th 96, 131 (3d Cir. 2023) (en banc) (Krause, J. dissenting) (criticizing the majority for replacing a "straightforward test with an opaque inquiry—whether [a] defendant is 'like Range'"), *vacated and remanded sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024). By contrast, section 922(g)(1) and its state analogues are clear, workable, and democratically accountable.

### B.     A crime-by-crime approach would be equally unworkable.

Perhaps recognizing the intractable problems with a case-by-case assessment, defendant and his amici appear to suggest an alternative approach, under which courts look not to the facts of a defendant's own case but to the nature of the defendant's conviction. *See* Def. Supp. Br. 32 (courts can "distinguish between nonviolent prior felons like Duarte and those whose *convictions* demonstrate a specific and concrete threat of violent misuse of firearms" (emphasis added)); Pub. Def. Br. 26 ("[I]n assessing an as-applied challenge, courts must limit their analysis to the criminal *conviction* itself and may not conduct a wide-ranging inquiry into the *conduct* underlying that conviction."). But a crime-by-crime approach of this sort, modeled on the "categorial" approach that courts use in the sentencing-enhancement context, would present many of the same practical difficulties as a case-by-case approach, and would be no less arbitrary in application.

Again presuming that the Court were able to identify a standard for courts to apply in considering defendants' prior convictions (for instance, under which a defendant could be disarmed only if he or she was convicted of a "violent" or "serious" crime), categorizing crimes in

this manner is no straightforward task, as cases from this Court and the U.S. Supreme Court uniformly reflect.  Indeed, the Supreme Court held unconstitutional an ACCA provision requiring courts to decide, as a categorical matter, whether offenses were "violent" or not, explaining that the task was "hopeless[ly] indetermina[te]" and so produced "more unpredictability and arbitrariness than the Due Process Clause" allows. *Johnson*, 576 U.S. at 598.  And many members of this Court have raised similar concerns even about the categorical approach required by other statutes, under which courts must decide whether a predicate state-law conviction is a categorical "match" for burglary, or homicide, or some other enumerated offense, explaining that "[t]he only consistency in these cases is their arbitrariness."  *Almanza-Arenas v. Lynch*, 815 F.3d 469, 483 (9th Cir. 2016) (en banc) (Owens, J., joined by Tallman, Bybee, and Callahan, JJ., concurring).

Similar issues would arise if the Court were to hold section 922(g)(1) unconstitutional as applied to individuals without a sufficiently "violent" (or "serious") prior conviction.  Indeed, defendant's own case exemplifies these issues.  Although defendant insists that he is a non-violent offender, his five-felony record includes two convictions

for "driving in willful or wanton disregard for safety of persons or property while fleeing from [a] pursuing police officer." Cal. Vehicle Code § 2800.2. It requires no stretch of the imagination to conclude that such a crime poses a life-threatening risk to the public and reflects a propensity for dangerous behavior; indeed, the Supreme Court held in 2011 that a similar crime was a "violent" crime under ACCA's residual clause, explaining that, "when a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense." *Sykes v. United States*, 564 U.S. 1, 8 (2011), *overruled on other grounds by Johnson*, 576 U.S. 591. Defendant resists that conclusion, suggesting that, because minor traffic offenses could theoretically suffice for a felony conviction under California's reckless-evasion-of-police statute, the offense is not "inherently violent or particularly dangerous." Def. Reply Br. 30. But his argument illustrates the flaws inherent in the enterprise he invites the Court to embark on—the task of combing through state statutes and determining which is "violent" in the average or ordinary case and which is not. *See Johnson*, 576 U.S. at 597 ("How does one go about

22

deciding what kind of conduct the 'ordinary case' of a crime involves? 'A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct?'" (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc))).

These issues will arise over and over, as courts consider the wide range of offenses of conviction that defendants assert exempt them from the reach of section 922(g)(1) and its state analogues. To take just one example, consider stalking. Over half of the States classify stalking as a felony under certain circumstances, such as having a prior conviction for stalking or when the victim is under 16 years of age.[10] These States' decisions to impose steep criminal penalties for stalking reflects a widespread democratic consensus that it is a serious and dangerous crime. As a matter of statutory interpretation, however, many States permit a conviction for stalking absent an express threat of physical harm. Under the defendant's approach, courts will have to determine whether such a conviction is sufficiently "non-violent" to permit a

---

[10] *Stalking Fact Sheet*, Stalking Prevention, Awareness, and Resource Center (2018), https://tinyurl.com/yufh3paf.

23

defendant to challenge a later prosecution under section 922(g)(1) on Second Amendment grounds. *Cf. Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1084 (9th Cir. 2007) (holding that a conviction under California's stalking statute was not a "crime of violence" for purposes of federal immigration law).

Regardless of whether courts employ a case-by-case or crime-by-crime approach, then, courts are likely to reach divergent results in analogous cases. The prospect of such division is not hypothetical. In the months after the Third Circuit's en banc opinion in *Range*, which recognized for the first time the validity of an as-applied challenge to section 922(g)(1) in that jurisdiction, district courts granted relief to defendants previously convicted of felony drug trafficking, robbery, and other serious crimes. *See, e.g.*, *United States v. Quailes*, 688 F. Supp. 3d 184, 187-88 (M.D. Pa. 2023) (6 felony convictions, including 4 for drug trafficking); *United States v. Harper*, 689 F. Supp. 3d 16, 19-20 (M.D. Pa. 2023) (13 felony convictions, including 5 for robbery and 4 for drug trafficking). By contrast, other district courts in that jurisdiction have reached the opposite conclusion, rejecting Second Amendment claims brought by individuals with analogous criminal records. *See, e.g.*,

24

*United States v. Reichenbach*, No. 22-cr-57, 2023 WL 5916467, at *1

(M.D. Pa. Sept. 11, 2023) (five felony convictions, including four for drug

trafficking); *United States v. Pearson*, No. 22-cr-271, 2023 WL 6216527,

at *1 (E.D. Pa. Sept. 25, 2023) (multiple prior drug trafficking offenses).

At bottom, accepting defendant's Second Amendment claim will

produce uncertainty and confusion for litigants as well as courts,

raising pronounced concerns about fairness. *Cf. Johnson*, 598 U.S. at

601 (determining which predicate offenses were sufficiently violent

yielded "pervasive disagreement about the nature of the inquiry one is

supposed to conduct and the kinds of factors one is supposed to

consider"). By contrast, the regime established by section 922(g)(1) and

its state analogues is easily administrable by courts and readily

ascertainable by litigants. Defendant identifies no good reason to

disrupt it in the manner that he suggests the Second Amendment

requires.

### C. Accepting defendant's Second Amendment claim would complicate a range of other federal and state regulations.

Finally, upholding defendant's Second Amendment challenge—

either employing case-by-case or crime-by-crime reasoning—would

create additional obstacles for federal and state-level firearm regulation. As discussed, *supra* pp. 11-14, the majority of States have criminal statutes similar to section 922(g)(1). Accepting defendant's claim would thus at minimum raise serious questions about the States' analogous laws. *See Range*, 69 F.4th at 130-31 (Krause, J., dissenting) (as-applied challenge to section 922(g)(1) accepted by the Third Circuit called into question "every state statute that prohibits felons from possessing guns").

But defendant's argument would carry consequences beyond those statutes. Many federal and state statutes expressly or implicitly incorporate section 922(g)(1)'s bar on possessing firearms after being convicted of a felony. For instance, certain state prohibitions on straw purchasing—that is, purchasing a firearm on behalf of another person— are tied to the knowing sale of a firearm to someone who is prohibited from possessing firearms by a federal statute, including under section 922(g)(1).[11] If a defendant can argue that the Second Amendment shields him from prosecution under section 922(g)(1), a defendant

---

[11] *E.g.*, Cal. Penal Code §§ 27515, 27540; Colo. Rev. Stat. § 18-12-111; 720 Ill. Comp. Stat. 5/24-3.5(b); R.I. Gen. Laws § 11-47-23.

charged with a straw-purchasing crime is certain to argue that the Constitution affords him or her the same kind of immunity (for instance, because the recipient of the firearm does not have the kind of "violent" record that permits disarmament).

A decision calling section 922(g)(1) into question could also raise substantial complications for the administration of widely utilized licensing and background-check regimes. *See Range*, 69 F.4th at 133 (Krause, J., dissenting). Both the federal government and the States have implemented administrative systems designed to ensure that only those who are entitled to possess firearms can obtain them: Congress has directed federally licensed firearms dealers to perform point-of-sale background checks on prospective buyers, 18 U.S.C. § 922(t), and many States require individuals who wish to purchase a firearm or obtain a license to carry one to "undergo a background check" before doing so, *Bruen*, 597 U.S. at 39 n.9. The Supreme Court has explained that such measures are consistent with *Bruen*, in that they "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* (quoting *Heller*, 554 U.S. at 635);

*accord id.* at 80 (Kavanaugh, J., joined by Roberts, C.J., concurring) (same).

A regime under which individuals may advance claims that their criminal records are not sufficiently "violent" (or "serious," or some other standard) to warrant disarmament would interfere with the administration of these longstanding and widespread licensing and background check systems. Such systems are "only as effective as the records [they] can examine." Zeoli et al., *Effectiveness of Firearm Restrictions, Background Checks, and Licensing Laws in Reducing Gun Violence*, 704 Annals of the Am. Acad. of Pol.& Soc. Sci. 118, 127-29 (2022). And the regime defendant presses would create substantial uncertainty for the governmental entities responsible for administering these systems as to the significance of applicants' criminal records. As Judge Krause explained, "[p]rior felony convictions are by far the most common reason individuals fail" background checks conducted against the FBI's standard database, *Range*, 69 F.4th at 133-34 (dissenting opinion), but under defendant's proposed approach, it is unclear how the FBI and other governmental entities should adjust their systems in

28

response to—and in anticipation of—the courts' varied rulings on as-applied challenges like defendant's.

The Court should not license instability of this sort. Section 922(g)(1) is consistent with the Nation's history and tradition, as the federal government explains, and it has the additional advantage of providing clarity and administrability. Recognizing defendant's Second Amendment claim, by contrast, would create uncertainty for courts and litigants alike, while frustrating federal and state efforts to ensure that only "law-abiding, responsible citizens," *Bruen*, 597 U.S. at 39 n.9, are able to possess firearms.

## CONCLUSION

For these reasons and the reasons stated by the United States, the Court should affirm defendant's conviction.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
SARAH A. HUNGER
Deputy Solicitors General
SAMANTHA SHERMAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
August, ME 04333

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of*
*    Massachusetts*
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. MLK Jr. Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
201 3rd Street NW
Albuquerque, NM 87109

JOSHUA H. STEIN
*Attorney General*
*State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of*
*    Pennsylvania*
Strawberry Square, 16th Fl.
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Maine Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

November 5, 2024

32

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 29-2(c)(3) because it contains 5,698 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.


/s/ Alex Hemmer
ALEX HEMMER

November 5, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2024, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Alex Hemmer
ALEX HEMMER