**FEDERAL PUBLIC DEFENDER**
CENTRAL DISTRICT OF CALIFORNIA
321 EAST 2nd STREET
LOS ANGELES, CALIFORNIA 90012-4202
213-894-2854

**CUAUHTEMOC ORTEGA**
*Federal Public Defender*
**AMY M. KARLIN**
*Chief Deputy*
**C. PAMELA GÓMEZ**
*Capital Habeas Chief*
**LISA LABARRE**
*Los Angeles Trial Chief*

**KELLEY MUNOZ**
*Santa Ana Branch Chief*
**ANGELA C.C. VIRAMONTES**
*Riverside Branch Chief*
**MARGARET A. FARRAND**
*Appeals Chief*
**JONATHAN AMINOFF**
*Non-Capital Habeas Chief*
**NEHA CHRISTERNA**
*Collaborative Courts Chief*

Direct Dial: (213) 894-5308

November 8, 2024

Molly C. Dwyer, Clerk of the Court
United States Court of Appeals for the Ninth Circuit

Re:  FRAP 28(j) Letter re: *United States v. Sok*, 115 F.4th 251 (3d Cir. Aug. 24, 2024), *United States v. Duarte*, CA No. 22-50048 (en banc argument scheduled for December 11, 2024).

Dear Ms. Dwyer:

In *United States v. Guerrero*, 921 F.3d 895 (9th Cir. 2019) (per curiam), this Court rejected a claim "that untimely Rule 12(b)(3) defenses, objections, and requests raised for the first time on appeal should be reviewed for plain error," and instead continued to "construe[] Rule 12's good-cause standard as ***displacing*** the plain-error standard" for such issues, *id.* at 897-98 (emphasis added).  (*See also* AOB-5, AOB 31-33; ARB 3-4.)  After the panel here relied on *Guerrero* to review Duarte's Rule 12(b)(3)(B)(v) claim for good cause and not plain error, the government began arguing that *Guerrero* "did not suggest that where a defendant shows good cause, Rule 12 entirely displaces Rule 52(b) and allows review of the unpreserved claim." (Govt. Supp. (Dkt. 109) at 31-32.)[1]  It asserts that "[n]o other court has held" that unpreserved claims subject to Rule 12(b)(3) are reviewed for good cause alone and not plain error.  (*Id.* at 33.)

---

[1] The government ignored *Guerrero* in its original answering brief, (GAB-11-12), and so waived its current claim that appellant misread *Guerrero*, as well as any claim *Guerrero* was wrongly decided.

The government's reading of *Guerrero* is incorrect, and it is equally incorrect in claiming that "no other court" has reached the same conclusion. (*See* Opp. to PFREB (Dkt. 74) at 16-17 & n.4.) Recently, in *United States v. Sok*, 115 F.4th 251 (3d Cir. 2024), the Third Circuit reaffirmed that it reviews "untimely Rule 12 arguments only if there is good cause to do so and do[es] not review for plain error," *id.* at 260. It explained: "Rule 12 is a narrower provision that 'singles out' the issues in Rule 12(b)(3)," and "its standard of review thus prevails over that of the more generally applicable Rule 52(b)." *Id.* at 259. The Third Circuit made clear that its approach "differ[ed]" from the "mixed solution" the government urges here: "first appl[ying] Rule 12's good-cause standard and, if the party showed good cause, then determin[ing] whether there was plain error under Rule 52(b)." *Id.* at 259 n.4. This Court should reaffirm *Guerrero*, follow the Third Circuit, and review for good cause and not plain error.

Respectfully submitted,

/s/ *Sonam Henderson*
SONAM HENDERSON
Deputy Federal Public Defender

## **Certificate of Compliance re Length**

      Pursuant to Federal Rule of Appellate Procedure 28(j) and Circuit Rule 28-6, I hereby certify that the body of the foregoing letter (including footnotes, but not including the letterhead, preliminary information, the greeting, or the signature block) contains 350 words.

      /s/ *Sonam Henderson*
      SONAM HENDERSON
      Deputy Federal Public Defender

*United States v. Sok*,

115 F.4th 251 (3rd Cir. Aug. 22, 2024)

115 F.4th 251
United States Court of Appeals, Third Circuit.

UNITED STATES of America,
v.
Sunny SOK, Appellant

No. 23-1939
|
Argued on June 4, 2024
|
(Opinion filed August 22, 2024)

**Synopsis**
**Background:** Defendant was convicted in the United States District Court for the Eastern District of Pennsylvania, Mitchell S. Goldberg, J., of possession with intent to distribute a controlled substance, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm. Defendant appealed.

**Holdings:** The Court of Appeals, Ambro, Circuit Judge, held that:

defendant did not preserve his argument that inevitable-discovery doctrine did not apply to narcotics and firearm officer seized during warrantless search of his vehicle following traffic stop;

defendant had to show good cause for failure to raise his argument in a pretrial suppression motion in order for Court of Appeals to be able to consider it; and

defense counsel's purported inadvertence was not good cause for defendant's failure to timely raise inevitable-discovery argument.

Affirmed as modified.

**Procedural Posture(s):** Appellate Review; Pre-Trial Hearing Motion.

 *254 Appeal from the United States District Court for the Eastern District of Pennsylvania (District Court No. 2-19-cr-00348-001), District Judge: Honorable Mitchell S. Goldberg

**Attorneys and Law Firms**

Abigail E. Horn (Argued), Federal Community Defender Office for the Eastern District of Pennsylvania, 601 Walnut Street, The Curtis Center, Suite 540 West, Philadelphia, PA 19106, Counsel for Appellant

Anita D. Eve, Robert A. Zauzmer (Argued), Office of United States Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106, Counsel for Appellee

Before: HARDIMAN, PORTER, and AMBRO, Circuit Judges

OPINION OF THE COURT

AMBRO, Circuit Judge

A Philadelphia police officer pulled over Sunny Sok after he made an illegal right turn. The officer ran a search and discovered that the vehicle had an expired registration and also that Sok had an arrest warrant for a probation violation. The latter turned out not to be true—the warrant was no longer active—but before that came to light, the officer arrested Sok. While the officer was doing so, he claimed to smell marijuana emanating from the vehicle, which led him to search it. The officer discovered multiple narcotics and a firearm, and Sok was subsequently charged with possession with intent to distribute a controlled substance, possession of a firearm in furtherance of drug trafficking, and possession of a firearm by a felon.

Sok moved to suppress the physical evidence seized during the search. The District Court determined that the officer's *255 testimony regarding the marijuana odor was not credible and, consequently, that there was no probable cause for the search. The Court went on, however, to conclude suppression was not warranted because the narcotics and firearm would inevitably have been discovered under Philadelphia's Live Stop Policy, which requires that unregistered vehicles—like Sok's—be impounded and their contents inventoried.

On appeal, Sok argues that the inevitable-discovery doctrine does not apply and the evidence should have been suppressed, as the Government has not demonstrated that any impoundment of his unregistered vehicle would have been lawful or inevitable under the Live Stop Policy. But Sok failed to raise these suppression-related arguments before

the District Court. Thus, we cannot consider them unless he shows good cause for us to do so. Fed. R. Crim. P. 12(b)(3)(C), (c)(3); *see United States v. Rose*, 538 F.3d 175 (3d Cir. 2008). Because he does not make that demonstration, we do not consider his untimely arguments and affirm the judgment of his conviction and sentence.

### I. Background

Philadelphia Police Officer Joseph Mason pulled Sok over for making an illegal right turn in April 2019. Officer Mason ran the car's license plate in police databases. The search showed that the vehicle had an expired registration. It also showed that the owner of the vehicle, Sok, had an arrest warrant against him for a probation violation. In fact, there was no outstanding warrant, as Mason learned later in the encounter. Before that, however, Mason confirmed Sok was the owner, asked him to step outside of the vehicle, informed him of the outstanding warrant, and placed him in handcuffs. As Sok stepped out, he told Mason that the warrant was no longer active and told him to call his parole officer to confirm. As this occurred, Mason saw two small bottles in the driver-side door pocket that "contain[ed] a purple liquid." App. 99. He believed the substance in the bottles was Promethazine syrup, a type of cough syrup that is a controlled substance. This too turned out to be a mistake. The purple liquid in the containers was later tested and was not a controlled substance.

Sok continued to ask Mason to call his parole officer to confirm the warrant was no longer outstanding, but Mason proceeded to detain him. He frisked Sok and discovered two other small containers on his person, including a pill container. Mason then placed Sok in the back of his police car. He went back to Sok's vehicle to obtain the two small bottles from the driver-side door. As he was doing so, Mason claims to have smelled an odor of marijuana coming from the vehicle. This was notable because he had not smelled marijuana on his first approach. Based on the alleged marijuana smell, Mason searched the car.

The search revealed, *inter alia*, a large bottle with a label reading "Promethazine"; two more small bottles containing purple liquid, similar to those in the driver-side door; a bag of white crystals and powder; a plastic soup container containing a green leafy substance; a second soup container holding a bag of pills and white powder; and a revolver. The various recovered substances were later tested. The green, leafy substance was marijuana, and some of the containers held marijuana resin. The remaining items included a number of controlled substances, including heroin, fentanyl, and methamphetamine. But none of the small bottles containing the purple liquid or larger bottle labeled as "Promethazine" held a controlled substance. After Mason discovered the narcotics and firearm in the vehicle, he received confirmation **\*256** that Sok's probation warrant had been lifted and was no longer active.

In light of the narcotics and firearm, Sok was indicted on charges for possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), (b)(1)(A), possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). He filed a motion to suppress the physical evidence seized during the stop, arguing that the officer impermissibly extended the stop and there was no probable cause supporting his arrest, meaning the seized evidence should be excluded under the fruit-of-the-poisonous-tree doctrine. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The Government opposed, arguing that the traffic stop was valid, reasonable suspicion existed to extend it, and there was probable cause to search the car, based in part on Mason's detecting an odor of marijuana coming from it. The District Court then held a suppression hearing.

During the hearing, Mason, in addition to discussing the details of the traffic stop outlined above, also testified about Philadelphia's Live Stop Policy concerning the impoundment of vehicles. He described how, had he not searched the car during the traffic stop, he would have impounded it due to its lack of valid registration and thereafter would have conducted an inventory search per the Policy.

The Live Stop Policy in effect at the time stated that "any vehicle may be impounded when it is determined, during a lawful vehicle investigation[,] that the operator is in violation of any or all" of four Pennsylvania state statutory provisions, one of which prohibits driving an unregistered vehicle. App. 241; *see* 75 Pa. C.S. §§ 1301(a) ("No person shall drive or move ... any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration."), 6309.2(a)(2) ("If a motor vehicle ... for which there is no valid registration ... is operated on a highway or trafficway of this Commonwealth, the law enforcement officer shall immobilize the motor vehicle ... or, in the interest of public safety, direct that the vehicle be towed[.]"). Despite the permissive "may" language quoted above, the Policy

later states that any vehicle in violation of the registration requirement, 75 Pa. C.S. § 6309.2, "shall be impounded" according to the procedures set out in the Policy (with limited exceptions not applicable here). App. 242.[1]

[1] A newer version of the Policy, effective as of February 18, 2022, provides that, "[i]n accordance with Pennsylvania case law, only vehicles that bear a public safety risk may be subject to immediate towing (impoundment)." Philadelphia Police Department Directive 12.8, "Live Stop" Program, https://www.phillypolice.com/assets/ directives/D12.8-VehicleOrPedestrianInvestigations.pdf, App. A at 2 (last accessed August 20, 2024) [https:// perma.cc/88EJ-ATWC]. This caveat was not present in the Policy at the time of Sok's arrest, however.

Under the Policy, once it is determined that a vehicle is unregistered during the course of a traffic stop, the officer must: (1) confirm the registration status over police radio; (2) inform the operator the vehicle is being impounded; (3) prepare the relevant report; (4) respond to other priority calls; and (5) after the tow truck arrives, complete an inventory search.[2] If the registration status of the vehicle cannot be confirmed, the vehicle will not be impounded. If the officer needs to leave the scene **\*257** prior to arrival of a tow truck, such as by responding to a priority call, then the tow truck will be canceled. If the tow truck does not arrive within 30 minutes, the officer will simply issue a citation rather than tow the vehicle.

[2] Here, there is no dispute that an inventory search of Sok's vehicle would have occurred after an impoundment under the Policy. There is also no dispute about the legality of the scope of the potential inventory search.

After the suppression hearing, the District Court ordered supplemental briefing on multiple issues, including whether Mason's search of the car would have been legal if the Court were to disregard his testimony regarding the marijuana odor as well as how the Live Stop Policy "impact[ed] the legality of Officer Mason's search[.]" App. 186. In his supplemental brief, Sok argued that there was no probable cause for the search because Mason's testimony regarding the marijuana odor was not credible. He also asserted that the Live Stop Policy had no effect on the legality of the search because Mason did not actually "conduct a proper 'live stop,' " so "neither the inventory search exception nor the inevitable discovery exception to the Fourth Amendment's Exclusionary Rule apply." App. 197 (citations omitted). The Government responded that Mason's testimony regarding the marijuana odor was credible and supported probable cause. It also claimed that the Live Stop Policy would inevitably have led to the discovery of the incriminating evidence because "the controlled substances and firearm would have been discovered when officers conducted an inventory search of the vehicle pursuant to" the Live Stop Policy. App. 211.

After reviewing the supplemental briefing, the District Court denied Sok's motion to suppress. It first concluded, in Sok's favor, that the warrantless search of his vehicle was not supported by probable cause because Mason's testimony that he smelled marijuana emanating from the car was not credible. But the Court nonetheless ruled that suppression of the physical evidence was not warranted because the inevitable-discovery doctrine applied. Specifically, it determined that even if Mason had not searched Sok's car during the traffic stop—unlawfully, as it turned out, given the lack of probable cause—law enforcement would have discovered the narcotics and firearm under the Live Stop Policy because the car would have been impounded and then searched for inventory purposes.

Having lost the suppression argument, Sok proceeded to a jury trial and was convicted of all three counts noted above. He was sentenced to 240 months' imprisonment and four years of supervised release. He appeals from the judgment of his conviction and sentence.[3]

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

**II. Discussion**

On appeal, Sok argues that the Government has not demonstrated that any impoundment of his vehicle would have been lawful or inevitable, meaning the inevitable-discovery doctrine does not apply and the physical evidence used against him should have been suppressed as being unlawfully seized. For his first argument, concerning the lawfulness of the potential impoundment under the Live Stop Policy, he contends the Government has not demonstrated that an impoundment based solely on his vehicle's expired

registration would have been reasonable as an exercise of a community-caretaking function—an exception to the Fourth Amendment's warrant requirement. *See United States v. Smith*, 522 F.3d 305, 313–14 (3d Cir. 2008); *see also* **\*258** *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."). For his second argument, concerning the inevitability of the potential impoundment under the Live Stop Policy, Sok claims that the Government has failed to demonstrate that all of the contingencies to impoundment, such as a tow truck arriving within the prescribed window of 30 minutes, would inevitably have occurred to result in the car being towed and inventoried but for Mason's illegal search.

The problem is that Sok did not raise these two arguments before the District Court. Instead, the only argument he made was that the inevitable-discovery doctrine did not apply because no impoundment under the Live Stop Policy actually occurred. But, as Sok concedes, that sole "argument ... was wrong" because it "speaks to the related but distinct independent source doctrine, not inevitable discovery." Reply Br. at 2. The two doctrines differ as follows:

> [U]nder the independent source doctrine, evidence that was *in fact* discovered lawfully, and not as a direct or indirect result of illegal activity, is admissible. In contrast, the inevitable discovery doctrine, applied in *Nix* [*v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)], permits the introduction of evidence that *inevitably would have* been discovered through lawful means, although the search that actually led to the discovery of the evidence was unlawful. The independent source and inevitable discovery doctrines thus differ in that the former focuses on what actually happened and the latter considers what would have happened in the absence of the initial search.

*United States v. Herrold*, 962 F.2d 1131, 1140 (3d Cir. 1992) (emphases in original). While the fact that no impoundment actually occurred would be relevant to an independent-source defense raised by the Government, it is not relevant to the Government's inevitable-discovery defense raised here.

Yet Sok contends that he functionally made the same or similar arguments before the District Court and can reframe them on appeal. In this regard, we require litigants to preserve specific arguments for appeal, not merely issues. *United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013) ("[R]aising an issue in the District Court is insufficient to preserve for appeal all arguments bearing on that issue. Instead, to preserve a suppression argument, a party must make the same argument in the District Court that he makes on appeal."). In other words, "raising an issue is not sufficient to preserve all arguments within the issue." *Id.* Determining whether an argument raised on appeal is the same as one raised in the trial court requires at least that "they depend on the same legal rule or standard" and "on the same facts." *Id.* at 342. And while "[p]arties are free ... to place greater emphasis and more fully explain an argument on appeal than they did in the District Court [and] may even, within the bounds of reason, reframe their argument," "they may not change [its] substance." *Id.* at 341.

Sok simply did not raise, in any form, his two arguments against inevitable discovery before the District Court. While he cited the legal rule for inevitable discovery and noted some of the steps in the Live Stop Policy's procedure for impoundment in his supplemental briefing, he did not argue that the Government failed to demonstrate an impoundment would have been **\*259** lawful or inevitable. Instead, as discussed, his trial attorney appears simply to have confused the inevitable-discovery and independent-source doctrines. By arguing that no impoundment under the Live Stop Policy actually occurred, Sok's trial counsel did not address the Government's inevitable-discovery defense, which relies on the premise that an impoundment, although it did not occur, would inevitably have occurred under the Policy. Nor did Sok's counsel otherwise attempt to raise the arguments he presses here, such as through a motion for reconsideration of the suppression ruling.

Because Sok failed to raise before the District Court the two suppression-related arguments he presses on appeal, we cannot consider them under Federal Rule of Criminal Procedure 12 unless he shows good cause for us to do so.

## A. Rule 12's "Good Cause" Standard for Untimely Arguments

Rule 12 requires that certain "defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3). Arguments related to the "suppression of evidence" are included among the issues that must be raised before trial. *Id.* 12(b)(3)(C). Rule 12 also specifies the consequences for failing to raise an argument in a timely motion:

> If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause.

Fed. R. Crim. P. 12(c)(3). Under that text, Sok's suppression-related arguments are untimely, and we can consider them only if he shows good cause for us to do so.

Sok counters that we should consider his untimely arguments under Federal Rule of Criminal Procedure Rule 52(b)'s plain-error standard rather than the good-cause standard in Rule 12. Rule 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). In other words, to determine if there is plain error, we ask whether there was an "error" that was "plain" and "affects [the defendant's] substantial rights." *Id.*; *see United States v. Olano*, 507 U.S. 725, 732–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Further, we do not exercise our discretion to address such an error unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (internal quotation and citation omitted).

Contrary to Sok's position, however, we have held that Rule 12's good-cause standard of review trumps Rule 52(b)'s plain-error standard for issues that must be raised before trial under Rule 12. *Rose*, 538 F.3d at 182–84. Specifically, we reasoned that Rule 12 is a narrower provision that "singles out" the issues in Rule 12(b)(3), including suppression, and that its standard of review thus prevails over that of the more generally applicable Rule 52(b). *Id.* at 182–83; *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 237 n.49 (3d Cir. 2004), *as amended* (Feb. 23, 2005) (noting the "well-settled maxim that specific statutory provisions prevail over more general provisions"). [4]

[4] At least before the 2014 amendment to Rule 12, discussed further below, most courts of appeals followed the approach we took in *Rose*, concluding that Rule 12's good-cause standard applies to untimely Rule 12 arguments raised for the first time on appeal rather than Rule 52(b)'s plain-error rule. *See Rose*, 538 F.3d at 180 (describing this as the "prevailing" rule (citation omitted)); *United States v. Chavez-Valencia*, 116 F.3d 127, 132–33 (5th Cir. 1997) (listing cases); *United States v. Walker*, 665 F.3d 212, 228 (1st Cir. 2011) (calling it the "majority view").

That said, there were differing approaches to resolving the tension between Rule 12 and Rule 52(b) for Rule 12 pretrial issues raised for the first time on appeal. Some cases applied Rule 52(b)'s plain-error rule, at times without even mentioning Rule 12. *See, e.g., United States v. Stevens*, 487 F.3d 232, 242 (5th Cir. 2007); *United States v. Buchanon*, 72 F.3d 1217, 1227 (6th Cir. 1995); *United States v. Moore*, 104 F.3d 377, 382 (D.C. Cir. 1997). Other circuits were at times internally inconsistent, sometimes applying Rule 12's good-cause standard and sometimes applying plain-error review. *See, e.g., Chavez-Valencia*, 116 F.3d at 132–33 (identifying "intra-circuit conflicts"); *United States v. Soto*, 794 F.3d 635, 649 (6th Cir. 2015) (noting intra-circuit inconsistency); *United States v. Anderson*, 783 F.3d 727, 740 (8th Cir. 2015) (same).

The Seventh Circuit sometimes used a mixed solution, which first applied Rule 12's good-cause standard and, if the party showed good cause, then determined whether there was plain error under Rule 52(b). *See, e.g., United States v. King*, 627 F.3d 641, 647 (7th Cir. 2010); *United States v. Hargrove*, 508 F.3d 445, 450 (7th Cir. 2007). The Seventh Circuit has also applied a different solution altogether, requiring appellate courts to ask whether it would have been within the trial court's discretion to reject a Rule 12 argument as untimely if it had been raised in the trial court initially. *See, e.g., United States v. Acox*, 595 F.3d

729, 732 (7th Cir. 2010); *United States v. Kirkland*, 567 F.3d 316, 322 (7th Cir. 2009).

**\*260** Sok argues that this holding in *Rose*—*i.e.*, that we review untimely Rule 12 arguments only if there is good cause to do so and do not review for plain error—does not survive a 2014 amendment to the text of Rule 12. We disagree. Since the 2014 amendment, we have continued to apply the rule that suppression arguments raised for the first time on appeal are not considered except for good cause. *See, e.g., United States v. Scarfo*, 41 F.4th 136, 169 (3d Cir. 2022), *cert. denied sub nom. Pelullo v. United States*, ––– U.S. ––––, 143 S. Ct. 1044, 215 L.Ed.2d 201 (2023). Yet because we have not examined the issue at length, we do so today.

At the time we decided *Rose*, Rule 12 provided the following consequence for failing to raise a suppression issue (or any other Rule 12(b)(3) issue) in a timely fashion:

> A party *waives* any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For *good cause*, the court may grant relief from the *waiver*.

Fed. R. Crim. P. 12(e) (prior to 2014 amendment) (emphases added). The 2014 amendment to Rule 12 removed the "waiver" language from Rule 12(e). *See* Fed. R. Crim. P. 12(e). Instead, the consequences for failing to raise timely one of the issues listed in Rule 12(b)(3), for which a pretrial motion is required, are now described in Rule 12(c)(3), as set out above.

Sok's argument relies on the fact that our holding in *Rose* was based in part on the now-removed "waiver" language of the former Rule 12(e). *See Rose*, 538 F.3d at 179–84. Specifically, we concluded that Rule 12(e) "mean[t] what it sa[id]" and, consequently, suppression arguments raised for the first time on appeal are not considered merely forfeited but "waived," meaning they cannot be considered (absent good cause). *Id.* at 183. We reached this conclusion while noting that the former Rule 12(e)'s use of the term "waiver" sat uncomfortably with the distinction between forfeiture and waiver drawn by the U.S. Supreme Court in *Olano*, where the Court clarified that "waiver" refers to the "intentional relinquishment or abandonment of a known right," whereas "forfeiture" is the "failure to make the timely assertion of a

**\*261** right ...." 507 U.S. at 733, 113 S.Ct. 1770 (internal quotation omitted); *see Rose*, 538 F.3d at 183; *see also United States v. Dowdell*, 70 F.4th 134, 140 (3d Cir. 2023) (observing the same distinction as *Olano*).[5]

---

[5] Under *Olano*'s distinction between the two terms, the inadvertent failure to raise a timely Rule 12(b)(3) argument would be treated as a forfeiture rather than a waiver. *See Rose*, 538 F.3d at 183 ("Per [*Olano*], failure to comply with Rule 12 could be seen as more akin to a forfeiture ...."). As such, it would be subject to plain-error review. *See id.*; Fed. R. Crim. P. 52(b); *see also Olano*, 507 U.S. at 733, 113 S.Ct. 1770 ("Mere forfeiture, as opposed to waiver, does not extinguish an 'error' under Rule 52(b)."). Yet, despite Rule 12(e)'s apparent misuse of the term "waiver," we concluded that it nonetheless meant what it said and, as a result, we would not review untimely Rule 12 arguments (not even for plain error) unless there was good cause to do so. *Rose*, 538 F.3d at 183–84.

While the 2014 amendment to Rule 12 removed the "waiver" language—and thus rescinds the portion of our reasoning in *Rose* dependent on that language—it did not change the standard of review for Rule 12(b)(3) arguments raised for the first time on appeal. Those arguments still must be raised by the pretrial deadline; if not, they are "untimely." Fed. R. Crim. P. 12(c)(3). And we still can review "untimely" Rule 12(b)(3) arguments only if a party shows "good cause" for us to do so. *Id.* Nothing in the text of Rule 12 after the 2014 amendment supplants its good-cause standard of review in favor of Rule 52(b)'s plain-error standard. This is further supported by the Advisory Committee note accompanying the 2014 amendment, which explains the reason for the removal of the "waiver" terminology:

> New paragraph (c)(3) governs the review of untimely claims, previously addressed in Rule 12(e). Rule 12(e) provided that a party "waives" a defense not raised within the time set under Rule 12(c). Although the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right, Rule 12(e) has never required any determination that a party who failed

to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion. Accordingly, to avoid possible confusion the Committee decided not to employ the term "waiver" in new paragraph (c)(3).

Fed. R. Crim. P. 12, Advisory Committee Note to 2014 Amendment.[6] This amendment, the Advisory Committee emphasizes, did not change the standard of review for untimely arguments:

> New paragraph 12(c)(3) retains the existing standard for untimely claims. The party seeking relief must show "good cause" for failure to raise a claim by the deadline, a flexible standard that requires consideration of all interests in the particular case.

*Id.* In other words, Rule 12 continues to mean what it says and "provides only one circumstance in which an untimely motion can be considered—when the movant 'shows good cause.'" *United States v. Bowline*, 917 F.3d 1227, 1230 (10th Cir. 2019) (quoting Fed. R. Crim. P. 12(c)(3)).[7] **\*262** Accordingly, Sok must meet that measure for us to consider his untimely suppression arguments.

[6] While not binding on us, the Advisory Committee's notes are "of weight" in our interpretation of the Federal Rules. *Moore v. Walton*, 96 F.4th 616, 624 (3d Cir. 2024) (quoting *In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 577 n.6 (3d Cir. 2014)).

[7] We note that some courts of appeals have changed their position in light of the 2014 amendment and now use plain-error review for Rule 12 arguments raised for the first time on appeal. *See, e.g., United States v. Vasquez*, 899 F.3d 363, 372–73 (5th Cir. 2018), *as revised* (Aug. 24, 2018); *Soto*, 794 F.3d at 648–55 (6th Cir.); *United States v. Sperrazza*, 804 F.3d 1113, 1118–19 (11th Cir. 2015); *see also* 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 194 & nn.22–23 (5th ed. West) ("Some appellate courts now conclude that untimely motions should be subject to plain error review in the absence of evidence that the defendant intentionally relinquished the claim, either because they found the change in language in the 2014 amendments significant, or because the approach was dictated by circuit precedent."). Nonetheless, we stick with the text of Rule 12, which states that "good cause" is the standard of review for untimely Rule 12(b)(3) arguments.

### B. Good Cause

We have not rigidly demarcated what may qualify as "good cause" to excuse the untimeliness of a Rule 12 argument raised for the first time on appeal.[8] The Supreme Court has indicated that, as a general matter, a showing of both cause and prejudice is necessary on direct appeal and collateral review. *See Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 363, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); *Davis v. United States*, 411 U.S. 233, 242–44, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *see also Bowline*, 917 F.3d at 1232–34 (discussing *Davis* and *Sykes* and requiring both cause and prejudice); *see also United States v. Mayer*, 63 F.4th 680, 684 (8th Cir. 2023) (requiring cause and prejudice); *United States v. Santana-Dones*, 920 F.3d 70, 81 (1st Cir. 2019) (same).

[8] If a district court makes a "good cause" determination for an untimely Rule 12 argument in the first instance, we review for abuse of discretion. *United States v. Desu*, 23 F.4th 224, 232 (3d Cir. 2022); *see also Davis v. United States*, 411 U.S. 233, 245, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). The District Court made no such determination here because Sok did not attempt to make his two suppression-related arguments before it.
We have previously held that we can determine "cause" for the first time on appeal under Rule 12, so long as there is no need to remand the case for an evidentiary hearing. *See Rose*, 538 F.3d at 184. We continue to follow that approach, although we recognize that other courts have reached different conclusions. *See, e.g., Soto*, 794 F.3d at 655 (6th Cir.) (applying plain-error rather than good-cause standard in part because the "good-cause standard may be difficult to apply on appeal if the issue was

not first raised at the district court because review for good cause often requires developing and analyzing facts"); *Acox*, 595 F.3d at 732 (7th Cir.) (determining that appellate courts cannot determine "good cause" under Rule 12 on first impression but may inquire whether, if a motion for relief had been made and denied by the district court, it would have abused its discretion in doing so).

There is a lack of consensus, however, concerning how flexible the standard should be. One approach treats it as broadly flexible and fact-dependent. *See, e.g., United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010) ("Good cause is a flexible standard heavily dependent on the facts of the particular case as found and weighed by the district court in its equitable discretion."); *see also* Fed. R. Crim. P. 12, Advisory Committee Note to 2014 Amendment ("The party seeking relief must show 'good cause' for failure to raise a claim by the deadline, a flexible standard that requires consideration of all interests in the particular case."); 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 194 & n.31 (5th ed. West). Another approach construes the exception narrowly. *United States v. Burke*, 633 F.3d 984, 988 (10th Cir. 2011) ("We rarely, however, grant relief under the good-cause exception."); *United States v. Santos Batista*, 239 F.3d 16, 19 (1st Cir. 2001) (describing "good cause" as "single narrow exception to the waiver rule"); *see also* Wright & Miller, *supra*, § 194 & n.32.

**\*263** We think that "good cause" under Rule 12 is a flexible standard that will necessarily depend on the circumstances of a particular case. Such treatment accords with the Advisory Committee's advice and the fact that we grant district courts discretion in determining whether there is good cause to excuse untimely Rule 12 arguments. *See* Fed. R. Crim. P. 12, Advisory Committee Note to 2014 Amendment; *United States v. Desu*, 23 F.4th 224, 232 (3d Cir. 2022).

To direct the application of this flexible standard in our case, there are some guideposts already in place. Good cause may be shown where the information supporting the claim arose too late to file a timely Rule 12 motion. *See United States v. Fattah*, 858 F.3d 801, 808 (3d Cir. 2017), *as amended* (June 12, 2017) ("late-breaking" evidence supported good cause determination); *cf. United States v. Pitt*, 193 F.3d 751, 760 (3d Cir. 1999), *as amended* (Oct. 15, 1999), *and abrogated on other grounds by Honeycutt v. United States*, 581 U.S. 443, 137 S.Ct. 1626, 198 L.Ed.2d 73 (2017) (concluding there was no good cause shown where defendant was "always aware of the facts upon which he" based a Rule 12 argument made

for the first time on appeal). Mere inadvertence of counsel, however, will typically not be enough to show good cause for raising a Rule 12(b)(3) argument for the first time on appeal. *See, e.g., United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020). [9] And the failure to offer "any colorable explanation" for an untimely Rule 12 argument plainly does not suffice to show good cause. *Rose*, 538 F.3d at 184.

[9] Sok does not make any argument that his trial counsel was constitutionally ineffective, so we do not address whether ineffective assistance of counsel may constitute "good cause" to satisfy Rule 12. We do note, however, that ineffective-assistance-of-counsel claims should generally be raised collaterally. *See, e.g., United States v. Jake*, 281 F.3d 123, 132 n.7 (3d Cir. 2002); *see also United States v. Taylor*, 792 F.2d 1019, 1025 (11th Cir. 1986) ("We are sympathetic to [the defendant's] argument that a defendant should not be penalized for the inadvertence of his or her counsel but are at a loss to see how we can hold that a district court must entertain a suppression motion untimely filed due to inadvertence of counsel without completely eviscerating Rule 12(b)(3)."). *But see United States v. Johnson*, 47 F.4th 535, 540 (7th Cir. 2022), *cert. denied*, ––– U.S. ––––, 143 S. Ct. 813, 215 L.Ed.2d 68 (2023) ("A claim of ineffective assistance of counsel might constitute good cause based on a fully developed record.").

As discussed, Sok's only justification for his failure to make his suppression-related arguments before the District Court, despite having the opportunity to do so, was his counsel's apparent confusion about the applicable law—*i.e.*, the difference between the inevitable-discovery and independent-source doctrines. By arguing only that no impoundment actually occurred, his counsel inadvertently failed to address the Government's inevitable-discovery defense. Instead, his counsel's argument went to the independent-source rule, which was not and is not at issue. This mistake is not sufficient to demonstrate good cause. Moreover, Sok does not contend that the facts underlying his arguments raised for the first time on appeal were not available to him to make a timely argument before the District Court. Nor does he make any argument that the law at issue was not well-established at the time of his counsel's misunderstanding. *See Herrold*, 962 F.2d at 1140 (describing the difference between the inevitable-discovery and independent-source doctrines).

Sok encourages us to define "good cause" as contemplating not only justifications going to the timeliness of Rule 12(b)(3) arguments—*e.g.*, claiming the facts underlying a Rule 12 claim raised for **\*264** the first time on appeal were not previously available—but also a broader range of considerations, including exceptional or extraordinary circumstances. By this, he points out an exception to forfeiture we have typically applied in civil cases [10]: while we do not reach waived arguments, we can reach forfeited issues if there are extraordinary or exceptional circumstances counseling us to do so. *See Dowdell*, 70 F.4th at 140; *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). [11]

[10] We have also looked to the extraordinary-circumstances exception to forfeiture under direct criminal and collateral review where a defendant fails to raise an issue in an opening brief. *See United States v. Andrews*, 681 F.3d 509, 532 (3d Cir. 2012) (direct); *United States v. Albertson*, 645 F.3d 191, 195 (3d Cir. 2011) (direct); *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005), *as amended* (Mar. 8, 2005) (collateral).

[11] We have previously stated that we can review untimely appellate arguments—*i.e.*, arguments raised for the first time on appeal or raised on appeal only after an opening appellate brief—if there are extraordinary circumstances to do so. *See, e.g., Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991); *In re Mystic Tank Lines Corp.*, 544 F.3d 524, 528 (3d Cir. 2008); *Andrews*, 681 F.3d at 532. Yet we have often described these scenarios in terms of "waiver." *See Brenner*, 927 F.2d at 1298 ("It is well established that failure to raise an issue in the district court constitutes a *waiver* of the argument." (emphasis added)); *Pelullo*, 399 F.3d at 222 ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes *waiver* of that issue on appeal." (emphasis added)). But this usage of "waiver" is inconsistent with the waiver-forfeiture distinction drawn by the Supreme Court in *Olano* and emphasized by our Court in *Dowdell*. *See Olano*, 507 U.S. at 733, 113 S.Ct. 1770; *Dowdell*, 70 F.4th at 140 ("Although we cannot reach waived arguments, appellate courts may resurrect forfeited arguments in extraordinary circumstances." (internal quotations and citation omitted)). Instead, absent any intentional abandonment, we would now refer to such untimely or unpreserved arguments as being forfeited. *See Olano*, 507 U.S. at 733, 113 S.Ct. 1770.

Even assuming that the good-cause standard under Rule 12(c)(3) incorporates some or all of the considerations we have applied under our exceptional-circumstances jurisprudence, Sok has not demonstrated exceptional circumstances here. To determine whether they exist, we typically consider any excuse for the untimeliness, the extent to which considering the issue would prejudice the opposing party, and whether our failure to consider it would result in a "miscarriage of justice or undermine confidence in the judicial system." *United States v. Andrews*, 681 F.3d 509, 532 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 195 (3d Cir. 2011) (adopting these principles)). We have also looked to whether the "public interest requires that the new issue be heard on appeal," *United States v. Petersen*, 622 F.3d 196, 202 n.4 (3d Cir. 2010) (citation omitted), and whether it involves a pure question of law, *Barna*, 877 F.3d at 147 ("Although our narrow exceptional circumstances rule applies to all forfeited issues, we have been slightly less reluctant to bar consideration of a forfeited pure question of law.").

Again, Sok's only justification for failing to raise his arguments against inevitable discovery before the District Court is his counsel's inadvertence. Moreover, reviewing his forfeited arguments would prejudice the Government. Because it was not put on notice of Sok's arguments against its theory of inevitable discovery before the District Court, the Government had no opportunity to develop the record with evidence to rebut them. *See Rose*, 538 F.3d at 182. Nor does Sok point to any **\*265** countervailing public interest. [12]

[12] To the extent Sok argues that an untimely Rule 12 argument presenting a purely legal issue—without more—presents exceptional circumstances, we disagree. Such a broad-based exception would swallow the Rule 12 good-cause standard. *See Rose*, 538 F.3d at 183 n.8 ("[W]e think it unwise to excuse a defendant from compliance with Rule 12 even where the court of appeals thinks the record is sufficiently developed. To do so would ignore the specific language of Rule 12, something we do not consider ourselves at liberty to do.").

Additionally, refusing to address Sok's arguments will not result in a miscarriage of justice. We have likened the miscarriage-of-justice factor to plain-error review. *See Albertson*, 645 F.3d at 196; *Andrews*, 681 F.3d at 532. Even if, for the sake of argument, we apply that standard of review here, Sok does not succeed because, at the least, he has not shown that any error here was "plain." *See Olano*, 507 U.S. at 734, 113 S.Ct. 1770. He points to no governing caselaw resolving the issues presented: whether the Government has adequately demonstrated that any impoundment of his car for its invalid registration would have been lawful or inevitable.

On the potential impoundment's legality, Sok appeals only to the broad principles underlying the community-caretaking exception to the Fourth Amendment's warrant requirement. *See, e.g., Opperman*, 428 U.S. at 368–70, 96 S.Ct. 3092; *Smith*, 522 F.3d at 313–15. "Th[e] community caretaking doctrine ... is an exception to the warrant requirement of the Fourth Amendment and allows police with a non-law enforcement purpose to seize or search a person or property 'in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity.' " *Vargas v. City of Philadelphia*, 783 F.3d 962, 971 (3d Cir. 2015) (quoting *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993)). He argues that the Government has failed to show that any impoundment under the Live Stop Policy would have served the public safety, noting that it has even conceded that the "vehicle could have been locked and left at the location of the traffic stop while Sok was taken into custody ...." App. 209. On this basis, he argues that his vehicle's mere lack of registration, without more, is insufficient to allow for impoundment under the community-caretaking exception. Yet he points to no governing caselaw that clearly supports his view. The same goes for his argument that the Government failed to show that any impoundment and subsequent inventory search would inevitably have occurred.

There being no plain error, we fail to see how a miscarriage of justice could result from refusing to reach the merits of Sok's arguments.[13] For these reasons, **\*266** there are no exceptional circumstances for reaching Sok's untimely Rule 12 arguments (again, assuming Rule 12(c)(3)'s good-cause standard incorporates our exceptional-circumstances jurisprudence).

13    While any error was not "plain," we nonetheless express some concern with the Government's view of the scope of the inevitable-discovery doctrine in this case. It is its burden to demonstrate, by a preponderance of the evidence, that the evidence that the defendant seeks to suppress would have been inevitably discovered through lawful means. *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998); *see Nix*, 467 U.S. at 444, 104 S.Ct. 2501. The only justification the Government provides for the legality of impounding Sok's vehicle is its lack of valid registration. It is unclear if this, without more, passes muster under the reasonable community-caretaking exception to justify the warrantless impoundment of Sok's vehicle. *See Opperman*, 428 U.S. at 369, 96 S.Ct. 3092; *Smith*, 522 F.3d at 313–15. While it is true that, under state law, a car with an expired registration cannot be driven, 75 Pa. C.S. §§ 1301, 6309.2(a)(2), the Government has not shown that Sok's car would have needed to be moved for any reason. Instead, as discussed, it conceded that the vehicle could have been left where it was. Without more, invalid vehicle registration might not present a sufficient public-safety interest to justify warrantless impoundment. *See, e.g., United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (concluding impoundment of vehicle was not justified by community-caretaking exception where there was no evidence the vehicle "was parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft"); *United States v. Chavez*, 985 F.3d 1234, 1243–45 (10th Cir. 2021) (refusing to apply the community-caretaking exception to the seizure of an unattended firearm from a vehicle where the vehicle was lawfully parked and there was little risk someone would take the firearm). We also note that the Philadelphia Police Department has since amended the Live Stop Policy in a manner that incorporates a public-interest requirement. *See supra* note 1. Nonetheless, while we have concerns with the Government's expansive view of the community-caretaking exception in this case, we do not reach the merits for the reasons discussed.

\* \* \*

We hold that Rule 12(c)(3)'s good-cause standard applies to Sok's suppression-related arguments raised for the first time on appeal rather than plain-error review under Rule 52(b). Because Sok has not demonstrated good cause for his failure to raise these arguments before the District Court, we cannot

consider their merits. Given that his untimely arguments are the only grounds for his appeal, we affirm the judgment of the District Court.

**All Citations**

115 F.4th 251

---

End of Document © 2024 Thomson Reuters. No claim to original U.S. Government Works.